Lisa Hay, OSB #980628
Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
Tel:    (503) 326-2123
Fax:    (503) 326-5524
lisa_hay@fd.org

Attorney for Petitioner

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOHN PHILIP STIRLING,** | **Case No. 3:20-cv-00712-SB** |
| **Petitioner,** | **PETITIONERS' STATUS REPORT OF OCTOBER 8, 2021** |
| v. | |
| **DEWAYNE HENDRIX, Warden, FCI Sheridan,** | |
| **Respondent.** | |

This status report is submitted to update the Court with the petitioners' view of conditions witnessed during the court-ordered inspection of the Sheridan FCI, which occurred on Friday, September 17, 2021. The report is supported by three Exhibits: Exhibit 1 – Report of FPD Chief Investigator William Teesdale on Conditions Witnessed at FCI Sheridan[1] and Exhibit 2 – Fourth Declaration of Investigator Courtney Withycombe, regarding statements from inmates at Sheridan.

---

[1] Because the BOP did not consent to public disclosure of many of the photographs in the report, the photographs in the report are redacted, and a full version is filed under seal with the Court. One photo approved for publication is included below.

PAGE 1.   PETITIONERS' STATUS REPORT OF OCTOBER 8, 2021

Last, in light of the Court's direction to continue working with the Respondent in order to address individual medical issues, Exhibit 3 provides recent correspondence describing urgent medical issues at Sheridan and the BOP's response, denying assistance.

In summary, the inspection corroborated the dismal conditions described by inmates at Sheridan that are resulting in widespread distress and harm. In particular, Sheridan lacks an adequate plan to care for those who are ill with COVID-19, resulting in either the overcrowded, unsafe detention of ill inmates in a gymnasium, or the locking of ill inmates into cells where they may spend up to 60 hours straight without medical attention. Further, the effect of Sheridan's general response to the coronavirus pandemic – which is to lock inmates into their cells for extended periods to prevent transmission – was sickeningly, hauntingly evident. Hallway after hallway of locked doors; empty outside areas; closed programming spaces; inmates calling out through the crack at the seam of their door, begging for a shower, or for medical care, or just to be let out. It is hard to capture in writing either the fear and desperation that permeated the inmate encounters, or the contrasting equanimity of the staff, who seemed inured to the suffering going on around them.

Petitioners intend to submit discovery requests to the Respondents as soon as possible, but no later than October 29, 2021. The government did not provide an anticipated response date. The briefing schedule should be set after the government's response to the discovery requests, and after any evidentiary hearing if needed.

**COVID OUTBREAK**

As shown in the graph below, Sheridan is experiencing its worst COVID-19 outbreak to date. According to information provided by the government in this lawsuit, two inmates were hospitalized last month with COVID-19, and at least 102 inmates were ill with COVID-19.



The government's most recent information from October 1, 2021, indicates that the number of ill inmates has decreased to 61, which still exceeds the peak number of sick inmates in the prior three outbreaks.

**COVID ISOLATION MEASURES**

As detailed in the Teesdale Report (Ex. 1), Sheridan has isolated inmates who are ill with COVID-19 by placing them into locked cells, in the SHU, in unit J3 of the FDC, or in a gymnasium at the FCI. The photograph below shows the gymnasium with COVID-19 patients in mid-September, just prior to the inspection:



*FCI Sheridan Gym Prior to Inspection, Government Discovery USA000011 – Blur added.*

As accurately described in many inmate messages, the inspection revealed that the gymnasium was not equipped to house the 60 sick inmates who were placed there. There were only two toilets and one shower (a converted mop closet) for this large number of people. The bathroom facilities were not easily accessible for those having difficulty walking. Further, the only reliably available drinking water was from the single sink in the bathroom, which was also used for handwashing. When the inspection team was present, two large, empty Gatorade water containers sat outside the gymnasium. Staff explained that these were ordinarily full of water and available for the inmates in the gymnasium. There were no cups visible. Inmates later stated that the water was not replenished, and that these containers had appeared right before the inspection.

Because medical staff are not on-site over the weekend, inmates who are ill with COVID-19 are not medically monitored for the over 60 hours between 5 p.m. on Fridays and approximately 7 a.m. on Mondays when weekday staff return.

**LACK OF ACCESS TO MEDICAL CARE**

As documented in the Teesdale Report (Ex. 1) and the Withycombe Declaration (Ex. 2), inmates reported significant difficulties in obtaining needed medical care. The inspection revealed that Sheridan FCI appeared well-equipped with medical equipment, pharmaceutical supplies, and a dental procedures room, but inmates did not have access to these services. As the government pleadings indicate, in order to access medical care, inmates must submit a written request to the staff, and those requests are gathered up just 4 times per week ("Staff collect Inmate Request to Staff Forms at the lunch mainline on the following days: Monday, Tuesday, Thursday, and Friday.") (ECF 77, p. 2). Inmates report that they receive no responses to their many requests, and that urgent medical conditions go untreated. The BOP declined to respond to requests submitted by counsel on behalf of inmates (Ex. 3).

Several inmates approached or called out to the inspection team to describe untreated medical issues, as documented in the Teesdale Report. Because neither staff nor inmates could be interviewed during the inspection, the lack of access questions could not be answered through the tour. Discovery requests will be aimed at identifying the access issues. As detailed in the Withycombe Declaration, however, dozens upon dozens of inmates complain of an inhumane level of medical neglect.

**COVID PREVENTION MEASURES**

The primary methods to prevent a worsening pandemic at Sheridan appear to be vaccinations for inmates and staff, testing for COVID-19 at unknown intervals, and locking

inmates in their cells for entire days or stretches of days. The government's most recent reports indicate that as of October 1, Sheridan had administered 1,227 vaccinations to inmates. The population as of October 1 was 1,553 inmates. Because some of the inmates who received vaccinations have since left Sheridan, the vaccination rate is likely lower than the 79% these figures would indicate. As of October 1, 2021, 197 staff had been vaccinated. In April, responses to discovery the government reported 317 staff at Sheridan, which would indicate a vaccination rate of 62%.

As described in Exhibits 1 and 2, the lockdown measures seen in effect at Sheridan during the inspection allowed inmates out of their cells only 15 minutes per day. Inmates were visibly distraught and traumatized by the degree of restriction they were experiencing. Slightly less harsh periods of lockdown have been in effect ever since April of 2020, when two weeks of complete lockdown were ordered, followed by periods of up to four hours out of cells. The Report of Dr. Grassian (ECF 72-2) describes the adverse effects that such conditions of confinement have for the inmates.

**CONCLUSION**

The inspection of Sheridan FCI corroborated inmate accounts of inhumane conditions. After receiving additional discovery, petitioners intend to supplement their request for habeas corpus relief.

Respectfully submitted on October 8, 2021.

*/s/ Lisa Hay*
Lisa Hay
Attorney for Petitioners