IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN PHILIP STIRLING,                              Case No. 3:20-cv-00712-SB

                Petitioner,                   **OPINION AND ORDER**

      v.

JOSIAS SALAZAR, Warden, FCI
Sheridan,

               Respondent.

**BECKERMAN, U.S. Magistrate Judge.**

Petitioner John Philip Stirling ("Stirling") and nearly 200 current or former individuals in custody at Federal Correctional Institution ("FCI") Sheridan ("Sheridan") (together, "Petitioners"), bring this consolidated habeas corpus proceeding pursuant to 28 U.S.C. § 2241 ("Section 2241"). Petitioners allege that the dangers presented by the unprecedented COVID-19 pandemic, combined with the Federal Bureau of Prisons' ("BOP") insufficient response to the ongoing crisis, render their continued confinement unconstitutional in violation of the Eighth Amendment. (Am. Compl. Pet. Writ Habeas Corpus ("Am. Pet.") (ECF No. 16) at 16-22.[1])

---

[1] The Court uses the ECF-assigned pagination when citing the parties' filings.

Respondent[2] asserts that he has taken adequate and appropriate measures to mitigate the effects of COVID-19 at Sheridan. However, he argues that before reaching the merits of Petitioners' habeas claims, the Court must first resolve a threshold jurisdictional question to determine whether a petition for writ of habeas corpus is the proper vehicle by which an individual in custody may seek release based on an assertion that prison conditions are so unsafe that continued incarceration violates the Eighth Amendment. (Resp. Am. Pet. (ECF No. 35) at 8-12, 13-16.) That question is now before the Court. (*See* Resp't Renewed Resp. Am. Pet. Writ Habeas Corpus & Renewed Request Ruling Jurisdictional Issues (ECF No. 107) ("Resp't Renewed Resp.") at 2-5.)

The parties have consented to proceed before a magistrate judge under 28 U.S.C. § 636(c). (ECF No. 43.) For the reasons explained below, the Court dismisses the Amended Complaint and Petition for Writ of Habeas Corpus (ECF No. 16) and denies as moot all pending motions.

## BACKGROUND

The rise of COVID-19 marked a "once-in-a-century public health crisis." *Wilson v. Ponce*, 465 F. Supp. 3d 1037, 1039 (C.D. Cal. 2020), *appeal dismissed*, No. 20-55760, 2020 WL 6293689 (9th Cir. 2020). The virus quickly found its way into jails, prisons, and other detention facilities in the United States, and corrections officials imposed various measures to prevent and control transmission among incarcerated populations. Although the measures Respondent imposed at Sheridan avoided the tragic death tolls at other prisons, Petitioners allege that the harshness of the protective measures violated the Eighth Amendment and therefore the Court

---

[2] Josias Salazar was the acting warden at the time Stirling filed his original petition. Sheridan's current warden, DeWayne Hendrix, assumed responsibility for Sheridan's operations on December 7, 2020. (Joint Status Report dated Dec. 18, 2020 (ECF No. 54) at 1 n.1.)

must now release Petitioners from custody. The Court provides a summary of this litigation to explain why the Court is just now evaluating the threshold jurisdictional issue after over two years of litigation.

On April 30, 2020, Stirling, a pretrial detainee at Sheridan, filed a *pro se* petition for writ of habeas corpus in this Court, naming the BOP, Sheridan Federal Detention Center ("Sheridan FDC"), and "Sheridan FDC Staff" as respondents. Stirling alleged in the petition that Sheridan officials were "needlessly exposing [him] to [COVID]-19" by housing newly incarcerated or transferred individuals in his unit without first placing them in quarantine; by refusing to wear appropriate protective equipment such as masks and gloves; and by keeping Sheridan residents "illegally . . . under lockdown for [nineteen] days cut of[f] from phones, showers, email and quality food." (Pet. (ECF No. 1) at 2-3.) Troubled by Stirling's allegations, the Court appointed the Federal Public Defender ("FPD") to represent Stirling and directed the FPD to file an amended petition naming Stirling's current custodian as the respondent. (ECF No. 4.)

On June 30, 2020, the FPD filed an "Amended Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus" (the "amended petition") on Stirling's behalf, who by then was serving a forty-month term of imprisonment.[3] Stirling alleged in the amended petition that the BOP had failed to "de-densify its facilities" to ensure adequate social distancing and instead had kept Sheridan residents in their cells for up to twenty-three hours a day, sometimes three to a cell; canceled educational and rehabilitative programs; curtailed outside communications; served poor-quality food; reduced access to medical care; and spread

---

[3] Stirling was sentenced to forty months in prison on May 21, 2020, after pleading guilty to one count of violating 46 U.S.C. § 70503(a)(1) and 70506(a), and 21 U.S.C. §§ 8960(b)(1)(H) and 962(a), Maritime Drug Law Enforcement Act and Conspiracy to Distribute Methamphetamine. *See United States v. Stirling*, No. 3:19-cr-00150-MO (ECF No. 113) (D. Or. May 21, 2020).

misinformation about pandemic response measures. (Am. Pet. at 2.) Stirling further alleged that the BOP had failed to establish "consistent and effective safeguards"—such as universal testing of Sheridan residents and staff, access to personal protective equipment, effective quarantine procedures, and heightened sanitation protocols—to protect individuals in its custody against COVID-19. (*Id.* at 2.) Stirling claimed that, in light of the BOP's decision to use lockdowns instead of de-densifying Sheridan and the risk that he might nevertheless contract COVID-19, there were "no conditions of confinement at Sheridan [that could] meet constitutional requirements" and therefore the Eighth Amendment required his immediate release. (*Id.* at 17-22.)

Stirling also requested in the amended petition interim injunctive relief in the form of a temporary restraining order ("TRO") and permanent injunction to "(1) prohibit the BOP from bringing new inmates into the FDC Sheridan until the warden has demonstrated adequate testing and safety protocols to ensure the coronavirus is not introduced through arrivals; and (2) to prohibit [Stirling's] transportation out of the FDC Sheridan until the Warden can demonstrate the transportation, any place of quarantine, and the designated facility will be safe and subject him to infection from the coronavirus." (*Id.* at 23.) Stirling requested that if the court could not immediately grant the writ, the court should enter an order of enlargement allowing him to serve his sentence in the community "until the conditions at Sheridan can be rendered safe" and order court-mandated fact-finding of the actual conditions at Sheridan. (*Id.* at 24.)

In light of Stirling's request for immediate injunctive relief, this case was reassigned to a district judge on July 6, 2020. (ECF No. 19.) At a hearing on July 22, 2020,[4] the district judge

---

[4] Prior to the hearing, the parties agreed that Respondent would not transfer Stirling out of Sheridan before July 28, 2020 and would provide the FPD and the Court with at least seven days' notice if he planned to transfer Stirling at any point thereafter. The district judge issued an

noted that it was unclear whether Stirling intended to proceed with civil rights or habeas claims, and that Stirling's request for a TRO barring new detainees from entering Sheridan was "not the sort of relief we would typically see in a habeas order." (Tr. (ECF No. 44) at 7:5-15, 47:3-10.) The FPD clarified that Stirling intended to proceed in habeas and argued that his request for injunctive relief was proper. (*Id.* at 43:13-20, 48:11-51:2.) Turning to the merits of Stirling's request, the district judge considered the evidence in the record and determined that Stirling failed to show "a likelihood of success or even serious questions going to the merits" on his Eighth Amendment claims. (*Id.* at 52:23-53:5.) The district judge thus denied Stirling's request for a TRO but authorized expedited discovery concerning the conditions at Sheridan. (*Id.* 53:3-22.)

Soon thereafter, the district judge ordered Respondent to show cause why the Court should not grant relief. (Or. Show Cause (ECF No. 34) at 1.) Respondent filed a response on August 18, 2020, arguing that the Court should dismiss the amended petition because Stirling's claim is not cognizable in habeas and instead arises under the Prison Litigation Reform Act ("PLRA"). (Resp. Am. Pet. (ECF No. 35) at 1.) Respondent further argued that even if Stirling's claim could proceed in habeas, Stirling is not entitled to relief because his claim is unexhausted and lacks merit. (*Id.*) In support, Respondent submitted extensive documentation describing the protocols and mitigation measures in place to prevent and control the spread of COVID-19 at Sheridan.

---

order memorializing that agreement on July 8, 2020. (ECF No. 25.) Respondent also provided the FPD and the Court with detailed information about the then-current protocols for screening and testing for COVID-19 for individuals in custody, staff, transfers, and anyone else entering and exiting Sheridan; the number of tests administered to individuals in custody and staff; the rate of positive tests; and all other measures in place to mitigate the spread of COVID-19 at Sheridan. (Status Report dated July 10, 2020 (ECF No. 26).)

The case was reassigned to this Court on September 24, 2020, in light of the parties' full consent to the jurisdiction of a magistrate judge. (ECF No. 40.) Although the district judge had set an initial briefing schedule, the parties agreed to stay further briefing pending completion of discovery and, in the interim, to work cooperatively to address issues at Sheridan as they arose. (Joint Status Report dated Oct. 16. 2020 (ECF No. 46) ¶ 5.) Hoping to foster cooperation that might more quickly and effectively address the conditions at Sheridan, the Court allowed the parties flexibility in fashioning a case management schedule to accommodate their efforts. Thereafter, the parties relayed their progress to the Court in periodic status reports that detailed the changing conditions at Sheridan.

Meanwhile, dozens of additional individuals in custody at Sheridan filed similar habeas petitions "challenging the fact of . . . confinement under the circumstances of the COVID-19 pandemic and in particular the extended lockdown and the life-threatening conditions." (*See, e.g.*, *Bodner v. Salazar*, No. 3:20-cv-01743-SB, Pet. (ECF No. 1) at 2.) Each new petition "incorporate[d] by reference and adopt[ed] the pleadings" in *Stirling*, with some petitioners submitting individualized allegations concerning their personal health risks and experiences in lockdown. (*Id.* at 2, 10-13.) Many petitioners, however, simply adopted Stirling's general allegations without claiming that they personally were at high risk or that the conditions at Sheridan posed a specific danger to their individual health. In response to the influx of new petitions, and upon agreement by the parties, the Court ordered "all pending and future habeas petitions filed by individuals in custody at Sheridan relating to modified prison operations during the COVID-19 pandemic" to be consolidated with *Stirling*, and ordered that the Court will

resolve all threshold legal and factual issues in the consolidated action.[5] (Consolidation Or. (ECF No. 50) at 2.)

By December 2020, Respondent reported that Sheridan was operating under "modified conditions designed to ensure physical distancing . . . while maintaining institutional safety goals." (Joint Status Report dated Dec. 18, 2020 (ECF No. 54) ¶ 2(e).) Such operations typically allowed for Sheridan residents to be out of their cells and in common areas for more than seven hours per day, with lockdown conditions occurring only "on occasion" to combat an increase in COVID-19 infections or for disciplinary purposes. (*Id.*) Respondent also reported that he had created a separate COVID-19 isolation unit within Sheridan, had discontinued the use of triple bunk cells, and had reduced the Sheridan population to 1,438 residents, down from 1,787 in April 2020. (*Id.* ¶¶ 2(d), (f).)

A new wave of COVID-19 infections struck Sheridan toward the end of December 2020, but began to recede in January 2021. (Joint Status Report dated Jan. 8, 2021 (ECF No. 57) ¶ 1(a).) None of those infected had to be placed on a ventilator or died from the disease, but Petitioners lodged "frantic complaints" with the FPD about the harsh conditions imposed to control the outbreak. (*Id.* ¶ 2(a).) Specifically, Petitioners reported "[m]ental and physical distress from prolonged lockdown in cells; fears that the coronavirus is not being adequately controlled; physical harm from lack of medical care due to staff shortages or perceived lack of compassion; unsafe and inhumane conditions in the gym where ill inmates are relegated; and lack of adequate food." (*Id.* ¶¶ 1(c), 2(a).) Although Respondent did not concede the veracity of

---

[5] The Court ordered that petitions filed by post-sentencing petitioners would be consolidated with *Stirling*, and that petitions filed by pretrial detainees would be consolidated with another case filed by a petitioner in pretrial detention at the time of filing, *Lander v. Salazar*, 3:20-cv-01379-SB, that incorporated the *Stirling* allegations.

these complaints, he later acknowledged that "relatively harsher" conditions were necessary to ensure physical distancing to "minimize the incidence and spread of COVID-19" in Sheridan. (*Id.* ¶ 1(a) n.1; Joint Status Report dated Mar. 12, 2021 (ECF No. 66) ¶ 6.)

On February 5, 2021, Respondent reported that Sheridan had received its first allotment of the newly released COVID-19 vaccine, and that Sheridan had already administered the first dose to over three hundred residents and staff. (Joint Status Report dated Feb. 5, 2021 (ECF No. 62) ¶ 1(f).) Over the next five months, Sheridan received five more vaccine allotments, each of which Respondent distributed pursuant to BOP clinical guidance. (*See* Decl. of Amanda Huston (ECF No. 66-1); Resp't Suppl. Status Report dated July 22, 2021 (ECF No. 69) ¶ 3.) By July 2021, all Sheridan residents who were "medically eligible ha[d] been offered vaccination[,]" and 1,050 residents and 197 staff members were fully vaccinated. (*Id.*)

Sheridan experienced another COVID-19 outbreak in August 2021. (Resp't Suppl. Status Report dated Aug. 12, 2021 (ECF No. 71) ¶ 1.) In a status report filed on August 12, 2021, Respondent acknowledged that the surge in positive cases had required the imposition of new restrictions that included a temporary suspension of recreation and the placement of two housing units on quarantine status. (*Id.* ¶ 6.) Respondent noted that despite the relative harshness of the modified operations, Sheridan residents still had ready access to medical care, including mental health services, and could utilize the BOP's administrative remedy system to voice any concerns. (*Id.* ¶¶ 6-7.)

The next day, on August 13, 2021, the FPD filed a supplemental status report requesting "emergency measures to assess medical care, improve communication, acknowledge harm, and decrease the psychic stress of . . . confinement" at Sheridan. (Pet'r's Status Report dated Aug. 13, 2021 (ECF No. 72) at 1.) The FPD asserted that while Respondent had "actively responded"

to individual and systemic concerns raised by Petitioners throughout the litigation, such efforts had been limited by "the reality of the pandemic" and the need to use lockdowns to control COVID-19 outbreaks. (*Id.* at 1-2.) Detailing the frequent emails received from demoralized Sheridan residents, the FPD concluded that the "16 months of pandemic conditions ha[d] taken their toll" and no longer could be "remedied through the incremental steps of addressing inmate concerns one-by-one." (*Id.* at 3, 7.)

Petitioners then moved, pursuant to Federal Rule of Civil Procedure 34(a)(2), to compel Respondent to allow a team to enter Sheridan to inspect the conditions, to speak confidentially with incarcerated individuals and staff, to review records, and to obtain evidence in support of Petitioners' habeas claims. (*See* Notice of Entry on Land (ECF No. 80-1).) Respondent objected, arguing that the inspection would impose an undue burden in light of the pandemic; the irrelevance of such discovery to the dispositive threshold questions of law regarding the Court's subject matter jurisdiction; the requests were duplicative of informal and formal discovery already conducted and could be obtained through more convenient and less burdensome sources; and requests to record and photograph Sheridan facilities violated BOP regulations. (Discovery Or. (ECF No. 83) at 2.)

Following a hearing, the Court granted in part Petitioners' motion to compel a Rule 34(a)(2) inspection, noting that the district judge had allowed Petitioners to conduct discovery on conditions at Sheridan and that additional value could be gained from "allowing an expert or investigator to inspect the current conditions of confinement" at Sheridan. (*Id.* at 5.) The Court thus authorized a limited inspection of Sheridan's facilities but denied as unduly burdensome Petitioners' request for unlimited access to Sheridan's residents, staff, and records. (*Id.* at 4-5.)

///

PAGE 9 – OPINION AND ORDER

The limited inspection occurred on September 17, 2021. (Pet'r's Status Report dated Oct. 8, 2021 (ECF No. 89) at 1.) After the inspection, the FPD lodged with this Court the inspection team's findings, which reportedly "corroborated the dismal conditions described" by Sheridan residents. (*Id.* at 1-2; Suppl. Ex. 1 to Pet'r's Status Report of Oct. 8, 2021 (ECF No. 92).) The FPD noted that Petitioners intended to submit additional discovery requests as soon as possible and requested that the Court set a briefing schedule after Respondent provided a response to those requests. (ECF No. 89 at 2.) Respondent agreed to provide further discovery and noted that the parties would work together to determine a briefing schedule as Petitioners' operative petition now contained "dated information." (Resp't Suppl. Status Report dated Oct. 13, 2021 (ECF No. 93) ¶ 9.)

In the months that followed, in-person social and legal visitation, programming, and recreational activities resumed at Sheridan. (Resp't Supp. Status Report dated Oct. 27, 2021 (ECF No. 94) ¶ 6.) In addition, all housing units were removed from quarantine status and began moving toward pre-pandemic operations. (*Id.*) Although the emergence of the Omicron variant in January 2022 prompted the temporary suspension of in-person visitation, Sheridan maintained the less restrictive modified operations during the ensuing outbreak.[6] (Resp't Suppl. Status Report dated Jan. 19, 2022 (ECF No. 96) ¶ 5.)

On February 4, 2022, Petitioners notified the Court that the parties' ongoing collaborative efforts, although "fruitful" in individual cases, fell short of achieving "systemic reform" at Sheridan and that judicial intervention likely was needed to move this case forward. (Pet'r's

---

[6] Despite the unprecedented communicability of the Omicron variant, Respondent reported that as of January 18, 2022, the outbreak consisted of only fifty-seven active cases among Sheridan residents and ten active cases among staff. (Resp't Suppl. Status Report dated Jan. 19, 2022, ¶¶ 1-2.) None required placement on a ventilator or hospitalization. (*Id.*)

Status Report dated Feb. 4, 2022 (ECF No. 98) at 1.) The same day, the parties discussed with the Court the possibility of resolving Petitioners' claims through settlement negotiations, but the FPD later determined that it could not consent to a settlement on behalf of the many petitioners joined to this litigation. (Joint Status Report dated Feb. 10, 2022 (ECF No. 102) at 2.) The parties instead proposed a new case management schedule that anticipated a forthcoming motion to dismiss by Respondent and further briefing as needed, the close of fact discovery by July 2022, and the close of expert discovery by October 2022. (*Id.* at 3.)

On March 8, 2022, the FPD moved for emergency interim relief on behalf of Petitioner Jeffrey Reed Green. (*See Green v. Hendrix*, No. 3:22-cv-00086-SB, Emergency Mot. Hr'g Req. Interim Relief (ECF No. 7).) The FPD asserted that Mr. Green's prostate cancer had gone untreated due to the deliberate indifference of officials at Sheridan and FCI Victorville, and that Mr. Green required immediate "release from custody for medical evaluation and treatment." (*Id.*) Respondent "strongly dispute[d] Mr. Green's characterization of the lack of care as well as the [FPD's] continued characterization of 'dire' conditions at . . . Sheridan[,]" and argued that release was neither appropriate nor permissible in this consolidated habeas action. (*Id.*, Resp't Resp. Emergency Mot. Interim Relief (ECF No. 16) at 2-3.) After oral argument and additional status hearings, the Court denied as moot the request for emergency interim relief because Mr. Green's sentencing judge in the District of Alaska had granted him compassionate release pursuant to 18 U.S.C. § 3852(c)(1)(A). (ECF No. 27.)

On June 21, 2022, Respondent filed a renewed response to the amended petition, reasserting his request that the Court rule on the jurisdictional issues raised in his original response. (Resp't Renewed Resp. at 1-2.) Respondent noted that although he had been willing to work with Petitioners and had provided regular information and discovery concerning the

pandemic conditions at Sheridan, the BOP was having to "spend[] valuable resources responding to extensive discovery requests with no end in sight." (*Id.* at 2.) Because Petitioners no longer wished to work toward improving conditions at Sheridan and instead sought only release from custody, Respondent urged the Court to bring this litigation to a close. (*Id.*) The Court ordered Petitioners to file a reply in support of the amended petition and proposed findings of fact by July 29, 2022. (ECF No. 108.)

On July 27, 2022, Petitioners requested an extension of time to file their reply and proposed findings of fact, which the Court granted. (ECF No. 111.) Three days later, on July 31, 2022, the FPD filed an emergency motion for an order appointing a special master to investigate an "institutional shakedown" conducted by "BOP employees . . . brought to . . . Sheridan from out of the District" that allegedly resulted in the destruction of personal property, harassment of Sheridan residents, and physical injury. (Emergency Mot. App't Special Master & Related Or. (ECF No. 113) at 3-5.) The FPD asserted that the alleged shakedown was in retaliation for this litigation, and argued that the communications from Sheridan residents about this event "provide[d] an immediate basis for this Court's investigatory and remedial action." (*Id.* at 6.)

On August 4, 2022, the Court denied the emergency motion, explaining that it lacked jurisdiction over the Petitioners' retaliation claims because they challenged conditions of confinement that were "separate and distinct" from the issues allegedly giving rise to habeas jurisdiction in this case.[7] (ECF No. 121.) Petitioners then moved for reconsideration, arguing that

---

[7] The Court denied the emergency motion without waiting for Respondent to file a response because counsel for Respondent was unavailable during the week Petitioners filed the emergency motion, it was clear that the Court lacked jurisdiction to consider the Petitioners' retaliation claims, Petitioners did not cite any persuasive evidence that the "shakedown" was related to this litigation or targeted at Petitioners aside from the assumptions of a few Sheridan residents, and the Court wanted to ensure that any Sheridan residents who suffered loss of

"the practical consequences" of this Court's decision summarily to "deny petitioners a forum in habeas corpus for retaliation based on their exercise of habeas corpus rights are dire and an abdication of the Court's ability to fairly adjudicate the cases before it." (Mot. Reconsideration Summ. Denial Emergency Mot. (ECF No. 123) at 2.)

After further briefing by both parties, the Court held oral argument on September 22, 2022 on the jurisdictional issues raised in Respondent's renewed response, as well as Petitioners' motion for reconsideration.[8] (ECF No. 138.) The Court thereafter took the pending motions under advisement.

## DISCUSSION

Respondent moves to dismiss the amended petition for lack of jurisdiction, arguing that Petitioners' claims are not cognizable in habeas because they challenge the conditions of Petitioners' confinement rather than the legality of their convictions or sentences. (Resp. Am. Pet. at 8-11.) Respondent asserts that Petitioners' claims instead arise under the PLRA, and that other remedies short of release are available to address the allegedly unconstitutional conditions at Sheridan. (*Id.* at 10-12; Renewed Resp. at 8-11.)

"Federal law opens two main avenues to relief on complaints related to imprisonment"— a petition for writ of habeas corpus and a civil rights complaint. *Muhammad v. Close*, 540 U.S. 749, 750 (2004). The Supreme Court has made it clear that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody" and that "the traditional function

---

property or injury could timely file grievances in accordance with BOP administrative procedures without waiting for the Court's written opinion on the motion.

[8] The Court also addressed at oral argument Respondent's motion to stay further filings pending decision on the jurisdictional issues (ECF No. 128) and motion to strike Petitioners' proposing findings of fact and conclusions of law (ECF No. 135).

of the writ is to secure . . . release[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

"Challenges to the validity of any confinement or to particulars affecting its duration are the

province of habeas corpus[.]" *Muhammad*, 540 U.S. at 750 (citing *Preiser*, 411 U.S. at 500); *see*

*also Nelson v. Campbell*, 541 US. 637, 643 (2004) (explaining that "where an inmate seeks

injunctive relief challenging the fact of his conviction or the duration of his sentence[,]" such

claims "fall within the 'core' of habeas corpus"). Thus, a claim should proceed in habeas only if

the petitioner's success on that claim would "necessarily demonstrate the invalidity of [his]

confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005).

By contrast, a civil rights action is the "proper remedy" if an individual in custody "is

making a constitutional challenge to the conditions of his prison life, but not to the fact or length

of his custody." *Preiser*, 411 U.S. at 499. Conditions-of-confinement claims are those which

"allege[] unconstitutional treatment . . . while in confinement" (*id.*), and the remedy "usually is

an award of damages or an order for injunctive relief that requires the institution to cure the

constitutional violations." *Jackson v. Twin Falls Cnty. Jail*, No. 1:21-cv-00017-DCN, 2021 WL

1202336, at *2 (D. Idaho Mar. 29, 2021). "[C]onstitutional claims that merely challenge the

conditions of . . . confinement, whether the [individual] seeks monetary or injunctive relief, fall

outside of [the] core [of habeas corpus]" and should be raised as a civil rights claim "in the first

instance." *Nelson*, 541 U.S. at 643; *see also Hill v. McDonough*, 547 U.S. 573, 579 (2006)

(instructing that an "inmate's challenge to the circumstances of his confinement" may be brought

in a civil rights action).

Since the start of the COVID-19 pandemic, hundreds of individuals in federal and state

custody have sought habeas-based release to escape pandemic conditions inside prisons, jails,

and detention facilities. Despite these numerous lawsuits, "[t]he question of whether . . . actions

[brought by individuals in custody] asserting violations of their constitutional rights based on the COVID-19 pandemic properly may sound in habeas, versus civil rights, is an open one, with the case law in flux." *William v. Jenkins*, No. CV 21-1456-DMG (GJS), 2021 WL 765567, at *8 (C.D. Cal. Feb. 24, 2021). To date, the Supreme Court has not had occasion to consider whether claims challenging pandemic conditions fall within the core of habeas corpus, and to date the Ninth Circuit has declined to resolve the issue. *See Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020) (per curiam) (declining to consider the availability of habeas review for claims challenging conditions of confinement during the COVID-19 pandemic "because, separately from their habeas petition, Plaintiffs brought a class action complaint for declaratory and injunctive relief seeking to remedy allegedly unconstitutional conditions at [the detention facility]"); *see also Green v. Jenkins*, 859 F. App'x 186, 187 (9th Cir. 2021) (expressing "no opinion as to whether [petitioner] may file a [Section] 2241 habeas petition seeking his immediate release based on conditions at FCI Terminal Island").

Absent controlling Supreme Court or Ninth Circuit precedent, many district courts in the Ninth Circuit have concluded that claims premised on the dangers posed by COVID-19 are not cognizable in habeas, even when the relief sought is release. *See Luna v. Engleman*, No. 2:22-cv-02627-JWH (GJS), 2022 WL 1211911, at *3-5 (C.D. Cal. Apr. 25, 2022) (holding that a claim "based on the BOP's asserted failure to provide adequate social distancing measures, adequate testing, its adherence to a herd immunity policy, and its failure to adhere to mask and vaccine mandates and CDC guidelines" is "a classic conditions-of-confinement claim that does not implicate the fact or duration of Petitioner's confinement" and therefore "may not be considered on Section 2241 habeas review"); *Miller v. Ponce*, No. CV 21-06985-MCS (DFM), 2022 WL 943056, at *2 (C.D. Cal. Feb. 8, 2022) (concluding that because the petitioner did "not challenge

his conviction or sentence but rather [sought] release based on the 'conditions of confinement' created by the COVID-19 pandemic," his allegations "sound in civil rights, not in habeas"); *Carranza v. Koehn*, No. 2:20-cv-01586-GMN-DJA, 2020 WL 6119515, at *5 (D. Nev. Oct. 16, 2020) (concluding that "this does not appear to be a habeas case" where federal pretrial detainees alleged that the conditions of their confinement placed them in "excessive danger" from COVID-19); *Alvarez v. Larose*, 445 F. Supp. 3d 861, 865-68 (S.D. Cal. 2020) (explaining that the plaintiffs' claims relating to COVID-19 "would not exist *but for* their current conditions of confinement" and therefore could not, "under any good faith calculus, . . . be characterized as a habeas corpus proceeding challenging the fact or duration of confinement in prison") (simplified).

A few district courts, however, have held that habeas jurisdiction may be proper under Section 2241 when a petitioner's COVID-19 claims challenge "the fact and duration of . . . confinement on the basis that no set of conditions of confinement under the present circumstances could be constitutional." *Torres v. Milusnic*, 472 F. Supp. 3d 713, 726 (C.D. Cal. 2020); *see also Sekerke v. Gore*, No. 20-CV-1998 JLS (MSB), 2021 WL 3604169, at *7 (S.D. Cal. Aug. 13, 2021) (holding that "[i]n the specific context of the deadly COVID-19 pandemic, when a prisoner claims his detention is unconstitutional in light of the dangers presented by COVID-19 combined with the petitioner's particular circumstances and that petitioner further contends there are 'no set of conditions' that could possibly make his custody constitutional, a petition for habeas corpus is the proper vehicle for challenging that custody"); *Nickerson v. Broomfield*, No. 20-06326 EJD (PR), 2021 WL 3934477, at *2 (N.D. Cal. Feb. 11, 2021) (stating that "[w]hen a[n] [individual in custody] seeks his release from custody rather than the implementation of procedures or safeguards at the prison to ameliorate the allegedly

unconstitutional situation—as for example, when he seeks release because the risk of contracting C[OVID]-19 in the prison is so great that there are no conditions sufficient to eliminate the constitutional violation—he can proceed in a habeas action because the fact that he seeks release puts his petition 'at the heart of habeas corpus'"); *Gutierrez-Lopez v. Figueroa*, 462 F. Supp. 3d 973, 983 (D. Ariz. 2020) (concluding that "[b]ecause Petitioner claims that her continued detention under the present conditions is unconstitutional and that her immediate release is the only effective remedy . . . , [her] claims can be viewed as challenging the fact, not simply the conditions of her confinement").

Petitioners present the same argument for habeas jurisdiction that these other district courts in this circuit have found persuasive. Specifically, Petitioners allege that because they seek release and allege that there are no conditions of confinement that are or could be constitutionally sufficient to protect them from COVID-19, they challenge the fact, and not simply the conditions, of their confinement. (Pet'r's Br. at 3-6.) Petitioners urge the Court to allow their claims to proceed on this theory, arguing, among other things, that doing so is not inconsistent with the Supreme Court's jurisprudence differentiating habeas and civil rights actions. (*Id.* at 6-13.)

Although the Court is sympathetic to Petitioners' difficult experiences at Sheridan during the pandemic, the Court cannot conclude that merely alleging that no conditions of confinement could satisfy the Eighth Amendment is sufficient to confer habeas jurisdiction under circumstances such as those present here. *See Jackson v. City of Twin Falls & Idaho Dep't of Corr.*, No. 1:21-cv-00013-BLW, 2021 WL 982307, at *3 (D. Idaho Mar. 16, 2021) ("Merely alleging that no conditions of confinement could possibly satisfy the Eighth Amendment—an allegation which every inmate could throw into any habeas corpus petition—does not magically

transform the nature of a conditions-of-confinement claim."). Petitioners insist that they are

challenging the fact of their confinement, but they do not allege that their convictions or

sentences are invalid in the first instance or that they are being held in excess of a lawfully

imposed term of imprisonment. Instead, Petitioners allege that the harsh conditions at Sheridan

place them at risk of serious harm from COVID-19, allegations premised on the conditions, and

not the validity, of their confinement. *See Wilson*, 465 F. Supp. 3d at 1048 (holding that

petitioners' COVID-19 claims were not cognizable in habeas because they "ultimately [were]

premised on the conditions of confinement"). Indeed, Petitioners' claims "would not exist *but for*

[the] current conditions" at Sheridan. *Alvarez,* 445 F. Supp. 3d at 866. Petitioners' argument that

habeas jurisdiction exists simply because they allege that nothing short of their release may

remedy the unconstitutional conditions at Sheridan thus improperly "conflates the nature of relief

with the substance of the claim."[9] *Id.*; *see also Jackson*, 2021 WL 982307, at *3 (holding that

"[r]equesting release as the remedy for unconstitutional prison conditions does not render the

substantive conditions-of-confinement claim a challenge to the fact of an inmate's

confinement"); *Acevedo v. Capra*, 545 F. Supp. 3d 107, 115 (S.D.N.Y. 2021) (explaining that the

"[p]etitioners' focus on the remedy they seek, rather than the nature of their claim, is

procedurally untenable" because "[i]t would require a court to determine, at the very outset of a

lawsuit, whether there are remedies short of release that could cure the alleged constitutional

---

[9] Petitioners' reliance on *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), *Cheek v. Warden of Fed. Med. Ctr.*, 835 F. App'x 737 (5th Cir. 2020), and *Hope v. Warden York Cnty. Prison*, 972 F.3d 310 (3d Cir. 2020)—each of which similarly emphasizes the nature of the requested relief rather than the substance of the claim in recognizing that COVID-19 claims may be cognizable on habeas review—is therefore misplaced. *See Jackson*, 2021 WL 982307, at *3 (rejecting the Sixth Circuit's analysis in *Wilson* because it "improperly conflates the nature of relief with the substance of the claim" and "ignores that a variety of orders short of release can bring a prison into Eighth Amendment compliance with respect to the pandemic").

violation"). Given the specific factual allegations on which Petitioners' claims rely here—
allegations that exclusively concern the conditions at Sheridan—the Court concludes that this
case cannot, "under any good faith calculus," be characterized as a habeas proceeding
challenging the fact of Petitioners' confinement.[10] *Alvarez,* 445 F. Supp. 3d at 866; *see also*
*Jackson*, 2021 WL 982307, at *4 (concluding that "the nature of the claim itself—not the relief
sought—ultimately determines whether a claim may be asserted in a habeas petition").

That the Supreme Court appears to have left open the possibility that individuals in
federal custody may, in some circumstances, challenge the conditions of their confinement under
Section 2241 does not save Petitioners' claims here.[11] *See Ziglar v. Abbasi*, 137 S. Ct. 1843,
1862-63 (2017) (noting that for challenges to "large-scale policy decisions concerning the
conditions of confinement imposed on hundreds of prisoners[,]" the Court has "left open the

---

[10] Petitioners alleged in the amended petition that the BOP could do more to improve
conditions to protect them from COVID-19, by establishing "consistent and effective
safeguards" to control the spread of the disease, prohibiting further transfers into Sheridan, and
mandating specific cleaning and social distancing protocols. (Am. Pet. at 2-3.) The FPD also
acknowledged at the hearing before the district judge that Stirling's conditions could be rendered
constitutional if "the number[] [of individuals in custody at Sheridan] [is] substantially
lessened." (Tr. 25:16-21.) Thus, even if the Court found Petitioners' theory of habeas jurisdiction
persuasive, they do not plausibly allege in the amended petition that there are no conditions short
of release that would be constitutionally adequate to protect them from COVID-19 at Sheridan.
*See Alvarez*, 445 F. Supp. 3d at 867 (disagreeing with the argument that no set of conditions
would be constitutionally sufficient because, "[a]s Plaintiffs allege in their Complaint, a
significant reduction in population, an increase in sanitation, and compliance with CDC
guidelines for detention facilities would eliminate considerable risk of . . . inmates contracting
COVID-19").

[11] The Ninth Circuit similarly has declined to resolve whether habeas jurisdiction extends
to conditions-of-confinement claims by individuals in federal custody. *See Nettles v. Grounds*,
830 F.3d 922, 927, 931 n.6, 935 (9th Cir. 2016) (holding that a civil rights action under 42
U.S.C. § 1983 "is the exclusive vehicle for claims brought by [individuals in] state [custody] that
are not within the core of habeas corpus"—that is, claims that "would not necessarily lead to [the
individual's] immediate or earlier release from confinement"—but declining to consider whether
the same is true for individuals in federal custody).

PAGE 19 – OPINION AND ORDER

question whether [federal detainees] might be able to challenge their confinement conditions via

a petition for a writ of habeas corpus"). Other courts have recognized that COVID-19 conditions

of confinement do not rise to the level of potential habeas relief the Supreme Court anticipated in

*Abbasi*:

> . . . Petitioners' Eighth Amendment claims [seeking release from federal
> confinement to remedy conditions created by the pandemic] sound more in the
> nature of the type of habeas claim the Supreme Court in *Preiser* hypothesized, but
> has yet to recognize: '[w]hen a prisoner is put under additional and
> unconstitutional restraints during his lawful custody, it is arguable that habeas
> corpus will lie to remove the restraints making the custody illegal.' The Supreme
> Court resurrected this idea more recently in *Abbasi*. Yet, although the petitioners
> in *Abbasi* alleged [that] they were held in tiny, empty, constantly lighted cells for
> over 23 hours per day without basic hygiene, and subjected to physical abuse,
> including broken bones, and verbal abuse, including sexual and religious insults,
> the Supreme Court did not find it was such a case for habeas relief 'to remove the
> restraints making the custody illegal.' The Court's decision is telling of just how
> extraordinary the case must be for habeas jurisdiction to lie before a prisoner may
> be released from lawful custody based on a condition of confinement.

*Wragg v. Ortiz*, 462 F. Supp. 3d 476, 504-05 (D.N.J. 2020) (quoting *Abbasi*, 137 S. Ct. at 1853).

Thus, even assuming federal conditions-of-confinement claims may properly sound in habeas

under certain extraordinary circumstances, a close reading of *Abbasi* suggests that "the remedy is

a narrow one that would not apply" to Petitioners' COVID-related claims here. *Luna*, 2022 WL

1211911, at *5; *see also Weibel v. Von Blanckensee*, No. CV-20-00341-TUC-JAS (DTF), 2021

WL 5507517, at *3 (D. Ariz. Aug. 13, 2021) (acknowledging that *Abbasi* "neither explicitly nor

implicitly foreclosed the use of habeas corpus for conditions-of-confinement claims[,]" but

concluding that claims concerning "lack of masks, cleaning solution, laundry service, ability to

socially distance," and other COVID-19 conditions are not cognizable in habeas); *Camillo-

Amisano v. Ponce*, No. 2:21-cv-00072-ODW-JDE, 2021 WL 3377237, at *2 (C.D. Cal. June 22,

2021) (noting that "even if it were permissible for a federal prisoner to raise a conditions of

confinement claim under Section 2241," a case challenging pandemic conditions "is not one of

those 'exceptional' cases warranting habeas jurisdiction" and "the relief being sought is simply

not what lawyers or judges think of as habeas, even under [Section] 2241") (simplified); *Lustig*

*v. Warden, FCI Lompoc*, No. CV 20-3708-SB (AGR), 2021 WL 1164493, at *1-2 (C.D. Cal.

Jan. 1, 2021) (finding "no reason to depart from the reasoning" of district court cases declining to

extend habeas jurisdiction to COVID-19 claims under *Abbasi*); *Wilson*, 465 F. Supp. 3d at 1049

(explaining that "[a]lthough the Supreme Court has not entirely foreclosed habeas relief [on

federal conditions-of-confinement claims], a careful reading of the Supreme Court cases suggests

that habeas cannot be stretched this far, as explained in *Wragg*"); *Wragg*, 462 F. Supp. 3d at 504

(declining to find case challenging COVID-19 conditions under Section 2241 "to be that

'extraordinary case' where [the district court] should expand habeas jurisdiction, more

extraordinary than even *Abbasi*, where the Supreme Court did not see fit to extend habeas

jurisdiction over a conditions of confinement claim involving outright alleged physical abuse of

prisoners who were not serving a sentence upon conviction of a crime").

      While the Court acknowledges that, conceptually, there could be a policy in a federal

prison that could result in no combination of conditions sufficient to render custody in that

facility constitutional such that habeas relief is appropriate under *Abbasi*, no court has ever

actually so found. This is not the appropriate case of first impression, especially where

Petitioners acknowledge in the amended petition that there are measures Respondent could take

short of release to improve conditions during the COVID-19 pandemic (e.g., prohibiting further

transfers into Sheridan, and mandating specific cleaning and social distancing protocols). *See*

*Camillo-Amisano*, 2021 WL 3377237, at *5 (concluding that the petitioner's claims could not be

brought under Section 2241 because "[c]ontrary to Petitioner's contentions, other relief is

available to address his concerns, including injunctive relief ordering the Prison to take

preventative measures to reduce the risk of COVID-19 spreading"); *see also Adelman v. Warden or Acting Warden, Lompoc-FCI*, No. 2:21-cv-04336-JAK (GJS), 2021 WL 2379402, at *7 (C.D. Cal. June 10, 2021) (finding persuasive those cases concluding that habeas jurisdiction is unavailable to address COVID-19 conditions because "[i]t is possible that there is relief that could be fashioned short of release").

Finally, the evolution of compassionate release during the COVID-19 pandemic has clearly demonstrated that habeas relief is not the only option available to Petitioners to remedy the alleged deprivations they assert here. Compassionate release has provided available relief to petitioners with special individual circumstances justifying early release from custody during the pandemic. Indeed, the FPD has assisted over 155 individuals serving federal sentences, including Mr. Stirling and Mr. Green, to obtain compassionate release from federal custody during the course of this litigation. (*See* Maxine Bernstein, *Judge Grants Compassionate Release to Convicted Bank Robber, Calls his Time at Oregon's Federal Prison 'Excruciating Experience'*, OREGONLIVE (May 6, 2022, 4:48 PM), https://www.oregonlive.com/crime/2022/05/judge-grants-compassionate-release-to-convicted-bank-robber-calls-his-time-at-oregons-federal-prison-excruciating-experience.html (last visited Nov. 15, 2022); U.S. Sentencing Commission Compassionate Release Data Report, FY2020-21, Tab. 2 (reflecting that the District of Oregon granted 63.2% of compassionate release motions, the second highest percentage of any federal district), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/compassionate-release/20220509-Compassionate- Release.pdf?utm_medium=email& utm_source=govdelivery (last visited Nov. 15, 2022); *see also United States v. Stirling*, No. 3:19-cr-00150-MO (D. Or.), ECF No. 154; *United States v. Green*, 3:16-cr-00063-SLG (D. Alaska), ECF No. 208.

In addition to the compassionate release remedy, a civil rights action under the PLRA also provides for the relief Petitioners seek here. Prospective injunctive relief is available under the PLRA "if it 'extend[s] no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs.'" *Plata v. Newsom*, 445 F. Supp. 3d 557, 561 (N.D. Cal. 2020) (quoting 18 U.S.C. § 3626(a)(1)(A)). Further, individuals in custody may obtain release under the PLRA via a prisoner release order issued by a three-judge panel if less intrusive relief fails to remedy the deprivation. 18 U.S.C. § 3626(a)(3)(A), (B). If individuals in federal custody first exhaust their administrative remedies, they may challenge the same conditions of confinement Petitioners challenge here by filing a civil rights action under the PLRA. *See Alvarez*, 445 F. Supp. 3d at 866 (explaining that the plaintiffs' COVID-19-related habeas claim "is . . . based on confinement conditions" and therefore falls within the purview of the PLRA).

For all of these reasons, the Court agrees with the weight of authority in this circuit and concludes that claims challenging prison conditions created by the COVID-19 pandemic are not cognizable under Section 2241, even if the petitioner seeks release from custody. Specifically, the allegations in the amended petition do not "support a finding that immediate release from an existing, valid conviction and sentence imposed by another federal court is the only relief appropriate here and that only habeas review will suffice." *Luna*, 2022 WL 1211911, at *5. Adopting Petitioners' arguments to the contrary would "risk . . . turning [Section 2241] into a general civil rights statute by the mere expedient of a petitioner seeking that release remedy, among other remedies, in every habeas action in which conditions of confinement are at issue, e.g., poor medical treatment, unsanitary conditions, overcrowding, assaultive environment, and so forth." *Harrison v. Broomfield*, No. 2:20-cv-01838, 2020 WL 5797871, at *2 (E.D. Cal. Sept. 29, 2020). Petitioners' claims are not cognizable in habeas, and therefore this Court lacks

jurisdiction under Section 2241 to adjudicate Petitioners' claims and must dismiss the amended petition.[12]

## CONCLUSION

For the reasons stated, the Court DISMISSES the Amended Complaint and Petition for Writ of Habeas Corpus (ECF No. 16), with prejudice, and DENIES AS MOOT all pending motions.[13] The Court also DISMISSES all of the related petitions for writ of habeas corpus consolidated under this case number and under *Lander v. Salazar*, No. 3:20-cv-01379-SB.[14]

**IT IS SO ORDERED.**

DATED this 15th day of November, 2022.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

[12] Although the Court does not reach the merits of Petitioners' claims, it notes that as of the date of this opinion, the COVID-19 vaccine and associated booster vaccines are widely available, there is only one confirmed active COVID-19 case at Sheridan, and the facility has returned to a Level 2 "modified" operational level. (*See* FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/she/) (last visited Nov. 15, 2022). Regardless of the label of the claims underlying Petitioners' request for immediate release, it is clear that the release of all Petitioners from federal custody at this time is not necessary to address any alleged unconstitutional conditions of confinement related to COVID-19.

[13] The Court sealed Petitioners' proposed findings of fact and conclusions of law (attached as Exhibit A to Petitioners' response to Respondent's motion to stay), pending resolution of the motion to stay. (ECF No. 137.) Now that the Court has denied as moot Respondent's motion to stay, the Court unseals Exhibit A (ECF No. 134-1). The Court authorized Petitioners to file proposed findings of fact (*see* ECF No. 108), and the FPD put a great deal of work into investigating and documenting conditions at Sheridan, from Petitioners' standpoint, over the relevant time period. Respondent has not had an opportunity to respond to the proposed findings of fact and the Court does not adopt Petitioners' proposed findings, but the document is an important part of the record of this case.

[14] *See Lander* Consolidation Order (ECF No. 7) (ordering that the Court will resolve all threshold legal and factual issues in *Stirling*, with the exception of any issues relating only to pretrial detainee petitioners, which the Court will address separately in *Lander*). The Court's jurisdictional analysis herein applies to both post-conviction and pretrial detainee petitioners.