IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN P. STIRLING,                    )
                                     )
          Petitioner,                )   Case No. 3:20-cv-00712-SB
                                     )
     v.                              )
                                     )
DEWAYNE HENDRIX, Warden,             )   September 22, 2022
FCI Sheridan,                        )
                                     )
          Respondent.                )   Portland, Oregon
_____)

**Oral Argument**

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE STACIE F. BECKERMAN

UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES


FOR THE PETITIONER:        Ms. Lisa Hay
                           Ms. Julie Vandiver
                           Federal Public Defender's Office
                           101 S.W. Main Street, Suite 1700
                           Portland, OR 97204




FOR THE RESPONDENT:        Ms. Alison M. Milne
                           Mr. John Coit
                           United States Attorney's Office
                           1000 S.W. Third Avenue, Suite 600
                           Portland, OR 97204




COURT REPORTER:            Bonita J. Shumway, CSR, RMR, CRR
                           United States District Courthouse
                           1000 S.W. Third Avenue, Room 301
                           Portland, OR 97204
                           (503)326-8188
                           bonita_shumway@ord.uscourts.gov

(P R O C E E D I N G S)

(September 22, 2022; 9:04 a.m.)

\* \* \* \* \*

THE COURTROOM DEPUTY:  Your Honor, we are here in the matter of Stirling versus Salazar, Case No. 3:20-cv-00712-SB, for oral argument on the jurisdictional issues raised in respondent's renewed response to amended petition for writ of habeas corpus and renewed request for ruling on jurisdiction issues, Docket No. 107; and petitioners' motion for reconsideration of summary denial, Docket No. 123; and respondent's motion for stay, Docket No. 128.

Counsel, could you please identify yourselves, beginning with petitioner.

MS. HAY:  Thank you.  Lisa Hay for the petitioners, and I'd like to introduce Attorney Julie Vandiver from our office, assisting on the case as well.

THE COURT:  Thank you.  Good morning.

MS. VANDIVER:  Good morning.

MR. COIT:  Good morning, Your Honor.  John Coit for the respondent.

MS. MILNE:  And good morning, Your Honor.  Alison Milne for the respondent.

THE COURT:  Good morning.

We're here for oral argument on several issues, and I'd like to start with the respondent's jurisdictional

challenge and its related motion to stay. And if you want to also address the motion to strike the proposed findings of fact, you may. I'll then turn to petitioners to address the same issues.

And once both sides have had sufficient time to address those issues, I'll allow petitioners to argue their motion for reconsideration of the Court's denial of petitioners' emergency motion to appoint a special master, and allow respondents to respond to that motion for reconsideration.

My goal is to give both sides as much time as you need to address all of the pending issues, and we'll go back and forth as necessary to make sure you have a full and fair opportunity to address those issues.

I'll start with respondents on the jurisdictional challenge and the motion to stay.

MS. MILNE: Thank you, Your Honor. Do you mind if I go to the podium?

THE COURT: I don't mind at all. And feel free to leave your mask on or take it off. So long as our court reporter can understand what you're saying, I'll be able to understand.

MS. MILNE: Thank you. I'll take it off for convenience.

Good morning, Your Honor. I'm here today on behalf

of the respondent Warden Hendrix. I'll be arguing on his behalf regarding the response to the amended petition and renewed request for ruling on jurisdiction, and my co-counsel Mr. Coit will be presenting argument regarding respondent's motion to stay and in response to the petitioners' motion for reconsideration.

Before addressing -- excuse me -- the legal issues, I'd like to start by providing a brief update on the current conditions at Sheridan. Conditions at Sheridan are very different than they were when this case began in 2020. Over two years later, Sheridan is operating under normal conditions today, Level 1 green. Programming is provided, with classes offered for an hour and a half to students. Psychology is also running programs by housing units, and recreation is also being offered to inmates, except for those who have COVID. And as of yesterday, there were only 11 positive COVID cases. Now, those with COVID are still -- they are allowed out of their cells for time to shower and make phone calls, but again they're just not given a full recreation opportunity.

And so given -- again, the conditions are very different than when this case began. And although given the opportunity, petitioners chose not to further amend their petition from the version filed in 2020. In that amended petition before the Court, petitioners voiced concerns about uncertainties associated with COVID, and sought orders in their

amended petition mandating enlargement of custody until or if the lockdowns were lifted and safe conditions were restored.

The information regarding the current conditions demonstrates that BOP staff at Sheridan took reasonable measures to contain the virus there and conditions have changed. Just as conditions in the community have dramatically improved related to COVID, so have conditions at Sheridan. And conditions are what this case is about, conditions and the statutes under which inmates can bring claims challenging them.

Petitioners complain about the risk of -- excuse me, the risk of exposure to COVID and conditions resulting from measures taken by BOP to limit exposure and mitigate those risks. Petitioners also complain about ongoing issues and seek as a remedy the only remedy available in a habeas action, release or sentence reduction. But as respondent has argued in the pleadings, this Court does not have jurisdiction over complaints in this habeas action. That is not to say that courts can't hear complaints about conditions of confinement -- they can -- but Congress has statutorily described the vehicles under which that can be done, and Congress's intent should not be frustrated. Those vehicles are governed by the Prison Litigation Reform Act. So there are avenues of relief for petitioners. They seek -- or excuse me. They include compassionate release, Bivens, and FTCA claims.

The PLRA was intended to promote administrative

redress, filter out claims, and foster better-prepared litigation of claims in court. And the PLRA governs all civil actions brought by inmates related to prison conditions. There is an exception for habeas cases challenging fact or duration of confinement that the Ninth Circuit has found, but that is not the case here. Petitioners are not challenging fact or duration of confinement, and again they've challenged conditions.

As the Ninth Circuit has found and pointed to the Supreme Court suggestion, the scope of habeas is limited to claims at the core of habeas, which again argue or challenge fact or duration of confinement. Because the PLRA applies to challenges of conditions of confinement, exhaustion is required. Under the PLRA, prisoners must exhaust administrative remedies before bringing suit. Under binding statutory interpretation, there is no jurisdiction under habeas to hear petitioners' claims because they should be brought in accordance with the PLRA, and they were required to exhaust them before bringing district lawsuits. And although petitioners claim that this is a habeas case, habeas cases also require exhaustion, and although that exhaustion can be waived, it's not to be done lightly.

Petitioners admit that they have not exhausted their administrative remedies or other remedies, but it's their burden to show why and to show that those remedies are

unavailable, and they have not met that burden.

In support of the exhaustion requirement, the Ninth Circuit has noted that many suits about prison conditions can be addressed effectively and easily by corrections officials through internal grievance procedures, and that could have been true here. The PLRA requirements requires that remedies and relief should be narrowly tailored and the least intrusive remedies should be provided. And, again, since that governs this challenge to conditions of confinement, the respondent points out that the remedy that petitioners seek -- release -- is an extreme remedy and it's not narrowly tailored or the least intrusive possible remedy.

As one other option under the PLRA, petitioners could seek release orders. Though that too would be an extreme measure, it's a possibility, but that relief would require a three judge court panel to agree to issue an order only after a court previously entered an order for less intrusive relief that failed to remedy the deprivation sought.

Compassionate release is also a possibility and, respondent would argue, more appropriate. The petitioners seek individualized relief, as they acknowledge, and again that would be a more appropriate avenue.

Some petitioners have sought and been granted compassionate release. Mr. Green is an example. Others were denied because courts found there were not exceptional or

compelling reasons to release them, and also cited safety reasons. Inmates could also request reconsideration for their sentence in court or seek transfer to another institution.

So, again, release is an extreme measure, and it is not the least intrusive or the most narrowly tailored.

Although petitioners challenge conditions of confinement and seek release, there's other alternatives, as mentioned, but also the fact that changes to the conditions could be made without releasing the petitioners. Petitioners have not argued that these other remedies are unavailable.

And petitioners again said that there are conditions of confinement during -- excuse me. Petitioners claim that there would be no conditions of confinement during the pandemic that would be constitutional, but at the same time they also cited to possible improvements that could be made, such as de-densifying, safety protocols, testing, safe transportation, many of which have now been put in place with the availability of vaccines and the education that we all now have about COVID-19.

The suggestions of what could improve show that the claim that there are no conditions is just not valid. This case cannot be left open to create a vehicle to allow petitioners to circumvent the PLRA and attempt to control aspects of prison operation when the individual -- from time they spend in the yard or when they receive specific treatment.

Petitioners point to a Sixth Circuit case, *Wilson*, to argue that their claims can be brought under habeas, but there's a distinction there, and in the *Wilson* case there was a subset of medically vulnerable inmates, and that court found there were no conditions of confinement that would be constitutional for them.

But there was another subset, and that other subset is more like petitioners here. That subset argued again that there were some conditions that could be made or improved that would make their confinement constitutional, and the court there found that that other subgroup of non-medically vulnerable inmates' claims were not proper under habeas. Now, that court did look at the medically vulnerable subset for their Eighth Amendment claims and found that those -- that they could not meet the requirements of those Eighth Amendment claims. And respondent would argue that if the Court went to the merits in this case, that the petitioners' claims could not -- petitioners could not meet the merits here either, and the reason for that is because the Eighth Amendment claims require proof of deliberate indifference, and that is to say that petitioners would have to show that the prison officials knew of the risks of -- to health and safety of the inmates and ignored that risk, but as we've seen, the warden was very much aware of the risks of COVID-19, and he took measures to prevent and mitigate those risks.

Now, the petitioners might not -- and clearly don't agree with what measures were taken, but that's not the test. The test is whether reasonable measures were taken. And even if measures are taken and the risk wasn't adverted -- and as we know now, even some inmates do have COVID -- again, that's not the test either. The test is if reasonable measures were taken, and respondent would argue that they were.

Thank you.

THE COURT: I have a few questions. I think we've been debating now for over two years the distinction between a habeas claim and a condition of confinement claim, and you mentioned that petitioners are not challenging the fact of their confinement. But I have a hunch they'll respond that they are in fact challenging the fact of their confinement, in the sense that their argument is that there is habeas jurisdiction if there are no conditions of confinement during a pandemic that are constitutional.

So separating the merits of their claim, do you agree that they are in fact arguing that the fact of confinement itself is unconstitutional here?

MS. MILNE: I would not agree, but if I'm not understanding how you presented it, please let me know. But because they are saying there are no conditions but at the same time they're saying there are conditions, and they're giving examples of the testing and the de-densifying. So the

statement that there aren't conditions is not supported by the other statements made, and so for that reason, I would argue no. And I understand that is somewhat going to the merits, but it is the type of claim.

THE COURT: That's the question that I am stuck on, because do you agree that hypothetically there might be a scenario during a pandemic or otherwise where there are no conditions of confinement that are constitutional? For example, we didn't know much about COVID in the early days -- we know much more now -- but if there was a pandemic where the virus had 100 percent lethality, and it was very contagious, that might present a scenario where there are truly no conditions that are going to save people's lives because of the density of a prison population. Do you agree that hypothetically there would be habeas jurisdiction if the mere fact of confinement was unconstitutional?

MS. MILNE: Just give me a minute.

I have thought about situations where people are -- everyone was -- unfortunately everyone was dying by some cause or something like that, but the test -- well, although it sounds harsh, I would say, too, habeas does still require exhaustion, and exhaustion here still wouldn't be met even if you find that this is a true habeas case, but I would -- it's difficult because that obviously isn't the fact pattern, but again, thinking there would be other alternatives, I would

hope, whether they could be transferred or go somewhere else, maybe not stay in that facility but there would be other remedies where they could go.

THE COURT: And the reason I ask is because it relates to the question of whether the Court needs to look at the merits, and the case started in an unusual posture, I think before your time and Mr. Coit's time on the case, where petitioners moved for emergency relief, and the motion went to Judge Simon. And although he denied the motion for emergency relief, he opened the door to discovery in this consolidated habeas case. And so although he didn't make an explicit finding that the Court has habeas jurisdiction, he opened the door to case development on the merits to determine if habeas relief would be appropriate.

Based on the way the case has evolved, does the Court need to reach the merits to determine if habeas relief is appropriate here?

MS. MILNE: The respondent would argue no, and in thinking about your question more, I would also argue that compassionate release would be an appropriate vehicle in the hypothetical if there were conditions in the other pandemic going forward and talking about it.

But going to the merits, I would think would be seeing what they're complaining of, what conditions, and listing those things out. But again that would be conditions

and not the fact or duration, which the Ninth Circuit has found is the core of habeas.

THE COURT: And then the tricky question in mind is the intersection of conditions and the fact of confinement such that again the petitioners are arguing that during this pandemic, there were no conditions of confinement that would be constitutional, and therefore the fact of confinement is unconstitutional.

Do I need to reach the merits to make that conclusion or not?

MS. MILNE: No, because even -- I guess if there's no, but even if you did meet the merits, the test would be the Eighth Amendment violation, which would be the deliberate indifference. And as Judge Simon noted earlier, he didn't think they would prevail on those merits. And again what the test sets out, whether or not there was a risk, which we all agree there was a risk, but whether or not the prison officials and warden took action is also part of that test, and it's evident that the warden did take action. And, again, even if that action is something the petitioners didn't agree with and even if it did still result in some of the inmates getting COVID, there were measures taken, and so that satisfies the prong of the reasonable measures taken, so there's no need to look any further.

THE COURT: But the question of whether there are

reasonable measures taken is also a question that goes to the merits, right?

MS. MILNE: Well, but the test actually is more deliberately indifferent if they knew of the risk and did nothing and ignored it. And it's clear that the pandemic was not ignored at Sheridan.

THE COURT: Your answer harkens back to Mr. Hager's argument in the response over two years ago that the argument that any conditions of confinement are unconstitutional is illogical because it ignores the second prong of the Eighth Amendment test, which is the deliberate indifference part. So if you only look at the conditions of confinement, as terrible as they are, that's not the only question. The other question is we need to look at whether there was deliberate indifference. Does that call into question the Sixth Circuit's logic in *Wilson*? In other words, did the Sixth Circuit get it wrong? Are there, in fact, no hypothetical habeas claims in the pandemic context?

MS. MILNE: Well, I don't think the Sixth Circuit got it wrong because they used that test, but I'm trying to think of a hypothetical myself. I would say even if, you know, there was a terrible situation where there's one inmate left, as horrible as it sounds, as long as BOP was taking measures, I don't think the petitioners would prevail on a deliberate indifference claim.

But there's also other avenues that those inmates and that one last inmate could seek, and those would be the compassionate release, transfer to another facility that may have less cases or things like that or whatever it is that that remaining inmate is looking for. But there would be other avenues. And if not to stay in prison, as I mentioned before, going before the sentencing court and asking for release there.

THE COURT: If the Sixth Circuit got it right, doesn't that mean that any petitioner who is medically vulnerable has a potential habeas claim here, such that there is, in fact, habeas jurisdiction over I'll call it 80 percent of the medically vulnerable petitioners?

MS. MILNE: Well, the respondent would argue, though, that compassionate release is still the more appropriate vehicle there because it's looking at the medical conditions, and as petitioners acknowledge, too, the relief should be individualized in looking at the individual inmate, and the more efficient way is to do it through compassionate release.

THE COURT: I was happy to hear that most of Sheridan is back to some semblance of normalcy. What's the current operational -- modified operational level? Are they back to Level 1?

MS. MILNE: Yes. So it's the green normal operations. As I said, there's some programming is available, recreation is also being offered, but again the 11 that do have

COVID, for somewhat obvious reasons, are not going out to the recreation as the rest are.

THE COURT: Okay. One other question on the exhaustion. I understand the arguments with respect to PLRA exhaustion. You also noted that there is also an exhaustion requirement for habeas relief, and that was another argument that was made -- that the respondent made in the initial response. My understanding of the record, having reviewed the hearing transcripts and all the filings, is there's been no finding of waiver or impossibility with respect to exhaustion of remedies prior to filing a habeas claim; is that correct?

MS. MILNE: That's correct.

THE COURT: It feels a little late in the game to be discussing that after two years of discovery, but I just wanted to make sure we were on the same page, that there's no dispute here that there has been no finding with respect to whether exhaustion on the habeas side was excused for some reason.

MS. MILNE: That's correct. There's no ruling, but petitioners did admit that they didn't exhaust, that they did fail to meet the burden of showing why it was that they didn't exhaust, such that that was unavailable.

THE COURT: Are you going to address the motion to stay or is that Mr. Coit?

MS. MILNE: Mr. Coit was going to.

THE COURT: Why don't I hear from you first on the

motion to stay, because I do think the motion to stay is quite intertwined with the Court's ruling on jurisdiction, because I need to make a determination whether I should or need to rely on the proposed findings of fact to make a decision on jurisdiction. So Mr. Coit, why don't you go ahead with respect to the motion to stay.

MR. COIT: Sure. Thank you, Your Honor.

Good morning.

THE COURT: Good morning.

MR. COIT: So I'll be addressing the motion to stay, as my colleague, Ms. Milne, mentioned.

And at the heart of the motion to stay, Your Honor, is the fact that this case is over two years old. The amended petition was filed in July of 2020; the response was filed in August of 2020; and since then the parties, the BOP, the Court have expended significant time, resources, energy litigating a matter over which we believe this Court has no jurisdiction. We believe it's time for the Court to stay the rest of this case and decide those threshold jurisdictional questions.

The Court has already stayed this matter pending the determination of the motion to stay, but really the motion to stay is just asking for a brief extension of that stay that's already in place for the reasons that we laid out in our motion, which we believe is that the jurisdictional question is due to be decided and ought to be decided before the case moves

forward. And petitioners point to a few things that they suggest weigh against favoring a stay. We believe those don't run against entering a stay in this case. They point to the fact that, for example, arguing that respondent has reneged on the agreement to litigate the common issues of law and fact in this case. Respondent is still committed to proceeding as if -- as there are common issues of law and fact in the consolidated petitions. We're simply arguing that we ought to determine the consolidated jurisdictional question first, and then if we get past that, the consolidated common questions of law, and then proceed to the common questions of fact.

Next petitioners argue that there would be some undo prejudice they would suffer if the Court entered a slight extension of the stay that's already been entered in this case. If anything, respondent believes the equities point in the other direction, that respondent has been engaged in over two years of discovery, litigation, and substantial time and effort of the BOP and the Court and respondent itself in dealing with the matter which, as was filed back in August, the respondent believes there is no jurisdiction under 2241 to hear any of these consolidated petitions.

And finally, I think I want to get to Your Honor's question about whether the merits need to be decided to decide the jurisdictional question, and that's something that the petitioners raised in their response to the motion for stay.

The case they cite, *Corrothers*, is not directly on point. It shouldn't control here. *Corrothers* was a situation where the facts needed to be decided to determine whether the Court has jurisdiction. The original response filed back in August assumed the correctness of the amended petition, and said even if assuming those allegations were correct, the Court still has no jurisdiction under 2241. We don't believe that there are any factual questions the Court needs to decide before determining on its own whether as a matter of law it has jurisdiction under Section 2241 to hear these amended habeas petitions. These types of conditions of confinement claims the petitioners bring simply are not the kind of claims that the PLRA would allow under the exception for fact or duration of confinement. It's really almost a matter of creating, you know, artful pleadings, if you will, to try to say our unconstitutional condition is so terrible that it must mean we need to be released is not completely arguing that there is no set of conditions under which we can be confined that is constitutional. We point to some areas in the amended petition that seem to indicate if the prison de-densified, if it changed the amount of time prisoners were in their cells, if it changed the amount of prisoners from outside of the prison who came into the prison, that those might be some conditions that if changed would render confinement constitutional. We don't believe there needs to be fact finding about that. We believe

that that, as a matter of pleading, as a matter of the face of the amended petition, the Court can look at that and say this is a conditions of confinement claim, there are ways the prison could, according to petitioners' allegations, cure what petitioners believe is an unconstitutional condition of confinement. This is not the rare exceptional circumstance.

And petitioners cite, for example, a law review article in their response where there's a sinkhole under a prison and the prison is falling in the sinkhole, and the Court must be able to rescue those prisoners and order release. This is not that case. We're back -- certainly it is not that case anymore. Sheridan is back to a Level 1, to green, to normal. We're not in the kind of pandemic we were in 2020, and certainly this pandemic, even then, was not to the extent of a sinkhole opening up and letting a prison fall.

We believe the motion for stay should be granted.

THE COURT: Thank you.

I understand your argument that the Court should -- even assuming that all of the facts pled in the amended petition are true, you're arguing the Court should make the determination that even if all those facts are true, it's not bad enough to open the door to habeas relief. Is that fair to say?

MR. COIT: Maybe I'd change the characterization a little bit, Your Honor, that not that it's not bad enough but

they haven't really pled a fact of confinement claim. The types of claims that you see under fact of confinement under 2241 are about how BOP is counting petitioners for Step Act credits, whether, you know, some policy that BOP is instituting is unconstitutionally confining that prisoner. Instead, what the PLRA says -- it's very explicit, that any condition of confinement claim must be brought through the avenue of the PLRA. If we were to read conditions at certain -- if they were bad enough conditions of confinement claims to fall under fact or duration claims that could be brought in habeas, that would swallow the entire exception to the PLRA very explicitly. The PLRA is a claim-limiting statute, and was meant to, as my colleague mentioned, point things in the direction of the administrative grievance process and limit the number of prisoner habeas claims.

THE COURT: I think you're right, and that that's the very door that was opened in this case at the very beginning, where a claim was made that the conditions are so bad that the mere fact of confinement is unconstitutional. To determine if that claim has merit, we allowed discovery, and two years later we're discussing the merits of the claim.

Is your concern that the Court's ruling here could open the door to more conditions claims and to habeas claims going forward?

MR. COIT: I think certainly our position, Your

Honor, is that Congress has laid out a way for courts and parties to litigate these type of conditions of confinement claims. The explicit mandatory exhaustion requirement is an effort to get prisons and prisoners working together to resolve these claims before they're filed in habeas. So a contrary opinion I think would frustrate the purpose of the PLRA, and we believe would take claims out of the avenue provided by Congress and provide some other forum for a claim where there is already a forum. Congress has told us how these claims ought to be filed, how they ought to be considered.

THE COURT: And with respect to the motion to stay, was your primary concern the possibility of an evidentiary hearing or litigation regarding the proposed findings of fact, or was your concern further discovery or both?

MR. COIT: I wouldn't say that we're concerned about an evidentiary hearing or the proposed findings of fact, Your Honor. It was more about getting this case on a track to meaningful resolution. As you mentioned, it's been around for a while, and respondent would -- as I'm sure petitioners would -- like to get the case resolved. We believe the most efficient, positive way to do that is to first for the Court to assure itself that it has jurisdiction, and then as in any other civil litigation, resolve the legal questions to see if one or the other party has judgment as a matter of law based on undisputed facts, and the respondent would be in a position to

file a motion for summary judgment if the Court ruled that it did have jurisdiction, and only after that proceed to litigation and resolution of findings and fact and conclusions of law, which is the endpoint of this case. Certainly to rule upon findings of fact and conclusions of law and then have summary judgment would invert the normal procedure of civil litigation, and the motion for a stay is an effort to -- and our proposal to put the case on that track.

THE COURT: We had a hearing on June 23rd of this year where I think we all came to the same conclusion that it's time to tee up the jurisdictional issues, and we discussed a few different paths of how to do that. And one proposal was to have an evidentiary hearing and allow petitioners to present expert testimony and witness testimony before the alternative was to allow petitioners to file the proposed findings of fact -- in other words, their side of the story and the evidence that they would be prepared to submit, and not to have the government -- sorry, respondent respond to that necessarily or litigate that, but just to have that on the record so that the Court could make a determination of even if all those things are true, is there habeas relief here or is there not. And that was the goal of the proposed findings of fact.

When this motion to stay was filed, I put everything on hold pending a resolution of the motion to stay, but respondent (sic) went ahead and filed the proposed findings of

fact, and respondent moved to strike those.

Two questions: One, do I need to reach the issue of whether those proposed findings of fact result in a conclusion that there is or is not habeas relief here; and second, obviously the findings of fact reached the public's sphere before I sealed them.

Is there anything that the respondent wants to put on the record in response to those proposed findings of fact?

MR. COIT: Sure. So just so I get the questions in order. If I'm understanding the first question correctly, whether the Court needs to consider -- I'm sorry, I apologize for asking the Court to repeat that question, but could you just repeat the first question?

THE COURT: It's the same question I posed to your colleague. And I'm going to rephrase it because you had noted that the Court should make a finding that even if I took all the facts as true in the amended petition, I don't have habeas jurisdiction. Rather than order an amended petition in June of this year, we instead went down the path of submitting proposed findings of fact, which was not in lieu of an amended petition but serves the same purpose, which is to bring those factual allegations up to date so that they're current, so that we have the benefit of the two years of discovery so that the Court can make a determination, based on the proposed findings of fact, is there habeas jurisdiction here, is there any merit to the

habeas claims if the Court does have habeas jurisdiction.

Do I need to reference and evaluate those proposed findings to make a conclusion about habeas jurisdiction?

MR. COIT:  Understood.  Apologies for making Your Honor say that again.

Our answer is no.  The allegations, a lot of which are hearsay or hearsay within hearsay in the proposed findings of fact are novel to what's in the amended petition, which is what controls and what ought to control this Court's consideration of jurisdiction.

The proposed findings of fact are just that, they're proposed findings of fact.  They're not a statement of the exact scope of the claims before the Court.  The scope of the claims before the Court is what's in the amended petition, and those are claims seeking release based on the conditions of confinement related to COVID-19.  That's what was agreed upon between the parties to litigate in the consolidation order and the consent to magistrate court jurisdiction, and we believe that that is the metes and bounds of the consideration of the jurisdictional question, not the findings of fact.

THE COURT:  What if the Court were to find that hypothetically in a scenario like this there could be habeas jurisdiction?  For example, the sinkhole example or the hundred percent lethality of a virus example.  But if the Court then went the next step to say that even if I accept all of the

proposed findings of fact as true, that doesn't confer habeas jurisdiction here because it doesn't lead to a conclusion that the mere fact of confinement is unconstitutional under these circumstances.

Would you object to that analysis because the Court would be considering the proposed findings of fact?

MR. COIT: I don't think the Court needs to consider the proposed findings of fact to make that judgment. Certainly the proposed findings of fact are on the record and are part of what the Court can consider. I think that the jurisdictional question stops at the last page of the amended petition and the Court doesn't need to consider anything else. And to the extent there is more out there, the Court is certainty free to use that in making its legal conclusion that there's no jurisdiction under 2241. But our position is that what's laid out in the findings of fact is past what ought to be considered in the threshold jurisdictional question, which is limited to the amended petition.

THE COURT: Okay. What about the fact that the proposed findings of fact -- I believe, based on my review of the transcript, it was actually respondent's idea to have the petitioners file something and then have the Court make a preliminary ruling on that. Are you estopped from now arguing that the Court shouldn't look at that? Is that too much a divergence in the path that the Court had laid out?

MR. COIT: I don't believe so, Your Honor. I mean, our position is that the jurisdictional question is threshold and necessary and ought to come before everything else, no matter what position taken was in that hearing. I don't have the transcript right in front of me. I understand there's a conversation about how best to proceed, and the findings of fact were part of what the Court and the parties agreed to pursue.

Our position right now -- and has been since August of 2020 -- is that there are jurisdictional defects. And that position hasn't changed since August, and so I don't believe the respondent is now estopped from reasserting, as we did this year, and asserting again today in court that there are jurisdictional defects and those jurisdictional defects ought to be resolved before this case moves forward.

THE COURT: Okay. Thank you.

Ms. Hay.

MS. HAY: Thank you, Your Honor. If you don't mind, I'll stay here with my pile of papers.

THE COURT: No problem.

MS. HAY: Your Honor, I think your questions hit exactly the difference between the respondent's position and the petitioners', which is they seem to be conflating a motion to dismiss and a motion to deny in their arguments reaching the merits, whereas we believe the Court should first look at the

question of is there enough -- have we presented a claim that shows habeas jurisdiction so that the Court should not dismiss this petition.

I think the Court's later proposal that you should then look at our proposed findings of fact, which we've not filed yet -- we have the proposed findings plus exhibits, an actual document that we have not filed because of the stay, but once, if we are allowed to file that, I believe the Court could look at that document and make a ruling on yes, there's habeas jurisdiction in this case but did we succeed on the merits.

And although I appreciate hearing that Sheridan is up and running and things are good there -- and of course that proffer is not a statement under oath, an affidavit or evidence, that's simply a statement in court by people who are being given information by their client -- we don't always hear the same things from our clients as the respondents hear from their clients. So I wouldn't want to Court to rely on proffers about the current conditions. I think this Court does have the authority under the habeas rules to propound interrogatories to the respondent specifically to say, here's the questions that I think should be answered. That would be a response in light -- if we file our proposed findings of fact, rather than having the government respond to everything, if the Court had specific questions, it could grant that. But I think that's a question of the merits.

Going back to jurisdiction, I think we have established that you have habeas jurisdiction. The government cites -- they want to characterize our case as simply a conditions case, and of course as the Court recognized, our argument is that when we say that no conditions of confinement could be constitutional and so therefore release is required, that is at the core a habeas corpus, and there are many, many cases that find that. We cited the *Wilson* case, of course, but there is -- there are others that looked carefully at the habeas arguments during the course of this pandemic.

And I think we shouldn't forget that this petition was filed during the midst of the most dangerous pandemic in a generation. It was a novel communicable disease, highly contagious, fatal. None of us knew what course it would run. There was no cure, no vaccine. We didn't know how to protect people. So I think these habeas petitions should be viewed in the context of that emergency and the pandemic that brought them.

We came up with a perhaps novel way of handling the number of cases that were being filed. I think I represent over 200 people now at the federal prison on these petitions. So this set of cases should not in any way be considered something that would open the floodgates, open the door to a different type of petition. I think it's clear that our consolidation order is limited to this case, which is during

the course of the pandemic, conditions may have changed, but we're limited to what we started with, which was an emergency that required the Court's attention so that we didn't have people dying in the prisons. Unfortunately, seven people have died at least at Sheridan so far, and many have become sick with COVID. So our concern that this was a disaster waiting to happen was not overwhelming.

So, Your Honor, given the pandemic conditions that existed, the argument that there was no condition that could be constitutional and so release was warranted sounds exactly in habeas. One of the cases we cited in one of our many pleadings is *Sekerke* -- that's S-e-k-e-r-k-e -- *v. Gore*. That's a 2021 case from the Southern District of California, where the district court judge there reviewed many of these same arguments between respondent and petitioner. And they noted that there's -- there's a difference in whether courts are saying these are just conditions cases and they can't be brought in habeas or whether courts are saying that the argument that no conditions could be constitutional does sound in habeas and so there is jurisdiction. And that district court judge reviewed the many cases that have looked at this issue and decided to follow the *Wilson* court's argument and say that when you challenge the fact or duration of confinement, that lies at the core of habeas, and this case has jurisdiction.

The government parses the difference between the two *Wilson* categories. In that Sixth Circuit case, one category were the medically vulnerable petitioners and one category were not medically vulnerable petitioners. And they argued we're more like the second category.

I would disagree. The second category of petitioners was not asking for release. They were asking for remedies within the prison. We didn't try and distinguish among all the many petitioners. We're not a class action. We agreed with the government to just proceed on the facts that we had in these petitions and then to make the argument. So we're arguing for release for all of them because that's where we started and we're continuing with that. So we're more like the medically vulnerable petitioners who were seeking release, arguing there's no condition that could hold us.

I think the Court is well grounded in the law to say jurisdiction attaches. Once jurisdiction has attached, I don't think the Court needs to go back and reconsider that jurisdiction argument once you reach your proposed findings. That's not what the Court in *Wilson* did, for example. The Court found there's habeas jurisdiction and then looked at the Eighth Amendment claims. In *Wilson*, of course, the Court was looking at a temporary restraining order and saying there wasn't a likelihood of success on that -- injunction, rather, so that's a little bit different.

What the government was arguing in our case is we'll never be able to show that there's an Eighth Amendment violation, we'll never be able to show that deliberate indifference. And Judge Simon didn't think we would prevail, the government argued, but of course we should be given the opportunity to try. Whether we can prevail or not is a question of whether the Court will deny the petition. But I think we should be given an opportunity to try to show that the conditions are so horrendous that the Court should find they're unconstitutional and only release is an option.

I will say, Your Honor, there are other cases we've cited. For example, *Aamer* -- it's A-a-m-e-r -- *v. Obama*, a case where the Court found habeas jurisdiction and then said the Court has the option of ordering release or telling the respondent to fix the conditions, that it's not up to us to determine what would be the right remedies within the prison, but the Court can say you must release them unless you fix these conditions. And that's an option. So although the government says that our feeble efforts perhaps at suggesting what respondent could do to try to make things better at Sheridan somehow undermines our claim, I think it shows our good faith in trying to give suggestions on what might help.

The respondent didn't follow those. They've continued to hold people in conditions that have caused significant psychological and physical harm and death, and so

our position is during the course of this time the Eighth Amendment has been violated for the folks who are post conviction, and the Fifth Amendment due process rights of the pretrial detainees have been violated.

So on the jurisdictional question, Your Honor, if you have more questions about jurisdiction itself, I do believe it attaches at the time we filed the petition. I agree with the government on that. And the petition, the amended petition does state very clearly that the conditions are such that they violate the Constitution. No conditions of confinement at FCI Sheridan would meet the Eighth Amendment and due process requirements, and so habeas corpus should be granted. That's clearly the argument in the petition. I think the Court has jurisdiction based on that.

I don't think that means that every time anybody ever files a petition going forward and they just say we want release, the Court has to rely on that. The habeas rules do give the Court the authority to look at the petition and any attachments and decide if it states a claim or not, and there may be cases in the future where the Court can easily say, based on what you know at Sheridan or at any place, that habeas petition doesn't state a claim, but we're back to the petition that was filed during the time of the pandemic when a communicable virus was spreading rapidly and it was known to be fatal. So I think our pleading established a significant basis

for the Court's jurisdiction.

On the question of exhaustion, the government argues that that's a separate basis for the Court to dismiss. The Prison Litigation Reform Act has a statutory exhaustion requirement which we agree would have to be met, but again, as the government concedes, the Prison Litigation Reform Act has an exception for habeas cases challenging the custody. And so we think we fall into that. This is a habeas petition. It's not governed by the Prison Litigation Reform Act. The exhaustion requirements for habeas petitions are not jurisdictional, they're a judicially created requirement and they're waivable. You can waive -- they can be waived for various reasons. For example, if the petitioner would suffer irreparable harm, if the exhaustion requirement would be futile, or if they're unavailable.

I think we demonstrated in our pro se pleadings that Mr. Stirling raised unavailability in his petition. He said his administrative remedy requests were not answered at all. In addition, numerous other petitions have raised the exact same -- exact same problem with the BP-8 and BP-9 process in court. So I can provide the Court many examples of documents on the record right now that raise the unavailability of the remedy.

We also were arguing that it was -- there would be irreparable injury to our clients to wait. I don't know if we

said it specifically in the context of exhaustion, but clearly our point was delaying release any further put our clients at risk of being -- of having their lives in danger. And so that irreparable harm the Court can look at.

In addition, futility is a reason for waiving the exhaustion requirements, and the futility doctrine states that if the institution is following a policy, then -- and your disagreement is with the policy, then it would be futile to follow the administrative remedy process because you're just going to get the response that well, this is the policy and we're following it. And that's the case here. The Bureau of Prisons was following its policies about how to address the coronavirus. Those policies, in our view, put people's lives at risk, endangered people, both by their failure to keep them safe through adequate masks, cleansing, but also through the draconian lockdowns that they instituted as a result of the coronavirus. That was a BOP policy, so it would be futile to follow the administrative remedy procedure and challenge that policy. And there's many cases that address that, Your Honor.

Our proposed findings of fact, of course, has a section about administrative remedy process being broken in the prison; that it's not even available. If we were allowed to file that, we would be able to present that further evidence.

But I think the petitioners themselves raised -- each of the individual petitions, many of them said there was no

process available. And I think the Court can find it would be futile to follow the administrative remedy process when the BOP is saying it is applying the policy. And I could find the Court the specific cases that provide that futility doctrine if you would like. I don't think that that's really been briefed. I guess I thought of that as a defense that the government would want to raise and that we would respond to it.

Let me make sure I look at my notes on the other issues of jurisdiction that the Court asked so it's not -- on the question of the motion to stay, I think that is subsumed in the -- in this argument about jurisdiction, that the government is asking to not have those proposed fact findings presented. I do think that is a change in the agreed course of proceedings that should not be accepted by the Court now. We've discussed this. The Court ordered that the proposed findings of fact be filed. Petitioner was working on those.

This will get partly into the motion to strike, Your Honor, but the timeline of this is the Court in June ordered us to file a proposed findings by July 29th. On July 27th, I let the government know that my child had emergency surgery, and I asked if they objected to me taking some additional time. They kindly did not object. In early August I let them know that I thought it would be helpful to take another week to file the petition -- or file the proposed findings. They told me they didn't mind at all if I took even more time. So I then went on

my family vacation. I came back from my family vacation and a day later they filed the motion to stay, much to my surprise, preventing me from filing the very document we'd been talking about filing.

So that's the kind of context behind that proposed fact finding. I do think the Court asked us to file it. The respondent wanted it to be filed instead of an evidentiary hearing, and I think it would help the Court make a decision on whether to grant or deny the habeas petition, and it's not central to jurisdiction. Jurisdiction has already attached, but it would give the Court a basis for granting or denying the petition.

I would hope that the government would respond to portions of that because we have their statements here not under oath about what the conditions are like at Sheridan, but obviously this case has gone on for a long time. The government sounds not happy with the length of time. I guess I would have a different perspective, that we started these cases when it was really unknown how to address something like the coronavirus, and we worked cooperatively with prior counsel about receiving discovery frequently on a rolling basis to hear about the current conditions. Eventually that stopped, and so we had to then engage in more formal discovery, and that's where we are today. But I think the year of informal cooperation, learning what the conditions were at the prison

was helpful to the people there and helpful to this process.

The government in their briefs points out Mr. Green's case as an example of the inordinate amount of time that we caused the parties and the Court to spend in looking at release when in fact he got compassionate release. And I think again we have a different perspective on that case. Mr. Green is one of our habeas petitioners. Through the informal process, we let the Court -- the government know that he was suffering, that he had a high PSA, that his prostate was not functioning, that he began urinating blood. He could not get treatment at Sheridan because of the coronavirus conditions, where they are not able to provide medical care, and we eventually had to file an emergency motion in this court to ask that he be released so that he could try and get treatment. That prompted the Bureau of Prisons to actually get him to a urologist, and at later hearings the government claimed that he was being treated for cancer when we determined it was not true. Eventually through the discovery and the investigation that we engaged in through this Court, we were able to give information to Alaska, where he eventually got compassionate release.

But that case is an example of the importance of these habeas petitions in bringing to light the conditions that are current at Sheridan so that compassionate release could possibly be granted to people who are not from this district. The government repeatedly urges us to just use compassionate

release, but when the facts of what is happening at the prison are not known, the inmates there -- the inmates cannot turn to their sentencing courts to get release. It's only if this Court makes the findings to say what has been happening over the last two and a half years at the prison and puts on the record these facts will petitioners be able to then go seek compassionate release. Perhaps not every petitioner will qualify, but there may be others who are medically vulnerable who are suffering who would benefit from this Court saying what has happened.

And so that's part of our argument, Your Honor, why this is important. And the government raises Mr. Green's case as an example of waste of time. I would say Mr. Green's case is an example of exactly why the case is important and highlights the deliberate indifference that's occurred there.

On the motion to strike, Your Honor, if I could be heard on that, unless you had other questions.

THE COURT: I have a few questions.

MS. HAY: Okay.

THE COURT: First, in the amended petition, petitioners request release from custody. In light of the improved circumstances cited by respondent -- and, of course, those have not been subject to cross-examination, but assuming that conditions have now improved somewhat, do all 200 petitioners still seek release today?

MS. HAY: Well, Your Honor, I think that's a complicated question. I understood that we had postponed looking at the individual circumstances of every petitioner unless a drastic case came to light -- for example, Mr. Green's -- while we looked at jurisdictional question and solved some of the common factual aspects. I would say the common factual aspects include undisputed conditions of what has occurred at Sheridan. For example, in the proposed findings of fact, we cite to the Court the government's admission in the discovery that for a year, the majority of the people at Sheridan were confined for at least 20 hours a day in their cells, and we provided copies of the size of the cells and photographs to show what it must be like to be confined for a year in a space that size.

Now, the government will say sometimes that changed, they sometimes got out, sometimes didn't, but the government's admission in the discovery is that the majority for a year were confined for more than 20 hours a day. That's a fact that, Your Honor, can be established, could be stated for all of these petitioners, and then in their individual case we could argue whether that -- that type of fact causes a reason to be released or whether it's -- maybe gives them some basis to ask for some other relief. For example, there are people in wheelchairs who are in the small cells. There are people who needed physical therapy based on surgery that they had at

Sheridan. If the Court were to make findings about what the general conditions have been, they could in their individual case then request release or relief.

So I can't tell you whether all 200 would be able to continue to make a claim for release, but the basic posture of these cases is that yes, the conditions at the time we filed this were so egregious and so substantially putting their lives at risk that release was the only remedy. I think that brings us within the core of habeas jurisdiction on the question of whether we can show that they should get -- have the habeas remedy be granted I think is a different question.

THE COURT: Let's say we all agree on stipulated findings of fact to include the fact that most or all of Sheridan was locked down for X number of months and individuals were confined to their cells for 20 hours a day. If we all agreed on that, but that condition no longer exists, so there's no longer this lockdown, almost back to normal, and so those findings would be more historical, how does that justify release from custody today if today there are conditions of confinement that are constitutional?

MS. HAY: Well, first, I would want -- we'd have to have -- to learn facts that showed that. If it were stipulated, I think then we would need to turn to the individual cases and to determine whether the harm that was caused to those individuals deserves -- merits a sentence

reduction or whether the Court's equitable powers should take into consideration the Eighth Amendment or Fifth Amendment violation that occurred for a substantial period of time for them. So, for example, some of the remedies we requested as alternative remedies would be reduction in sentence, and I believe once that the Court has habeas jurisdiction, the Court can arrive at alternative remedies to take into consideration that constitutional violation.

THE COURT: Is it an issue that petitioners did not ask for sentence reduction in the amended petition? I think they asked for release or community confinement but not for an actual haircut on their sentences, unless my memory is failing me, which is not unusual.

MS. HAY: I can't recall either, Your Honor. I thought that there was a sentence in here about sentence reduction, but I might be misremembering that. I don't think at this point, given the amount of time that's passed, the Court should hold us to the exact release sought. I think we said under fact findings -- I think we sought the release of -- the interim release of enlargement, which would be release to the community. Potentially that's equivalent to this -- a reduction in sentence in some ways, a change in what sentence is being served, at any rate.

But I don't think, Your Honor, that the law would say a form of remedy that we were requesting, if we didn't request

that remedy in the initial petition, that the Court would be precluded from devising a separate remedy. So I think the steps are to establish that jurisdiction exists, to look at the facts of what's occurred there, and make fact findings of what has occurred that could result in a requirement that people be released, and then establish potentially through questions to the respondent whether there -- whether they are remedies that they would agree to or whether we need to then look at each individual petition. It's possible the Court could identify categories of petitioners who might merit release given the Court's findings, if you make findings based on the proposed findings of fact. For example, somebody that only has a year left on their sentence who suffered through a year of egregiously unconstitutional conditions might have a claim that that last year should be served in the community rather than in the prison. I think there are probably creative remedies, but I think the first step is to recognize the constitutional harm that occurred.

THE COURT: With respect to that specific proposal, the law instructs that 2241 is reserved for instances where there is no other judicial relief available. And here respondent argues that compassionate release is available as a remedy, and the scenario you just set up sounds a lot more like a compassionate release petition that would go to the sentencing judge.

It seems to me that if we're looking at exhaustion of remedies in the habeas context, compassionate release appears to be available to most of the petitioners and not futile, as demonstrated by the fact that many have been granted compassionate release. And so why as a matter of law is compassionate release not an adequate legal remedy for the petitioners here?

MS. HAY: I think there are two responses to that, Your Honor. First, the ordinary exhaustion of remedies arguments are usually directed at 2254 petitions, where the person is challenging a state -- a state conviction, and out of interests of comity, the federal system says you must exhaust all of your state remedies that could give you relief so that the federal court is not interfering with the state. The federal courts haven't applied that same rule to themselves, of course, and so I don't think that there's a requirement that a petitioner -- a federal petitioner who is seeking relief from a federal sentence exhaust any other possible way they could get out of custody. I think the habeas statute gives the Court the authority to order that if confinement is unconstitutional, that the person be released, and they don't require that a person has to go find any other way they could get released as well. I know the government is making that argument, but I think it's a conflation of the requirement that you exhaust your state remedies out of comity reasons.

The ordinary exhaustion requirement for a 2241 petition is that you exhaust your administrative remedies through the Bureau of Prisons, and that idea is to allow the Bureau of Prisons to fix an error so that judicial resources are not wasted or to develop the facts that might be needed for a contested matter that the Bureau of Prisons is looking at. But as we discussed, there are a number of reasons why that exhaustion requirement can be waived, and in this case the administrative remedy procedure is unavailable and futile to use.

So I disagree with the government that the petitioner has to think through every other way they could possibly get released as a matter of law. And then factually, compassionate release petitions are not available to everyone because they have to go back to their sentencing court. It's not something that we can handle here for them if they're not from the District of Oregon. Many of these petitioners are not from this district. And as we saw in Mr. Green's case, unless we develop the factual record here, they're unable to tell their court what has happened at Sheridan. They're not able to develop those facts. And so, at a minimum, if they're going to be directed to go apply for compassionate release in their own district, we should develop a factual record here of what's actually occurred. But I disagree on the law that exhausting every other statutory option is required if it's a federal

petitioner challenging a federal sentence.

THE COURT: With respect to the petitioners' anecdotal evidence that the grievance process is not available to them, I have a large docket of habeas cases, and as of late, there are other individuals at Sheridan who have been able to exhaust the Sheridan grievance procedure. I don't believe respondents have responded factually to petitioners' argument that they don't believe it's available to them.

But is there any conclusion I can make based on this record whether the grievance process is available to petitioners? I know that certainly their argument is that it's not and that therefore it should be waived. My other cases indicate that it's available to at least most individuals at Sheridan if they navigate it -- navigate the correct and appropriate procedures and allow respondent to respond at the appropriate time. But it seems to be a conflicting record with respect to whether the grievance procedure is up and running at Sheridan right now.

MS. HAY: And whether it's up and running right now, Your Honor, of course, is different from whether it was available at the time these petitions were filed, because they should use the grievance procedure before they file a petition. So its existence now wouldn't be relevant. I think we have enough of a record in the petitions themselves and in the proposed findings which we could submit further on.

But, for example, in the petition for Mr. Woods, which is 20-cv-1242, he says, "On April 15th I filed a BP-8 concerning COVID-19 and our living conditions. I complained about them and," he says, "My BP-8 never received a response."

Similarly, in the case of Mr. Marquez, 20-cv-1245, he says, "The staff is overworked and dismissed any complaints by me. I've had staff members, counselors, and nurses tell me they don't care."

I think there are numerous examples like that in the 200 petitions filed of individuals saying that the grievance process is not available to them. So again, on the facts of these consolidated cases that we are handling as a group, I believe the Court should make a finding that the exhaustion of remedies should not cause the Court -- failure to exhaust remedies should not cause the Court to dismiss the petitions out of hand, and that the procedure was not available -- widely available for these petitioners.

Of course, if we needed to on each individual case, I think we could develop an affidavit from each person about what their efforts were, but the record is fairly clear that people who were trying to get relief were not able to during much of this time.

THE COURT: Okay. Thank you.

Let me turn back to the proposed findings of fact. And we have focused a lot on the conditions and what the

conditions were over the past two years.  Any effort to address the merits would also, I believe, require a finding that the warden was deliberately indifferent.

Do you agree that the Court would need to make that conclusion to go to the next step and look at what potential relief may be available here?

MS. HAY:  I agree for the post-conviction detainees that the Court -- that our ability to show an Eighth Amendment violation depends on a showing of deliberate indifference by the warden, and I think that the history of this case, with the chronological filing of 200 different petitions where over the course of two years people have continued to show that they are being harmed by the policies put in place by the warden gives the Court the ability to say that the warden has been deliberately indifferent to the suffering which has been allowed to continue for two years despite the many people raising these exact facts for the warden.

So that's something that we could present more information on, Your Honor, if the proposed findings are not sufficient on that ground, but the petitions themselves are sufficient to put the warden on notice that people are suffering from psychological and mental harm by the extended lockdown conditions that the warden chose to use as a response to the coronavirus.

We also, of course, have filed status reports over

the course of this case, and in many of those status reports we've alerted the Court and the warden, of course, to drastically egregious medical care and again the effect of being locked in cells for individuals who are telling us the psychological harm they were experiencing.

So I think it's easy for the Court to say that given that the conditions continued, if the government concedes that or if they provide evidence and the Court makes a finding, given that these conditions were continuing this amount of time, the warden's failure to remedy them can establish the deliberate indifference.  That's for the post-conviction class or group of petitioners.

For those who are pretrial detainees, I think at the time they filed their petition and as they currently are, they don't need to show deliberate indifference at the same subjective level.  So I think for those it would be easier to find that a Fifth Amendment violation occurred.

But, again, we're arguing the merits and I don't have my -- I didn't file the proposed findings as a pleading on the docket with all the exhibits, so I think that would be a merits argument that we could make to Your Honor.

THE COURT:  Are any of the petitioners in the pretrial detainee cases still pretrial detainees, do you know?

MS. HAY:  I don't have the answer to that.  I would have thought they are.  I'm pretty sure that I could come up

with a few that are still pretrial detainees, but I don't have the numbers.

THE COURT: And I certainly understand how the constitutional argument differs because of the different standard for pretrial detainees.

Do you agree that the jurisdictional argument is substantially similar to both classes of petitioners?

MS. HAY: Yes. I think the jurisdictional argument would be the same, and I think jurisdiction attaches because of the nature of the habeas claim that was raised. Just the fact that the Court didn't dismiss the claim as it could have under Rule 4 I think is a good indication of the jurisdiction that clearly, clearly lies. But for the reasons I set out before, because we're challenging that -- we're saying that no condition could be constitutional, and because the factual basis for that was set out in the petition and was clearly not frivolous, and not even, I think, questionable at the time those were filed, the Court can find there was jurisdiction.

As a reminder, Mr. Stirling said, "They are psychologically and physically killing me by their treatment of me during this pandemic." His -- and his statements about the fear of the coronavirus and failure to protect people and the effects of being locked in were set out in his initial petition, and then we elaborated on those in the amended petition.

THE COURT: Mr. Stirling's comment led me to recall your earlier statement that there were seven petitioners or seven individuals in Sheridan custody who have died over the past two and a half years. And I know in the filing, you noted, I believe, that those were not directly due to a coronavirus infection but may have been indirectly related to the mental health impacts or the lack of adequate medical care during this time period. But is that correct? I just wanted to make sure on the record that it didn't reflect you were saying seven individuals died from the COVID virus. Is that correct?

MS. HAY: Correct. I think none of those were directly attributed to COVID, Your Honor. One was a suicide early on in the lockdown, and five were related to medical conditions, including an overdose, and one the government has never provided information on, but their counting leads us to say there's seven. The government hasn't been providing rolling discovery anymore, so I don't know if they've updated whether there are any other deaths or not. But certainly they've sort of identified seven.

THE COURT: That raises an interesting question, which I guess goes to the merits, but let me raise it anyway. In the state version of this litigation, which is, in fact, a class action on a conditions case, dozens of adults in custody died of COVID in state custody. And here at Sheridan, there

were zero deaths directly attributed to the COVID virus. And petitioners' argument is that the Court should make a finding that the warden was deliberately indifferent to their health, and specifically I think the focus is on their mental health, as well as some of ancillary health care issues.

The facts seem to suggest that the warden made decisions primarily with respect to the physical health of individuals at Sheridan during the time period to save lives. Is it possible for the Court to conclude that the warden was deliberately indifferent to the health of these individuals where he focused his efforts on saving lives to the detriment of the individuals' mental health?

MS. HAY: Yes, Your Honor. I think you certainly can, and I think the proposed findings provide a basis for that. It's -- as an example, when we were talking about hypotheticals, if the warden had just divided the cells into three separate units and allowed everybody to have a separate space in a cell but they could only stand and they were kept that way for two years, I think everybody would begin to understand that you can't treat human beings that way. You can't put people in a cage and treat them like an animal for this amount of time. So if the question is how horrible does it have to get before you decide that it's unconstitutional because it causes such extreme mental and physical distress to be in that small space, the fact that nobody died of COVID

didn't -- obviously, that's a good thing that people didn't die of COVID, but if they've been harmed psychologically and physically in ways they may not recover from, that tradeoff shouldn't have been required.

And so if the warden says, well, I can keep people from dying by locking them in closets for two years, I think we could agree that's really not an acceptable response. That's not a constitutional and humane response. And so what we hear from people is they feel as if that same level of disregard for their health and safety was implemented at the prison. I know the government disagrees, but what we hear is that they feel as if they were locked in coffins. People woke up at night having nightmares, thinking what if everybody died of COVID and we were left here in this cement block and starved to death? People felt abandoned and lost and psychologically harmed by the continuous locking that they didn't know if it would end.

Of course, we want the warden to take all steps necessary to keep people from dying, but not if those steps also cause significant harm.

THE COURT: Okay. One housekeeping matter before I turn back to the respondent. You'd indicated that the jurisdictional issue is substantially similar to the pretrial detainees and the post-conviction individuals. And I think at the Court's request, we have been filing papers in both of the consolidated cases, Stirling and in the pretrial detainee case

as well. In light of the fact that the jurisdiction issue and the stay issue and the motion to strike are all applied in the same way to all of the petitioners, would you have any objection to the Court's denial of the motions -- of all motions in the pretrial detainee case as moot and litigate those under the Stirling case, in light of the complications in the pretrial detainee case with respect to service?

MS. HAY: Your Honor, I guess I think the pretrial detainee issue shouldn't be completely subsumed, but I do think because Mr. Stirling was a pretrial detainee at the time he filed the petition, and he became a post-conviction detainee, his petition actually represents both arguments within one petition. So with that understanding, I wouldn't object to the Court declaring the Lander pleadings are moot because the arguments are subsumed in the Stirling petition.

THE COURT: Okay. Thank you.

Let me turn back to respondents.

MS. MILNE: Thank you, Your Honor.

To start out with the pretrial detainees, although Mr. Stirling may have been a pretrial detainee initially, in his amended complaint at that point he's sentenced, so the respondent's position that you alluded to is still that we haven't been served, we haven't appeared, there's been no scheduling order, and respondent hasn't had an opportunity to respond with respect to them. Our position is we're just

focusing on the sentenced petitioners in Stirling.

THE COURT: Would that be the case even if I ordered petitioners to serve respondent and start that case up?

MS. MILNE: The position would change, of course, if we were served, but then we'd want to have the opportunity to respond, have a scheduling order and respond to whatever that petition would be, because one hasn't been filed in that case, and as has been discussed, their rights are different claims under the Eighth Amendment. It would warrant a different response.

THE COURT: Okay. It may be the case, then, that we start all over on the related case.

MS. MILNE: Yes.

THE COURT: Okay. Go ahead.

MS. MILNE: I do have a lot of points I'd like to make. To start, I would just say the information I provided at the start was provided to me by BOP. The website shows that it's in status green. I understand Ms. Hay might have issues with me presenting that information, but I just want to point out that I received it from BOP counsel, and I have no reason to question what they say, the information they provided to me.

Turning to the exhaustion argument, in the response to the amended petition filed in August of 2020, respondent did bring the exhaustion claim. I understand that Ms. Hay now is also arguing about futility, but those arguments weren't in the

pleadings, so we hear them for the first time today and haven't had the opportunity to respond appropriately to those.

And I apologize if I'm all over the place with my response. I just have some notes that I want to make sure I touch on.

With respect to Mr. Green, that -- I'm sure you recall that emergency motion that came to this Court was filed -- I believe it was just days before a compassionate release motion was filed in Alaska, so it was happening in -- two courts were developing efforts. Two U.S. attorneys were also duplicating efforts. The point respondent makes isn't to say that people shouldn't seek relief, but they should do it through the appropriate method, and had Mr. Green just gone the compassionate release route, that court in Alaska, the sentencing court would have handled it, granted him a compassionate release. So that's the argument to make there.

As far as petitioners' -- I'm not sure if they meant to make the suggestion that we thought -- the respondent thought their concerns were overblown by the pandemic, but that wasn't the case at all. What respondent is saying and has been saying is just that those concerns should be raised in a different vehicle, not under this habeas petition.

And petitioners think the argument again that this is a habeas case because they're seeking relief and that there were no conditions of confinement that could have been

constitutional, but at the same time we're also hearing if they were in different cells and all of these modifications that could have been made, showing that there were -- and arguably the conditions were constitutional anyway, but there could be changes to make them constitutional, such that the extreme relief of release would not be appropriate.

Similarly, release would not be appropriate for petitioners who are no longer housed at Sheridan. There are some who have been transferred to other facilities. So the duration that they were at Sheridan is going to change -- differ between the duration others were at Sheridan. If the Court were to find that conditions were unconstitutional or are unconstitutional, those inmates are no longer under those set of conditions, so granting them release would also be an extreme measure that the respondent would argue is inappropriate.

Just to again clarify the *Wilson* case, the jurisdiction -- the Court found that there was jurisdiction under habeas only for the medically vulnerable subset, because they argued there were no conditions of confinement that would be constitutional in the pandemic, given their vulnerabilities. At that time they made no suggestion that there could have been modifications. So that's an important distinction that yes, the Court there did again find that habeas jurisdiction was proper for that subset, but because of the way they made their

argument -- and respondent understands again petitioners are saying these same words but at the same time offering suggestions for conditions or changes that could be made. Habeas is an extreme remedy. The habeas remedy is relief, and to suggest that there could be other remedies under habeas goes against what the core meaning of habeas and the core idea behind it is, which is relief from extreme circumstances.

Petitioners also mention statements and things that they've heard. Again, even if those were in the pro se petitions, those weren't mentioned in the amended petition when everything was consolidated, and the amended petition is again what is before the Court.

And as far as findings of fact, as Mr. Coit said, it makes sense more if there are going to be findings of fact to have those later to determine first if there is jurisdiction. And petitioners suggest that by bringing an amended complaint that there is jurisdiction, but there's more hurdles they need to surpass, and again the respondent's argument is that they have not surpassed those.

And also respondent would also like to point out the claims of undisputed conditions that have occurred. They are, in fact, disputed by respondent. And again they're not -- respondent hasn't seen sworn statements, hasn't had a chance to go ahead and dispute them, but respondent isn't asking for that, just asking for this ruling on jurisdiction, which he

believes is appropriate that the Court -- if habeas jurisdiction is not found.

THE COURT: Okay. Thank you.

I haven't made a determination yet whether to unseal the proposed findings of fact or to allow petitioners to file that with all the exhibits. If I were to allow that, would respondent want to respond to that or just characterize it accurately, which is it is proposed findings of fact?

MS. MILNE: Well, I guess the respondent initially, too, was thinking proposed findings of fact would be what Your Honor mentioned during that hearing in June, where so many petitioners were housed at Sheridan, there were lockdown measures, there were this, that, programming was suspended, those types of things. I'm admitting that I have not fully tried to go back and go over each allegation made in the filing, but what I did see was more allegations with unnamed petitioners, so I'm sure respondent would want an opportunity to give some information, but if what was seen or what is there is very difficult to defend -- not because the actions were wrong but because there's little information and details about who is saying what and what happened at certain times. So I think respondent would like the opportunity -- long answer -- would like an opportunity to respond if we get there, but again, we're hoping that we don't. But because there are so many allegations out there that respondent feels are

inappropriate and mischaracterizations --

THE COURT: Is there any harm to the respondent if the Court were to unseal that exhibit, in light of the fact that the media has already downloaded it from the Court's docket before it was sealed?

MS. MILNE: Well, part of the reason for sealing it, the respondent is concerned that the perception will be out there that these facts are true, because not everyone realizes that they are proposed and what that meaning is, and the way that they're presented, people in the public might not realize that they are not sworn statements, and I think that was some of the concern. But, again, because the argument is there's no jurisdiction, if they're unsealed and you find there's no jurisdiction, I'm not sure or clear what the purpose of them is, other than, as we've heard, petitioners would like to use them in other court proceedings, but I don't think that's appropriate for that to be done. I think if there's going to be other court proceedings, those courts most likely would also want to have their own findings in the record, so I guess I'm not certain of the reason for doing it.

THE COURT: Okay. Thank you.

Anything to add, Ms. Hay?

MS. HAY: Could I just respond to the question of the stay, Your Honor?

We would like the opportunity to file those proposed

findings of fact, and I don't think there is a harm to the respondent in us filing them as proposed findings.

I think there are three reasons why we should be able to file those. One, as I said, that was the agreed course of proceedings that we've been working on. That's why we weren't investigating the individual petitions and trying to file facts for each individual one. Obviously, that's kind of a Herculean effort at that point to address 200 different petitions. But what I had represented to my clients is that we were trying to find the common facts so we could say what was generally happening and we would be able to present that based on the government's previous agreement. So I think we should be able to present that, Your Honor.

In addition, many of the government's arguments are really arguments on the merits, and so if they're able to say Sheridan is better now, the defendant -- petitioners aren't able to show deliberate indifference, we should have the opportunity to put forward the facts that we think do show that deliberate indifference, and whether the Court is going to agree with us or not is a different question, but if we're trying to find a way to resolve these cases, I think the Court can find that there's habeas jurisdiction in this unusual situation of these consolidated petitions and then go to the question of whether the Court grants or denies the petitions or asks for additional information. And the Court shouldn't deny

the petition without the fact finding. I guess that would just be an unfair procedure for petitioners to have the Court deny our petitions without giving us the ability to present the facts.

What we filed was an attachment to our response. It wasn't the exhibits that go with it. So the government would have the opportunity, if we actually filed it on the docket, to see all the facts that we've put together in support of the petition.

So for all those reasons, Your Honor, we'd like to be able to file that.

And I do want to address the motion to strike at some point whenever it's convenient for the Court.

THE COURT: Now.

MS. HAY: Your Honor, the motion to strike, I do want to bring this up on the record because I think it's important for me to clear my name. The government asserted that I filed a pleading in direct violation of the Court's explicit instructions barring further filings, and that is defamatory and false to say that in their pleading. They said that in ECF 135 and suggested that sanctions could be appropriate.

Your Honor, I just -- I think it's important to make it clear that on the docket, the government filed a motion to stay at ECF 128, and then the Court issued an order -- ECF 129 -- specifically unambiguously inviting me to file a

responsive pleading to their motion, and I did. And the Court's order says, "Petitioner may respond to respondent's motion." I did file a response to respondent's motion. That's what I filed at ECF 134. They're not happy with the attachment I filed to that motion, but I think it's simply incorrect and really defamatory to say that I violated the Court's explicit instruction barring filings. It makes it sound as if the Court said don't file anything, and I illegally and inappropriately filed something. That's just not correct. The Court invited me to file something, I filed that document, and I attached my proposed findings because it wasn't prohibited by the Court order to have an attachment. The attachment was necessary to my argument, and the attachment did not violate even the spirit of their motion to stay. As I have pointed out, their motion to stay did not say they were concerned about embarrassment or facts that shouldn't be in the public record. They just said as a matter of efficiency, they wanted the Court to stay these proceedings. I think as a matter of efficiency, all of the work that we did that they knew we were doing, that they agreed we could do, should be recognized. So I wanted to make sure the Court knew that I was ready to file that, despite the many delays that had occurred.

So, Your Honor, I just think it's important to me that the record not say that I filed something when the Court said no filings, because that's not what had happened.

Thank you.

THE COURT: Thank you.

Does the respondent want to respond on the motion to strike issue?

MS. MILNE: Thank you, Your Honor.

Just to point out earlier, as far as findings of fact, the argument or the position is that we're not saying don't ever file them, we're just asking for them to be filed later if we get to that point procedurally.

But as far as the findings of fact, the Court order did stay all other deadlines, and since the findings of fact had a deadline considered prior to that order by the Court -- and I'm sorry, I don't have the numbers in front of me, but because that was a deadline that was initially set, then there was a stay, staying all other deadlines except for a response, the respondent interpreted that to mean deadlines for findings of fact were also stayed, and the position to say -- understand the petitioners were working on that and wanted the Court to know that, but they could have just put that in a sentence, "we've been working on it, we're ready to file," rather than attaching it.

And so, as we've said, for the reasons not only because we want to be able to have the opportunity to respond if needed, but also because we feel it might be unnecessary to respond, and hoping it will be because of the jurisdiction

piece, only because we will have to respond not because the BOP wouldn't want to, just because of the length of the facts. So that's why I'm saying that.

But as far as respondent also saying, you know, that we want things done in a certain order for efficiency, and there was an argument to you, some -- petitioners suggested that we were concerned about the time we would be spending on matters. And again, just to clarify the record, we all have been spending time on this case. There's no dispute about that. We would spend more time on this or other cases that come across our desk, but we're trying to -- we prefer to spend the time on the cases that actually come through the channels as they should. And so that's the arguments that we're making today.

THE COURT: Okay. Thank you.

And in your filing you had noted that it could be sanctionable, but just to be clear, the respondent is not seeking sanctions, correct?

MS. MILNE: No, correct. Respondent just wanted to point out that -- the severity with which the respondent viewed that action, but the respondent is not seeking sanctions.

THE COURT: Thank you.

Let's move to the motion for reconsideration, and this is -- the motion for reconsideration of the Court's denial of petitioners' emergency motion to appoint a special master

during a time period where individuals at Sheridan were having their property searched. And there was an allegation that that was directed toward the petitioners in this case.

And I denied that quickly, and I explained in an email to counsel that -- not on the record, that that was due in part to the fact that clearly there was an issue that needed to be solved and addressed, and if everyone was waiting for a written opinion from me, it would have taken two to three weeks to have that on the docket. And so I denied it with the goal of the parties solving that problem without the slowness of litigation, because it was a problem that clearly needed to be solved. And that was due in part also to my review of the motion, in which I didn't read the motion to include any allegation that anyone had specific knowledge that these individuals are being targeted because they were petitioners in this case. I thought that's what was lacking in the filing. And there were assumptions that that must be why they're searching, but I didn't see any statements from Sheridan personnel or the outside personnel coming in referencing the litigation or the complaints about conditions. It seemed to me that it was a scenario that was separate from what we're dealing with in this litigation, and therefore I denied the motion, and intended to write an opinion with the Court's reasoning, which also, of course, included whether the Court even had jurisdiction under the umbrella of this habeas case to

respond to new retaliation claims, and then we were overtaken by events with respect to the motion for reconsideration, and that is still now pending. So I did want to give the parties a chance to argue that and go from there.

But Ms. Hay, did you have anything to add to the briefing that's already in the docket?

MS. HAY: Yes. Thank you, Your Honor.

As you noted on behalf of the petitioners, we filed an emergency motion on July 31st, detailing the reports that were pouring into our office of abusive and violent actions of the guards brought into Sheridan and the allegation that they were retaliating against residents there for filing these habeas petitions and providing information to me and to the Court about the serious constitutional violations. Our motions described the specific conduct, including that guards yanked open cell doors and grabbed residents in a show of force, that they smashed their heads into walls, that they threw them into the ground. Other residents reported hearing groans and screams. They observed blood. Other residents said that guards came into their cells, grabbed their property and crushed it under their heels, their food, their radios, their legal papers. They ripped up their photographs.

They -- these revengeful and retaliatory actions were reported at the time of the motion and are continued to be reported to us. People were reported to not be leaving their

cells for days because they were afraid to go eat even because they were afraid of this SORT team that was brought there.

And we did quote, Your Honor, the special operations teams were reported to have told residents, "This is your own damn fault.  You did this.  You got this coming."

Our clients understood that they were being retaliated against because of these habeas petitions and because of generally raising the concerns with us.  As the Court is probably aware through the many statements we get through petitioners at the prison now, we have an email that many people use to tell us what's happening, and these emails were reporting that they believed they were being retaliated against.

And so for that reason we asked the Court to appoint somebody to investigate those reports, to gather evidence and to tell the Court whether people were being retaliated against for this case and people were being retaliated for exercising their First Amendment rights.  We asked the Court to issue a restraining order to preserve evidence.  And the Court initially ordered the government to respond within five days. The government asked to have two weeks to respond.  The Court granted that, and then two days later the Court denied the emergency motion.  And I understand for the reasons you articulated, to not have the litigation slow down any possible resolution.

Of course, we sent the government a letter, asking them to preserve the video evidence.  They forwarded that to the Bureau of Prisons, but the Bureau of Prisons is under no obligation to give us any discovery because that's not part of this case right now.  We don't have a current discovery order.  And so we have not received anything from the government that would give their side of the story.

The government has never denied these allegations in this courtroom.  They instead argue in their motion that this Court has no business investigating the possible retaliation against the incarcerated people who have been seeking this Court's help.  The primary reason that the government says this Court lacks jurisdiction is that we didn't raise a claim of retaliation in the habeas petition about First Amendment rights, so it's not procedurally correct to ask the Court now.

So I'd say it's a pretty Orwellian universe actually to say that two years ago when I was appointed, I should have anticipated that the government would be beating our clients and brutally attacking them for filing these petitions, and so I should have included in my petition a claim of prospective retaliation, and that if I had done that, then that would be part of the habeas case, and under this case law the Court would be able to look into it.

I don't think that's the law, Your Honor.  I think the cases the government is relying on are both poorly reasoned

and incorrect.  I believe the law is once habeas corpus jurisdiction is established, the Court has broad statutory and equitable powers to manage the petition as law and justice requires.  That's part of the habeas statute.

The federal rules alone give the Court the opportunity to look into matters like this.  The Court can order additional discovery under Rule 6.  Under Rule 7, the Court itself can propound interrogatories to the government.  Under Rule 8, the Court can hold an evidentiary hearing.

We asked the Court under Rule 53 of the Federal Rules of Civil Procedure to appoint a special master to go out and gather that evidence, but if the Court didn't feel that was -- that was necessary, the Court could have ordered a different level of discovery.

And under the case law, of course, the Court has even broader equitable authority.  We cited the Guantanamo cases, for example, *Rasul* -- R-a-s-ul -- *v. Bush*, where people allege they're being held in custody in violation of the Constitution of the United States, and also argued that they were being denied access to counsel, freedom from interrogation, and other relief.  And the Court found it had jurisdiction over those complaints and then was able to give those -- those petitioners some relief.

The cases the government relies on is this *Devose*, the *Devose* rule, which is D-e-v-o-s-e.  That's from a Section

1983 case, not a habeas case. It's a pro curium one-paragraph decision that says you can't use a 1983 case and then ask the Court to give you relief on a different issue. That case has been adopted in the Ninth Circuit, this *Devose* rule.

And the government cited two cases that apply in the habeas context. But, Your Honor, those I think are distinguishable, as we argued in our motion. They were cases where the petitioner was alleging he was being retaliated against, but it didn't say that it was directly related to his case. It didn't have the same egregious actions of retaliating for filing these petitions. And also the *Geiger* case is not from this circuit.

It simply can't be true that the Court has no ability to look into abuse of people who are seeking the Court's help, whether it's a temporary retraining order that can't be issued, as there was in those cases, but the Court does have authority to ask a special master to engage in discovery, for example, under the rules.

So we'd ask the Court to reconsider its ruling on this and to order some discovery into to what's happened. Reconsideration is warranted because we think the Court did commit clear error in relying on those cases that don't require the Court to abdicate responsibility for looking into this. There are tools -- for example, the special master that we requested or the discovery tools -- available in habeas for the

Court to look into what happened. People are still suffering from that SORT team coming into the prison. People lost their medications, lost their property. People are still afraid that those guards will continue to harm people either by returning or through their previous conduct that they've now sort of instigated in the prison.

So we'd ask the Court to reconsider the denial of the emergency motion, which I believe was done because the timing was so extreme that it seemed another remedy was needed. We weren't able to find another remedy. We didn't get any discovery or any assurances from the government about this. They never denied that this occurred. So we'd ask the Court to reconsider to grant our motion for -- amended motion to say motion for discovery rather than of a special master into what occurred at Sheridan, including getting the video, getting the statements from the officers there, and finding out whether retaliation was occurring because of this case. I think if we had depositions of the current staff at Sheridan who witnessed this, they may very well corroborate that the violence against our clients was exactly because they were reaching out for help and complaining about the conditions. Certainly we've been told that, that that would be true, but we would need depositions to actually have them give statements to us when the BOP certainly wouldn't want them to.

Your Honor, we'd ask you to reconsider and to order

discovery into the current events at Sheridan.

THE COURT: As we sit here today, is there any information you have that was not included in the motion or that you've learned since then that ties these actions to our petitioners specifically? For example, did they target only our petitioners to the exclusion of those who have not filed a petition or were there any statements made about the litigation? Because all I hear on the record is that an outside team came and made statements to the effect of "you did this" or "you have it coming," which could apply to a variety of situations, including contraband investigation or some type of, you know, investigation of illegal conduct. I understand why petitioners would make the jump to think this must be because of this, but is there any evidence to support that assumption?

MS. HAY: Your Honor, can I just take one moment?

THE COURT: Sure.

(There is a pause in the proceedings.)

MS. HAY: So, Your Honor, we have been able talk to a number of the people who were injured during these SORT team assaults, and some of those were our clients in these habeas cases. So our specific clients were physically injured. Whether they were the only ones targeted, I don't think that's true, because many people were hurt. But they felt targeted.

And the other thing I can tell you is in another

case -- I don't have the pleadings in front of me -- that's in front of Judge -- I believe it's Judge Simon, another person at Sheridan is seeking pretrial release because of the assaults on him, and I believe in his documentation, he explains that they looked specifically through his legal materials, through his complaints that he'd been sending to us and to his attorney about the conditions there. And so, again, in his version of what happened, they came specifically to his cell to look at his legal materials where he was documenting the daily abuses that people -- or the daily, I guess, difficulties that people were experiencing as a result of the COVID restrictions, and they took those. And he had a copy of them, so they didn't manage to destroy them, but -- he'd already sent his lawyer a copy, but they took those legal documents that were his observations about the conditions at Sheridan. So, again, that's a specific fact that I don't know if the teams themselves said anything as they were taking those, but certainly his understanding was they were designed specifically to take his legal materials that were about conditions at Sheridan.

I would be happy, Your Honor -- I haven't been able to speak to each of the people. We have a team who has been trying to gather those facts so we could present to Your Honor additional facts in our renewed motion for discovery, if that would be a better way to proceed, but we do think it would be

wrong to just let the statements of the guards, which were that they have immunity, they've been ordered to do this, and no one can touch them. That's what our clients told us. We don't want that to be a reality that guards could come into a prison and actively target people who are seeking redress from the Court and have no consequence. We could renew the motion based on new facts we developed and perhaps request a different form of the Court's involvement if a TRO is beyond the scope of what the Court can do.

THE COURT: More fundamentally, what is the habeas claim that petitioners are asserting with respect to the alleged retaliation? If I were to -- if I would have allowed you at that juncture to file an amended petition, including claims of retaliation, what relief could the Court grant for these petitioners for the alleged retaliation?

MS. HAY: Well, Your Honor, I guess I don't -- it doesn't seem possible that they have to allege that it's habeas relief. The habeas relief is that they weren't released from custody because of the conditions. I guess it would be in addition to that same point that not only is the warden holding them in conditions that are inhumane, the warden is also bringing in thugs to bully them and abuse them to prevent them from seeking outside access. So that's a further form of confinement that the warden has chosen to use in light of the coronavirus pandemic and the tight conditions he's holding

people in, and so I think it falls directly within our continued claim that the warden is addressing the problems he's facing as a result of the virus in an inhumane and unconstitutional way.  So we could amend the petition or we could add that into the same set of things that the warden has chosen to do to address these conditions.

And there are, Your Honor -- the habeas petition isn't only a habeas petition.  Our petition also argued for jurisdiction under the Administrative Procedures Act, under 1331, and under the Declaratory Judgment Act.  We haven't pursued all those forms of relief that were in the initial petition, but if required, we could amend to actually invoke more of the Court's jurisdiction under those statutes.  We cited those on page 14 and 15 of our amended complaint, and those would make this a hybrid habeas case, where we have both the habeas petition and a claim for declaratory judgment and a claim under the Administrative Procedures Act.  That seemed awfully complicated at the time when the COVID pandemic was the main focus and what we were trying to do is find out how people were going to stay alive, but that's an option if the Court thought that would be a preferred way of trying to address this problem of what the Bureau of Prisons is doing.  So we could either file a renewed motion for discovery and tie it to our habeas case, or we could attempt to rely on the amended petition and the jurisdiction there.

THE COURT: Okay. Part of the Court's concern at the get-go was that if -- after the emergency motion was filed, it became clear government counsel was not available for some time and there was necessarily going to be a delay in resolving the motion. And one of the concerns I had was that the time period for these individuals to file a grievance may lapse, waiting for me to do something. And I didn't want it to happen. In the event they do have a 1983 claim they would have pursued, they would necessarily be required to exhaust their remedies first, and I didn't want to stand in the way of that happening. And necessarily then to pursue a retaliation claim, whether it's under the guise of the amended petition or a further amended petition or a new 1983 case, it would require exhaustion of those remedies or a record that suggests that they were unavailable.

Do you know, have some or all of the petitioners affected by this pursued administrative grievance procedures?

MS. HAY: I know, Your Honor, that we advised them that that was what they should do. We sent them the paperwork. Not all of them received the paperwork we sent. Many told us that they were afraid to file that given the retaliation that they thought was happening for people who complained. They thought the last thing they should do was file a written complaint with their name on it. And others said they just -- no one would accept their complaints, that the Administrative

Procedures Act -- or that the administrative grievance policy requires first you informally talk to your unit manager, and then second that you file a BP-8, and they couldn't even get to the informal talk to the unit manager because no one was available.

Also, many of the people that were affected were put in the Special Housing Unit for up to 20 days, and so they were taken out of the place where they could have access to the administrative process and the time for filing lapsed.

So my belief, at least, is that very few will have exhausted any administrative remedies either out of unavailability or fear or that they just didn't have the access.

THE COURT: Okay. Thank you.

Let me turn to Mr. Coit.

MR. COIT: Thank you, Your Honor.

I'll move to the podium. Thank you, Your Honor.

Just briefly before addressing the motion for reconsideration, I'd quickly like to address a few of the comments petitioners made just now with respect to the facts and their characterization of the facts raised in their emergency motion. You know, labeling BOP professionals as thugs, describing the conditions as Orwellian, respondent obviously objects to not only those characterizations of its employees but also the hearsay allegations that were made in

the emergency motion itself. So I just want to make sure we're -- that it's on the record that respondent objects to those characterizations.

And with respect to the motion for reconsideration, Your Honor, it's a highly extraordinary remedy, usually limited to situations where there's been intervening change in the law or some new facts. Petitioners have admitted they're not describing situations of new law or new facts. They're arguing that the Court somehow committed a manifest error of law.

We believe, as we said in our papers -- I just want to briefly reiterate some of those points because they were raised in petitioners' presentation. First of all, it's a matter of finding precedent that this Court follow the *Devose* rule, follow *Pacific Radiation*.

Petitioners argued that that can't be the law. That is the law in this circuit. The Ninth Circuit has said so and courts within this district have followed the *Devose* rule in circumstances just like this. And *Devose* itself, in fact, was a civil rights claim under the Eighth Amendment and a petitioner seeking to include a claim of retaliation later in time, and that the Court found that the court sitting in consideration of that civil rights claim couldn't grant preliminary injunctive relief as it related to a claim that was not before the court.

I think that's one of the things that's key that Your

Honor has discussed here today, that these First Amendment claims are not before this Court. They are not part of this habeas matter. Petitioners themselves described the scope of what we're considering as if we are limited to what we started with. And what they started with here is the amended petition. This is an Eighth Amendment conditions of confinement claim. There are avenues for pursuing First Amendment retaliation matters. They are not within this Court on habeas, and certainly this Court doesn't have jurisdiction to issue preliminary injunctive relief with respect to a claim like a First Amendment retaliation claim, where the relief sought here in the face of discovery -- special master -- is not related to the relief itself sought in the underlying petition here, which is just release.

We also believe *Geiger* and *Arteaga* were well-reasoned for the reasons we described in our response, and the other side of the same coin of *Pacific Radiation*, which is that a court sitting in habeas does not have -- it only has jurisdiction over the release of those prisoners, it doesn't have jurisdiction over First Amendment retaliation claims, other civil rights claims that those petitioners -- that might arise even if they did concern those petitioners during the course of the Court's consideration of the underlying case.

And petitioners raise the broad equitable jurisdiction of the court, citing *Rasul*, *Aamer*, courts from the

D.C. Circuit, which really point in respondent's favor because those courts are dealing with the scope -- the equitable scope of the Court's power to order conditional release, the keyword there being "release," that the Court sitting in habeas has the power to order that release preliminarily but doesn't have the -- isn't empowered with other predetermination or preliminary injunctive relief powers to reach into other types of claims that don't involve the underlying habeas petition and that petitioner's release.

So we think that *Geiger* and *Arteaga* are well-reasoned and worth relying on and are not reasons to grant a motion for reconsideration.

Additionally, petitioners didn't directly raise this today but in their briefs talked about ancillary jurisdiction. The doctrine of ancillary jurisdiction is a doctrine of addition of claims or addition of parties. It does not control the Court's consideration of this First Amendment claim. It's not before the Court. They are limited to what they started with, and that's the underlying habeas petition alleging an Eighth Amendment violation.

And then finally, Your Honor, the scope of what the allegations are in the emergency motion, nowhere, even if there are oblique references to this being, you know, you did this, which we believe are not sufficient to tie what is alleged -- which we disagree with -- in the emergency motion to the

Stirling litigation. But not only that, there's nowhere in the statement of facts accompanying the emergency motion is a description that any of the people making those allegations are in fact petitioners here. Counsel has made representations in court today. Counsel has also described how those types of things we talked about terms of Level 1 and green are not matters of record before this Court. These in-court representations should not be part of this Court's consideration of the motion for reconsideration, the record of the initial emergency motion, which was the 14-page declaration accompanying petitioners' original motion.

THE COURT: Thank you, Mr. Coit.

Ms. Hay, anything further?

MS. HAY: Just one additional fact, Your Honor. My investigator says that in our discussion with some clients, they did mention Lisa Hay and that we can't do anything to protect them. So the guards were mentioning my name when talking to the clients. I don't have the context where that occurred, but my investigator just gave me this note that that's another fact that would lead us to believe that this is retaliation directly because of the work we've been trying to do to address the conditions.

I know we discussed different ways we could handle the motion for reconsideration. I just want to make sure before we finish some of this that I understand what the status

of the motion to stay any further filings, if I can make any further filing about this SORT team, if that's something the Court wants me to try to come up with a -- any additional facts that we have, or if I'm permitted to file it, if I do. So I just wanted to make sure before I lose my train of thought, I was writing a note here about needing to produce these additional facts, look through my documents, but I realize I'm not certain if I'm allowed to file anything.

THE COURT: Hold on for now. If I require additional briefing on either the facts or the law, I'll certainly make it very clear to everybody what's expected, so --

MS. HAY: Thank you.

THE COURT: Thank you.

And first, apologies to our court reporter. I did go much longer than I had anticipated. So thank you for your patience without a morning break.

I will take all the motions under advisement as of today, and issue an opinion and order just as soon as I can.

I wanted to take the opportunity to thank the Federal Public Defender's Office for accepting the appointment over two years ago now during the early days of COVID, when it was difficult to get work done and difficult to come to the office. And obviously, regardless of how the case comes out, the office has made an extraordinary effort to communicate with the petitioners and to advocate for them. So thank you for your

service to the Court, as well as to the petitioners.

And also to the U.S. Attorney's Office, who worked collaboratively with the Federal Public Defender for many, many months to solve problems under the guise of the litigation, which I know is somewhat limiting in retrospect, but in any event, I know that many problems were solved through collaboration.

Both sides raised Mr. Green's example. Setting jurisdiction aside, I have no doubt that Ms. Hay saved his life. So whatever time it took to do that, I'd do it another 200 times. That was a result of -- an outcome that I could not have necessarily ordered, but the process worked, to the extent Mr. Green was released.

And I will continue the stay pending the Court's orders on the pending motions, and we'll go from there, but I do hope to docket those sooner rather than later. But thank you all for your professionalism and for the very helpful oral argument here this morning.

Thank you. Court is adjourned.

(Proceedings concluded at 11:09 a.m.)

--oOo--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


*/s/Bonita J. Shumway*                    *October 27, 2022*
_____          _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter

**MR. COIT: [11]** 3/19 18/7 18/10 21/24 22/25 23/15 25/9 26/4 27/7 28/1 79/16

**MS. HAY: [24]** 3/14 28/18 28/21 40/19 41/1 42/21 43/14 45/8 47/19 49/7 50/24 51/8 52/12 53/13 55/8 61/23 63/15 68/7 74/16 74/19 76/16 78/18 83/14 84/12

**MS. MILNE: [22]** 3/21 4/17 4/23 11/21 12/17 13/18 14/11 15/3 15/19 16/13 16/23 17/12 17/18 17/24 55/18 56/4 56/13 56/15 60/9 61/6 65/5 66/19

**MS. VANDIVER: [1]** 3/18

**THE COURT: [56]** 3/17 3/23 4/19 11/9 12/5 13/4 14/3 14/25 15/7 16/8 16/19 17/3 17/13 17/22 17/25 18/9 21/17 22/16 23/11 24/9 25/14 26/21 27/19 28/16 28/20 40/18 40/20 42/12 43/9 44/19 47/2 48/23 50/22 51/3 52/1 52/21 54/20 55/16 56/2 56/11 56/14 60/3 61/2 61/21 63/14 65/2 66/15 66/22 74/2 74/17 76/10 78/1 79/14 83/12 84/9 84/13

**THE COURTROOM DEPUTY: [1]** 3/4

**-**

**--o0o [1]** 86/2

**/**

**/s/Bonita [1]** 86/9

**1**

**100 percent [1]** 12/11
**1000 [2]** 2/10 2/16
**101 [1]** 2/5
**107 [1]** 3/9
**11 [2]** 5/16 16/25
**11:09 [1]** 85/20
**123 [1]** 3/10
**1242 [1]** 48/2
**1245 [1]** 48/5
**128 [2]** 3/11 63/24
**129 [1]** 63/25
**1331 [1]** 77/10
**134 [1]** 64/4
**135 [1]** 63/21
**14 [1]** 77/14
**14-page [1]** 83/10

**15 [1]** 77/14
**15th [1]** 48/2
**1700 [1]** 2/5
**19 [4]** 9/19 10/24 26/16 48/3
**1983 [4]** 72/1 72/2 78/8 78/13

**2**

**20 [4]** 41/11 41/18 42/15 79/7
**20-cv-1242 [1]** 48/2
**20-cv-1245 [1]** 48/5
**200 [7]** 30/21 40/24 42/4 48/10 49/11 62/8 85/11
**2020 [7]** 5/10 5/23 18/14 18/15 21/13 28/10 56/23
**2021 [1]** 31/12
**2022 [3]** 1/6 3/2 86/9
**22 [2]** 1/6 3/2
**2241 [7]** 19/20 20/7 20/10 22/3 27/15 44/20 46/1
**2254 [1]** 45/10
**23rd [1]** 24/9
**27 [1]** 86/9
**27th [1]** 37/19
**29th [1]** 37/19

**3**

**301 [1]** 2/16
**31st [1]** 68/9
**326-8188 [1]** 2/17
**3:20-cv-00712-SB [2]** 1/4 3/5

**5**

**503 [1]** 2/17
**53 [1]** 71/10

**6**

**600 [1]** 2/10

**8**

**80 percent [1]** 16/11
**8188 [1]** 2/17

**9**

**97204 [3]** 2/6 2/11 2/16
**9:04 [1]** 3/2

**A**

**a.m [2]** 3/2 85/20
**Aamer [2]** 33/12 81/25
**abandoned [1]** 54/15
**abdicate [1]** 72/23
**ability [4]** 49/8 49/14 63/3 72/13
**able [24]** 4/21 21/10 33/2 33/3 36/23 39/12 39/19 40/6 42/4 46/20 47/5 48/21 62/3 62/11

62/12 62/15 62/17 63/11 65/23 70/23 71/22 73/10 74/19 75/21
**about [52]** 5/24 6/8 6/10 6/13 6/18 8/3 9/18 12/9 12/18 13/19 13/22 19/23 20/25 22/3 23/15 23/17 26/3 27/19 28/6 29/18 34/6 36/12 36/21 37/11 38/4 38/15 38/21 38/22 42/1 43/15 48/4 48/19 51/21 53/15 56/25 60/20 64/15 66/7 66/9 67/20 68/14 70/14 73/11 73/21 74/7 75/7 75/15 75/19 82/14 83/6 84/2 84/6
**above [1]** 86/6
**above-entitled [1]** 86/6
**abuse [2]** 72/14 76/22
**abuses [1]** 75/9
**abusive [1]** 68/10
**accept [2]** 26/25 78/25
**acceptable [1]** 54/7
**accepted [1]** 37/14
**accepting [1]** 84/20
**access [4]** 71/20 76/23 79/8 79/13
**accompanying [2]** 83/2 83/11
**accordance [1]** 7/18
**according [1]** 21/4
**accurately [1]** 60/8
**acknowledge [2]** 8/21 16/16
**across [1]** 66/11
**Act [9]** 6/22 22/3 35/4 35/6 35/9 77/9 77/10 77/17 79/1
**action [8]** 6/14 6/17 14/18 14/19 14/20 32/9 52/24 66/21
**actions [6]** 7/3 60/19 68/10 68/23 72/10 74/4
**actively [1]** 76/5
**actual [2]** 29/7 43/12
**actually [10]** 15/3 27/21 39/15 46/24 55/12 63/7 66/12 70/16 73/23 77/12
**add [3]** 61/22 68/5 77/5
**addition [6]** 35/19 36/5 62/14 76/20 82/16 82/16
**additional [8]** 37/21 62/25 71/7 75/24 83/14 84/3 84/7 84/9
**Additionally [1]** 82/13
**address [16]** 4/2 4/3 4/6 4/12 4/14 17/22 36/12 36/19 38/19 49/1 62/8 63/12 77/6 77/21

79/19 83/22
**addressed [2]** 8/4 67/7
**addressing [4]** 5/7 18/10 77/2 79/18
**adequate [3]** 36/15 45/6 52/7
**adjourned [1]** 85/19
**administrative [18]** 6/25 7/15 7/24 22/14 35/18 36/9 36/18 36/21 37/2 46/2 46/9 77/9 77/17 78/17 78/25 79/1 79/9 79/11
**admission [2]** 41/10 41/17
**admit [2]** 7/23 17/19
**admitted [1]** 80/7
**admitting [1]** 60/14
**adopted [1]** 72/4
**adults [1]** 52/24
**adverted [1]** 11/4
**advised [1]** 78/18
**advisement [1]** 84/17
**advocate [1]** 84/25
**affected [2]** 78/17 79/6
**affidavit [2]** 29/13 48/19
**afraid [4]** 69/1 69/2 73/3 78/21
**after [4]** 8/16 17/14 24/2 78/2
**again [36]** 5/18 5/20 7/7 7/11 8/8 8/21 9/4 9/11 10/8 11/5 12/25 13/25 14/5 14/15 14/19 16/25 26/5 28/13 35/5 39/5 48/11 50/3 50/18 57/23 58/17 58/24 59/1 59/9 59/11 59/18 59/22 60/24 61/12 66/8 75/7 75/15
**against [10]** 19/2 19/3 59/6 68/12 69/7 69/13 69/16 70/11 72/9 73/19
**ago [3]** 15/8 70/17 84/21
**agree [17]** 8/16 11/2 11/18 11/21 12/6 12/14 14/17 14/20 34/7 35/5 42/12 44/8 49/4 49/7 51/6 54/7 62/20
**agreed [7]** 26/16 28/7 32/9 37/13 42/16 62/4 64/19
**agreement [2]** 19/5 62/12
**ahead [4]** 18/5 24/25 56/14 59/24
**Alaska [3]** 39/19 57/9 57/14
**alerted [1]** 50/2
**Alison [2]** 2/9 3/21
**alive [1]** 77/20

**all [46]** 4/12 4/19 7/2 9/18 14/16 17/9 21/19 21/21 24/10 24/20 25/16 26/25 32/8 32/12 35/18 37/25 40/24 41/19 42/4 42/12 42/13 42/15 45/13 50/20 54/17 55/2 55/3 55/4 56/12 57/3 57/20 58/2 60/6 63/8 63/10 64/18 65/11 65/15 66/8 74/8 77/11 78/16 78/20 80/12 84/17 85/17
**allegation [4]** 60/15 67/2 67/14 68/11
**allegations [10]** 20/6 21/4 25/22 26/6 60/16 60/25 70/8 79/25 82/22 83/3
**allege [2]** 71/17 76/17
**alleged [3]** 76/12 76/15 82/24
**alleging [2]** 72/8 82/19
**allow [10]** 4/6 4/9 9/22 20/13 24/13 24/15 46/3 47/15 60/5 60/6
**allowed [8]** 5/17 22/20 29/8 36/22 49/16 53/17 76/12 84/8
**alluded [1]** 55/22
**almost [2]** 20/14 42/17
**alone [1]** 71/5
**already [8]** 18/20 18/23 19/14 23/9 38/10 61/4 68/6 75/13
**also [44]** 4/2 5/13 5/14 6/13 7/20 8/19 9/1 9/2 9/8 9/14 13/19 14/18 15/1 16/1 16/25 17/5 17/5 35/24 36/15 49/2 49/25 54/19 56/25 57/11 58/1 58/14 59/8 59/20 59/20 61/18 65/17 65/24 66/4 67/12 67/24 71/19 72/11 76/21 77/8 79/6 79/25 81/15 83/5 85/2
**alternative [3]** 24/14 43/5 43/7
**alternatives [2]** 9/7 12/25
**although [10]** 5/21 7/19 7/21 9/6 12/20 13/9 13/11 29/11 33/18 55/19
**always [1]** 29/15
**am [1]** 12/5
**amend [3]** 5/22 77/4 77/12
**amended [33]** 3/7 5/2 5/23 6/1 18/13 20/5 20/10 20/19 21/2 21/19 25/17 25/18 25/20 26/8

## A

**amended... [19]** 26/14 27/11 27/18 34/8 40/20 43/10 51/24 55/21 56/23 59/10 59/11 59/16 73/13 76/13 77/14 77/24 78/12 78/13 81/5

**Amendment [25]** 10/14 10/15 10/19 14/13 15/11 32/22 33/2 34/2 34/3 34/11 43/2 43/2 49/8 50/17 56/9 69/18 70/14 80/19 81/1 81/6 81/7 81/11 81/20 82/17 82/20

**among [1]** 32/8

**amount [6]** 20/21 20/22 39/3 43/17 50/9 53/22

**analysis [1]** 27/5

**ancillary [3]** 53/5 82/14 82/15

**anecdotal [1]** 47/3

**animal [1]** 53/21

**another [11]** 9/3 10/7 16/3 17/6 37/23 73/9 73/10 74/25 75/2 83/20 85/10

**answer [4]** 15/7 26/6 50/24 60/22

**answered [2]** 29/21 35/18

**anticipated [2]** 70/18 84/15

**any [37]** 14/24 15/9 16/9 19/20 20/8 22/6 23/22 25/25 30/22 34/18 34/21 36/2 43/23 45/18 45/22 47/9 48/6 49/1 50/22 52/19 55/3 61/2 67/13 67/18 69/24 70/4 73/10 73/11 74/2 74/7 74/14 79/11 83/3 84/1 84/1 84/3 85/5

**anybody [1]** 34/15

**anymore [2]** 21/12 52/18

**anyone [1]** 67/14

**anything [11]** 19/15 25/7 27/12 61/22 64/8 68/5 70/6 75/17 83/13 83/16 84/8

**anyway [2]** 52/22 58/4

**apologies [2]** 26/4 84/14

**apologize [2]** 25/11 57/3

**APPEARANCES [1]** 2/2

**appeared [1]** 55/23

**appears [1]** 45/2

**applied [2]** 45/15 55/2

**applies [1]** 7/12

**apply [3]** 46/22 72/5 74/10

**applying [1]** 37/3

**appoint [4]** 4/8 66/25 69/14 71/11

**appointed [1]** 70/17

**appointment [1]** 84/20

**appreciate [1]** 29/11

**appropriate [14]** 8/20 8/22 13/14 13/17 13/20 16/14 47/15 47/16 57/13 58/6 58/7 60/1 61/17 63/21

**appropriately [1]** 57/2

**April [1]** 48/2

**April 15th [1]** 48/2

**are [148]**

**are governed [1]** 6/21

**areas [1]** 20/19

**aren't [2]** 12/1 62/16

**arguably [1]** 58/3

**argue [15]** 4/6 7/11 8/20 10/2 10/16 11/7 12/2 13/18 13/19 16/13 19/12 41/21 58/15 68/4 70/9

**argued [10]** 6/15 9/10 10/8 32/4 33/5 58/20 71/19 72/7 77/8 80/15

**argues [2]** 35/2 44/22

**arguing [15]** 5/1 11/19 14/5 19/4 19/8 20/17 21/20 27/23 32/12 32/15 33/1 35/24 50/18 56/25 80/8

**argument [36]** 1/15 3/6 3/24 5/4 11/15 15/8 15/8 17/6 21/18 30/5 31/9 31/19 31/22 32/11 32/19 34/13 37/11 40/11 45/23 47/7 47/11 50/21 51/4 51/6 51/8 53/2 56/22 57/16 57/23 59/1 59/18 61/12 64/13 65/7 66/6 85/18

**arguments [11]** 17/4 28/24 30/10 31/15 45/10 55/12 55/15 56/25 62/14 62/15 66/13

**arise [1]** 81/22

**around [1]** 23/18

**arrive [1]** 43/7

**Arteaga [2]** 81/15 82/10

**artful [1]** 20/15

**article [1]** 21/8

**articulated [1]** 69/24

**as [112]**

**aside [1]** 85/9

**ask [11]** 13/4 39/13 41/22 43/10 70/15 72/2

**applies... [cont]** 72/17 72/19 73/7 73/12 73/25

**asked [8]** 37/9 37/21 38/6 43/11 69/14 69/18 69/21 71/10

**asking [10]** 16/7 18/22 25/12 32/7 32/7 37/12 59/24 59/25 65/8 70/1

**asks [1]** 62/25

**aspects [3]** 9/24 41/6 41/7

**assaults [2]** 74/21 75/3

**asserted [1]** 63/17

**asserting [2]** 28/13 76/11

**assisting [1]** 3/16

**associated [1]** 5/25

**assumed [1]** 20/5

**assuming [3]** 20/6 21/19 40/23

**assumption [1]** 74/15

**assumptions [1]** 67/17

**assurances [1]** 73/11

**assure [1]** 23/22

**attached [3]** 32/17 38/10 64/10

**attaches [3]** 32/17 34/7 51/9

**attaching [1]** 65/21

**attachment [5]** 63/5 64/4 64/12 64/12 64/13

**attachments [1]** 34/19

**attacking [1]** 70/19

**attempt [2]** 9/23 77/24

**attention [1]** 31/3

**attorney [2]** 3/15 75/6

**Attorney's [2]** 2/10 85/2

**attorneys [1]** 57/10

**attributed [2]** 52/13 53/1

**August [7]** 18/15 19/19 20/4 28/9 28/11 37/22 56/23

**authority [5]** 29/19 34/18 45/20 71/16 72/16

**availability [1]** 9/17

**available [20]** 6/14 16/24 36/22 37/1 44/21 44/22 45/3 46/14 47/3 47/8 47/10 47/13 47/21 48/11 48/16 48/17 49/6 72/25 78/3 79/5

**avenue [5]** 2/10 2/16 8/22 22/7 23/7

**avenues [4]** 6/22 16/1 16/6 81/7

**aware [2]** 10/24 69/9

**awfully [1]** 77/18

## B

**back [18]** 4/12 15/7

**back... [cont]** 16/20 16/21 19/19 20/4 21/11 21/12 30/1 32/18 34/22 38/1 42/17 46/15 48/24 54/21 55/17 60/15

**bad [4]** 21/22 21/25 22/9 22/18

**barring [2]** 63/19 64/7

**based [12]** 13/15 23/24 25/24 26/15 27/20 34/14 34/21 41/25 44/11 47/9 62/11 76/6

**basic [1]** 42/5

**basis [7]** 34/25 35/3 38/11 38/21 41/22 51/16 53/14

**be [176]**

**beating [1]** 70/18

**became [2]** 55/11 78/3

**because [71]** 7/12 7/17 8/25 10/19 11/23 12/6 12/13 12/24 13/4 14/11 15/10 15/20 16/15 18/1 18/2 25/15 27/2 27/5 29/7 32/12 36/9 38/14 39/11 46/14 47/21 51/4 51/9 51/14 51/15 53/24 55/10 55/14 56/7 57/24 58/19 58/25 60/19 60/20 60/24 61/8 61/12 63/16 64/11 64/25 65/14 65/23 65/24 65/25 66/1 66/1 66/2 67/11 67/15 69/1 69/1 69/7 69/8 70/4 72/21 73/8 73/17 73/20 74/8 74/14 74/24 75/3 76/19 79/4 80/11 82/1 83/21

**become [1]** 31/5

**been [49]** 8/5 8/23 9/17 11/10 17/9 17/16 19/14 19/16 23/18 28/9 34/2 34/4 37/5 38/3 40/4 40/23 42/2 45/4 47/5 49/14 49/15 52/6 52/17 54/2 54/4 54/24 55/20 55/23 55/23 56/7 56/8 57/20 57/25 58/3 58/9 58/22 62/5 65/20 66/9 70/11 72/4 73/21 74/19 75/6 75/21 75/22 76/2 80/6 83/21

**before [31]** 1/17 5/7 5/24 7/15 7/19 13/7 16/6 16/7 18/25 20/8 23/5 24/14 25/6 26/13 26/14 28/3 28/15 47/22 51/13 53/23 54/20 57/8 59/12 61/5 79/18 80/24 81/2 82/18 83/7 83/25 84/5

**began [3]** 5/10 5/21

**begin... [cont]** 39/10

**begin [1]** 53/19

**beginning [2]** 3/13 22/17

**behalf [3]** 4/25 5/2 68/8

**behind [2]** 38/5 59/7

**being [21]** 5/14 16/25 29/15 30/20 36/3 36/21 39/16 43/23 49/13 50/4 51/23 67/15 69/6 69/12 69/16 69/17 71/18 71/19 72/8 82/4 82/23

**beings [1]** 53/20

**belief [1]** 79/10

**believe [33]** 18/17 18/18 18/24 19/2 20/7 20/25 20/25 21/5 21/16 23/7 23/20 26/18 27/20 28/1 28/11 28/25 29/8 34/6 43/6 47/6 47/8 48/13 49/2 52/5 57/8 71/1 73/8 75/2 75/4 80/10 81/15 82/24 83/20

**believed [1]** 69/12

**believes [3]** 19/15 19/20 60/1

**below [1]** 86/4

**benefit [2]** 25/23 40/9

**best [1]** 28/6

**better [4]** 7/1 33/20 62/16 75/25

**better-prepared [1]** 7/1

**between [6]** 11/10 26/17 28/22 31/15 32/1 58/11

**beyond [1]** 76/8

**binding [1]** 7/15

**bit [2]** 21/25 32/25

**Bivens [1]** 6/24

**block [1]** 54/14

**blood [2]** 39/10 68/19

**bonita [4]** 2/15 2/17 86/9 86/10

**BOP [14]** 6/4 6/12 15/23 18/15 19/18 22/3 22/4 36/17 37/2 56/17 56/20 66/1 73/24 79/22

**both [10]** 4/5 4/11 23/14 36/14 51/7 54/24 55/12 70/25 77/15 85/8

**bounds [1]** 26/19

**BP [5]** 35/20 35/20 48/2 48/4 79/3

**BP-8 [4]** 35/20 48/2 48/4 79/3

**BP-9 [1]** 35/20

**break [1]** 84/16

**brief [2]** 5/8 18/22

**briefed [1]** 37/5

**briefing [2]** 68/6 84/10

**briefly [2]** 79/18 80/11

**briefs [2]** 39/2 82/14

## B

**bring [5]** 6/9 20/12 25/21 56/24 63/16
**bringing [5]** 7/15 7/19 39/22 59/16 76/22
**brings [1]** 42/8
**broad [2]** 71/2 81/24
**broader [1]** 71/16
**broken [1]** 36/21
**brought [9]** 7/3 7/17 10/2 22/7 22/10 30/17 31/18 68/11 69/2
**brutally [1]** 70/19
**bully [1]** 76/22
**burden [3]** 7/25 8/1 17/20
**Bureau [8]** 36/11 39/14 46/3 46/4 46/6 70/3 70/3 77/22
**Bush [1]** 71/17
**business [1]** 70/10

## C

**cage [1]** 53/21
**California [1]** 31/13
**call [2]** 15/15 16/11
**calls [1]** 5/18
**came [9]** 20/22 24/10 30/19 38/1 41/4 57/7 68/20 74/9 75/8
**can [39]** 4/21 6/9 6/19 6/20 7/21 8/3 10/2 20/18 21/2 25/23 27/10 33/6 33/17 34/20 35/12 35/12 35/21 36/4 37/1 41/19 42/10 43/7 46/8 46/16 47/9 50/10 51/18 53/14 54/5 62/22 71/6 71/8 71/9 74/16 74/25 76/3 76/9 84/1 84/18
**can't [11]** 6/18 31/17 42/4 43/14 53/20 53/21 72/2 72/13 72/15 80/15 83/16
**cancer [1]** 39/17
**cannot [2]** 9/22 40/2
**care [5]** 39/12 48/8 50/3 52/7 53/5
**carefully [1]** 30/9
**case [95]**
**cases [34]** 5/16 7/4 7/20 16/4 30/8 30/20 30/22 31/11 31/17 31/21 33/11 34/20 35/7 36/19 37/4 38/18 42/6 42/24 47/4 47/12 48/12 50/23 54/25 62/21 66/10 66/12 70/25 71/16 71/24 72/5 72/7 72/16 72/22 74/22
**categories [2]** 32/2 44/10
**category [4]** 32/2 32/3

32/5 32/6
**cause [5]** 12/19 48/14 48/15 54/19 86/6
**caused [3]** 33/24 39/4 42/25
**causes [2]** 41/21 53/24
**cell [3]** 53/18 68/16 75/8
**cells [11]** 5/17 20/21 41/12 41/12 41/24 42/15 50/4 53/16 58/2 68/20 69/1
**cement [1]** 54/14
**central [1]** 38/10
**certain [5]** 22/8 60/21 61/20 66/5 84/8
**certainly [14]** 21/11 21/14 22/25 24/4 27/8 47/11 51/3 52/19 53/13 73/21 73/24 75/18 81/9 84/10
**certainty [1]** 27/13
**certified [1]** 86/7
**certify [1]** 86/4
**challenge [7]** 4/1 4/16 7/11 8/9 9/6 31/23 36/18
**challenged [1]** 7/7
**challenges [1]** 7/13
**challenging [9]** 6/9 7/4 7/6 11/12 11/14 35/7 45/11 47/1 51/14
**chance [2]** 59/23 68/4
**change [6]** 21/24 37/13 43/22 56/4 58/10 80/6
**changed [7]** 6/6 20/20 20/21 20/24 28/11 31/1 41/15
**changes [3]** 9/8 58/5 59/3
**channels [1]** 66/12
**characterization [2]** 21/24 79/21
**characterizations [2]** 79/24 80/3
**characterize [2]** 30/3 60/7
**child [1]** 37/20
**chose [2]** 5/22 49/23
**chosen [2]** 76/24 77/6
**chronological [1]** 49/11
**circuit [14]** 7/5 7/9 8/3 10/1 14/1 15/16 15/19 16/8 32/2 72/4 72/12 80/16 80/16 82/1
**Circuit's [1]** 15/15
**circumstance [1]** 21/6
**circumstances [5]** 27/4 40/22 41/3 59/7 80/18
**circumvent [1]** 9/23
**cite [3]** 20/1 21/7 41/9

**cited [9]** 9/1 9/15 30/8 31/11 33/12 40/22 71/16 72/5 77/14
**cites [1]** 30/3
**citing [1]** 81/25
**civil [7]** 7/2 23/23 24/6 71/11 80/19 80/22 81/21
**claim [43]** 7/20 9/12 9/21 11/11 11/11 11/18 12/4 15/25 16/10 17/11 21/3 22/1 22/7 22/12 22/18 22/20 22/21 23/8 29/1 33/21 34/19 34/22 42/5 44/14 51/10 51/11 56/24 70/13 70/20 76/11 77/2 77/16 77/17 78/8 78/11 80/19 80/20 80/22 80/23 81/6 81/10 81/11 82/17
**claim-limiting [1]** 22/12
**claimed [1]** 39/16
**claims [39]** 6/9 6/24 7/1 7/2 7/11 7/17 10/2 10/12 10/14 10/16 10/17 10/19 15/17 20/11 20/12 22/2 22/9 22/10 22/15 22/23 22/23 23/3 23/5 23/7 23/9 26/1 26/13 26/14 26/15 32/22 56/8 59/21 68/1 76/14 81/2 81/20 81/21 82/8 82/16
**clarify [2]** 58/17 66/8
**class [3]** 32/9 50/11 52/24
**classes [2]** 5/12 51/7
**cleansing [1]** 36/15
**clear [10]** 15/5 30/24 48/20 61/14 63/17 63/23 66/17 72/22 78/3 84/11
**clearly [9]** 11/1 34/9 34/13 36/1 51/13 51/13 51/16 67/6 67/11
**client [1]** 29/15
**clients [13]** 29/16 29/17 35/25 36/2 62/9 69/6 70/18 73/20 74/21 74/22 76/3 83/15 83/18
**closets [1]** 54/6
**co [1]** 5/3
**co-counsel [1]** 5/3
**coffins [1]** 54/12
**coin [1]** 81/17
**Coit [9]** 2/9 3/19 5/4 17/23 17/24 18/5 59/13 79/15 83/12
**Coit's [1]** 13/7
**collaboration [1]** 85/7
**collaboratively [1]** 85/3

**colleague [3]** 18/11 22/13 25/15
**come [7]** 28/3 50/25 66/11 66/12 76/4 84/3 84/22
**comes [1]** 84/23
**coming [4]** 67/19 69/5 73/2 74/10
**comity [2]** 45/12 45/25
**comment [1]** 52/1
**comments [1]** 79/20
**commit [1]** 72/22
**committed [2]** 19/6 80/9
**common [7]** 19/5 19/7 19/10 19/11 41/6 41/7 62/10
**communicable [2]** 30/13 34/24
**communicate [1]** 84/24
**community [4]** 6/6 43/11 43/21 44/15
**compassionate [22]** 6/24 8/19 8/24 13/20 16/3 16/14 16/18 39/5 39/20 39/23 39/25 40/7 44/22 44/24 45/2 45/5 45/6 46/13 46/22 57/8 57/14 57/16
**compelling [1]** 9/1
**complain [2]** 6/10 6/13
**complained [2]** 48/3 78/22
**complaining [2]** 13/24 73/21
**complaint [4]** 55/21 59/16 77/14 78/24
**complaints [7]** 6/17 6/18 48/6 67/20 71/22 75/6 78/25
**completely [2]** 20/17 55/9
**complicated [2]** 41/2 77/18
**complications [1]** 55/6
**concedes [2]** 35/6 50/7
**concern [7]** 22/22 23/12 23/14 31/6 61/12 78/1 81/22
**concerned [4]** 23/15 61/7 64/15 66/7
**concerning [1]** 48/3
**concerns [5]** 5/24 57/19 57/21 69/8 78/5
**conclude [1]** 53/9
**concluded [1]** 85/20
**conclusion [8]** 14/9 24/10 25/3 26/3 27/2 27/14 47/9 49/5
**conclusions [2]** 24/3 24/5
**condition [8]** 11/11

20/16 21/5 22/6 31/9 32/15 42/16 51/15
**conditional [1]** 82/3
**conditions [100]**
**conduct [3]** 68/15 73/5 74/12
**confer [1]** 27/1
**confined [5]** 20/18 41/11 41/13 41/18 42/15
**confinement [46]** 6/18 7/5 7/7 7/12 7/13 8/9 9/7 9/12 9/13 10/5 10/10 11/11 11/13 11/14 11/16 11/19 12/8 12/16 14/4 14/6 14/7 15/9 15/12 20/11 20/14 20/24 21/3 21/6 22/1 22/2 22/7 22/9 22/19 23/2 26/16 27/3 30/5 31/23 34/10 42/20 43/11 45/20 57/25 58/20 76/24 81/6
**confining [1]** 22/5
**conflating [1]** 28/23
**conflation [1]** 45/24
**conflicting [1]** 47/16
**conformed [1]** 86/7
**Congress [4]** 6/19 23/1 23/8 23/9
**Congress's [1]** 6/20
**consent [1]** 26/18
**consequence [1]** 76/6
**consider [4]** 25/11 27/7 27/10 27/12
**consideration [8]** 26/10 26/19 43/2 43/7 80/22 81/23 82/17 83/9
**considered [4]** 23/10 27/16 30/22 65/12
**considering [2]** 27/6 81/4
**consolidated [9]** 13/10 19/8 19/9 19/10 19/21 48/12 54/25 59/11 62/23
**consolidation [2]** 26/17 30/25
**Constitution [2]** 34/10 71/18
**constitutional [22]** 9/14 10/6 10/10 11/17 12/8 14/7 20/19 20/24 30/6 31/10 31/19 42/20 43/8 44/17 51/4 51/15 54/8 58/1 58/4 58/5 58/21 68/14
**contagious [2]** 12/11 30/14
**contain [1]** 6/5
**contested [1]** 46/6
**context [7]** 15/18 30/17 36/1 38/5 45/2 72/6

# C

**context...** [1] 83/18
**continue** [4] 42/5 49/16 73/4 85/14
**continued** [5] 33/24 49/12 50/7 68/24 77/2
**continuing** [2] 32/13 50/9
**continuous** [1] 54/16
**contraband** [1] 74/11
**contrary** [1] 23/5
**control** [4] 9/23 20/2 26/9 82/16
**controls** [1] 26/9
**convenience** [1] 4/24
**convenient** [1] 63/13
**conversation** [1] 28/6
**conviction** [6] 34/3 45/11 49/7 50/11 54/23 55/11
**cooperation** [1] 38/25
**cooperatively** [1] 38/20
**copies** [1] 41/12
**copy** [2] 75/12 75/14
**core** [7] 7/11 14/2 30/7 31/24 42/9 59/6 59/6
**coronavirus** [8] 36/13 36/17 38/20 39/11 49/24 51/22 52/6 76/25
**corpus** [4] 3/8 30/7 34/12 71/1
**correct** [13] 17/11 17/12 17/18 20/6 47/14 52/8 52/11 52/12 64/9 66/18 66/19 70/15 86/5
**corrections** [1] 8/4
**correctly** [1] 25/10
**correctness** [1] 20/5
**corroborate** [1] 73/19
**Corrothers** [2] 20/1 20/2
**could** [76] 3/12 8/5 8/13 9/2 9/9 9/15 9/20 10/9 10/15 10/17 10/18 13/1 13/3 16/2 21/4 22/10 22/22 24/20 25/12 26/22 29/8 29/24 30/6 31/9 31/19 32/15 33/20 37/3 39/10 39/14 39/23 40/16 41/19 41/20 42/2 44/5 44/9 45/13 45/18 45/22 46/12 47/25 48/19 49/18 50/21 50/25 51/11 51/15 53/18 54/7 57/25 58/3 58/4 58/22 59/3 59/5 61/23 62/10 63/21 64/20 65/19 66/16 71/13 74/10 75/23 76/4 76/6 76/14 77/4 77/5 77/12 77/22 77/24 79/8 83/23 85/11

**couldn't** [2] 79/3 80/22
**counsel** [9] 3/12 5/3 38/20 56/20 67/5 71/20 78/3 83/4 83/5
**counselors** [1] 48/7
**counting** [2] 22/3 52/16
**course** [26] 29/12 30/4 30/8 30/10 30/14 31/1 32/22 33/5 34/1 36/20 37/13 40/22 45/16 47/20 48/18 49/12 49/25 50/1 50/2 54/17 56/4 62/4 67/24 70/1 71/15 81/23
**court** [206]
**court's** [28] 4/7 18/2 22/22 26/9 29/4 31/3 31/22 35/1 43/1 44/11 54/24 55/4 61/4 63/18 64/2 64/6 66/24 67/23 70/12 72/14 76/8 77/13 78/1 81/23 82/3 82/17 83/8 85/14
**Courthouse** [1] 2/15
**courtroom** [1] 70/9
**courts** [12] 6/18 8/25 23/1 31/16 31/18 40/3 45/15 57/10 61/18 80/17 81/25 82/2
**COVID** [25] 5/15 5/16 5/17 5/25 6/7 6/11 9/19 10/24 11/5 12/9 14/22 17/1 26/16 31/6 48/3 52/10 52/13 52/25 53/1 53/25 54/2 54/13 75/11 77/18 84/21
**COVID-19** [4] 9/19 10/24 26/16 48/3
**create** [1] 9/22
**created** [1] 35/11
**creating** [1] 20/14
**creative** [1] 44/16
**credits** [1] 22/4
**cross** [1] 40/23
**cross-examination** [1] 40/23
**CRR** [2] 2/15 86/10
**crushed** [1] 68/21
**CSR** [2] 2/15 86/10
**cure** [2] 21/4 30/15
**curium** [1] 72/1
**current** [10] 5/8 6/3 16/20 25/22 29/18 38/22 39/23 70/5 73/18 74/1
**currently** [1] 50/14
**custody** [10] 6/1 35/7 40/21 42/19 45/19 52/3 52/24 52/25 71/18 76/19
**cv** [4] 1/4 3/5 48/2 48/5

# D

**D-e-v-o-s-e** [1] 71/25
**D.C** [1] 82/1
**daily** [2] 75/9 75/10
**damn** [1] 69/5
**danger** [1] 36/3
**dangerous** [1] 30/12
**date** [2] 25/22 86/10
**day** [4] 38/2 41/11 41/18 42/15
**days** [7] 12/9 57/8 69/1 69/20 69/22 79/7 84/21
**de** [3] 9/16 11/25 20/20
**de-densified** [1] 20/20
**de-densifying** [2] 9/16 11/25
**deadline** [2] 65/12 65/14
**deadlines** [3] 65/11 65/15 65/16
**dealing** [3] 19/18 67/22 82/2
**death** [2] 33/25 54/14
**deaths** [2] 52/19 53/1
**debating** [1] 11/10
**decide** [5] 18/19 19/23 20/8 34/19 53/23
**decided** [5] 18/25 18/25 19/23 20/3 31/22
**decision** [3] 18/4 38/8 72/2
**decisions** [1] 53/7
**declaration** [1] 83/10
**declaratory** [2] 77/10 77/16
**declaring** [1] 55/14
**defamatory** [2] 63/19 64/6
**defects** [3] 28/10 28/14 28/14
**defend** [1] 60/19
**defendant** [1] 62/16
**Defender** [1] 85/3
**Defender's** [2] 2/5 84/20
**defense** [1] 37/6
**delay** [1] 78/4
**delaying** [1] 36/2
**delays** [1] 64/22
**deliberate** [12] 10/20 14/13 15/11 15/14 15/24 33/3 40/15 49/9 50/11 50/15 62/17 62/19
**deliberately** [5] 15/4 49/3 49/15 53/3 53/10
**demonstrated** [2] 35/16 45/4
**demonstrates** [1] 6/4
**denial** [5] 3/10 4/7 55/4 66/24 73/7
**denied** [9] 8/25 13/9 67/4 67/9 67/22 69/22

70/8 71/20 73/12
**denies** [1] 62/24
**densified** [1] 20/20
**densifying** [2] 9/16 11/25
**density** [1] 12/14
**deny** [5] 28/24 33/7 38/9 62/25 63/2
**denying** [1] 38/11
**depends** [1] 49/9
**depositions** [2] 73/18 73/23
**deprivation** [1] 8/18
**described** [5] 6/19 68/15 81/3 81/16 83/5
**describing** [2] 79/23 80/8
**description** [1] 83/3
**deserves** [1] 42/25
**designed** [1] 75/18
**desk** [1] 66/11
**despite** [2] 49/16 64/21
**destroy** [1] 75/13
**detailing** [1] 68/9
**details** [1] 60/20
**detainee** [8] 50/23 54/25 55/5 55/7 55/9 55/10 55/11 55/20
**detainees** [8] 34/4 49/7 50/13 50/23 51/1 51/5 54/23 55/19
**determination** [6] 18/3 18/21 21/21 24/20 25/24 60/4
**determine** [8] 13/13 13/16 19/9 20/3 22/19 33/16 42/24 59/15
**determined** [1] 39/17
**determining** [1] 20/9
**detriment** [1] 53/11
**develop** [5] 46/5 46/19 46/21 46/23 48/19
**developed** [1] 76/7
**developing** [1] 57/10
**development** [1] 13/13
**devising** [1] 44/2
**Devose** [6] 71/24 71/25 72/4 80/13 80/17 80/18
**DEWAYNE** [1] 1/6
**did** [34] 10/13 14/12 14/19 14/21 15/4 15/16 17/19 17/19 24/2 28/12 29/10 32/20 37/22 43/9 56/23 58/24 60/16 64/1 64/3 64/13 64/15 64/19 65/11 68/3 68/5 69/3 69/5 72/21 74/5 74/9 81/22 82/23 83/16 84/14
**didn't** [32] 12/9 13/11 14/14 14/20 17/19 17/20 30/15 31/3 32/8 33/4 33/23 37/25 41/16

43/25 50/19 51/11 52/9 54/1 54/1 54/16 67/13 67/18 70/13 71/12 72/9 72/10 73/10 75/12 78/7 78/10 79/12 82/13
**die** [1] 54/1
**died** [6] 31/5 52/3 52/10 52/25 53/25 54/13
**differ** [1] 58/11
**difference** [3] 28/22 31/16 32/1
**different** [21] 5/10 5/21 24/12 30/24 32/25 38/18 39/6 42/11 47/20 49/11 51/4 56/8 56/9 57/22 58/2 62/8 62/20 71/13 72/3 76/7 83/23
**differs** [1] 51/4
**difficult** [4] 12/24 60/19 84/22 84/22
**difficulties** [1] 75/10
**direct** [1] 63/18
**directed** [3] 45/10 46/22 67/3
**direction** [2] 19/16 22/13
**directly** [8] 20/1 52/5 52/13 53/1 72/9 77/1 82/13 83/21
**disagree** [4] 32/6 46/11 46/24 82/25
**disagreement** [1] 36/8
**disagrees** [1] 54/11
**disaster** [1] 31/6
**discovery** [25] 13/10 17/14 19/17 22/20 23/14 25/23 38/21 38/23 39/18 41/10 41/17 52/18 70/4 70/5 71/7 71/14 72/17 72/20 72/25 73/11 73/14 74/1 75/24 77/23 81/12
**discussed** [6] 24/11 37/14 46/7 56/8 81/1 83/23
**discussing** [2] 17/14 22/21
**discussion** [1] 83/15
**disease** [1] 30/13
**dismiss** [5] 28/24 29/2 35/3 48/15 51/11
**dismissed** [1] 48/6
**dispute** [3] 17/15 59/24 66/9
**disputed** [1] 59/22
**disregard** [1] 54/9
**distinction** [3] 10/3 11/10 58/23
**distinguish** [1] 32/8
**distinguishable** [1] 72/7
**distress** [1] 53/24

## D

**district [13]** 1/1 1/2 1/18 2/15 7/19 31/13 31/14 31/20 39/24 46/17 46/18 46/23 80/17
**divergence [1]** 27/25
**divided [1]** 53/16
**do [45]** 4/17 11/5 11/18 12/6 12/14 14/9 16/18 16/25 18/1 23/21 24/12 25/2 26/2 33/20 34/6 34/17 37/13 38/6 40/24 49/4 50/23 51/6 55/9 56/15 57/12 62/18 63/12 63/15 64/20 75/25 76/2 76/9 77/6 77/19 78/7 78/8 78/16 78/19 78/23 83/16 83/22 84/4 85/10 85/10 85/16
**docket [11]** 3/9 3/10 3/11 47/4 50/20 61/5 63/7 63/23 67/9 68/6 85/16
**doctrine [4]** 36/6 37/4 82/15 82/15
**document [4]** 29/7 29/9 38/3 64/10
**documentation [1]** 75/4
**documenting [1]** 75/9
**documents [3]** 35/21 75/14 84/7
**does [14]** 6/16 12/21 13/15 15/15 26/1 29/18 31/19 34/9 42/18 53/22 65/3 72/16 81/18 82/16
**doesn't [9]** 16/9 27/1 27/2 27/12 34/22 76/17 81/9 81/19 82/5
**doing [3]** 61/20 64/19 77/22
**don't [48]** 4/19 11/1 15/19 15/24 17/25 18/5 19/2 20/7 20/24 25/17 27/7 28/1 28/4 28/11 28/18 29/15 32/17 34/15 35/25 37/5 43/16 43/24 45/16 45/21 47/6 47/8 48/8 50/15 50/18 50/24 51/1 52/18 60/24 61/16 62/1 64/8 65/8 65/13 70/5 70/24 72/22 74/23 75/1 75/16 76/3 76/16 82/8 83/18
**done [7]** 6/20 7/22 61/17 66/5 70/21 73/8 84/22
**door [6]** 13/10 13/13 21/22 22/17 22/23 30/23
**doors [1]** 68/16

**doubt [1]** 85/9
**down [3]** 25/19 42/14 69/24
**downloaded [1]** 61/4
**dozens [1]** 52/24
**draconian [1]** 36/16
**dramatically [1]** 6/6
**drastic [1]** 41/4
**drastically [1]** 50/3
**due [6]** 18/25 34/3 34/11 52/5 67/5 67/12
**duplicating [1]** 57/11
**duration [9]** 7/4 7/7 7/12 14/1 20/13 22/10 31/23 58/10 58/11
**during [19]** 9/12 9/13 11/16 12/7 14/5 30/10 30/12 30/25 34/1 34/23 48/21 51/21 52/8 53/8 60/11 67/1 74/20 81/22 84/21
**dying [4]** 12/19 31/4 54/6 54/18

## E

**each [7]** 36/24 44/8 48/18 48/19 60/15 62/7 75/22
**earlier [3]** 14/14 52/2 65/6
**early [4]** 12/9 37/22 52/14 84/21
**easier [1]** 50/16
**easily [2]** 8/4 34/20
**easy [1]** 50/6
**eat [1]** 69/1
**ECF [4]** 63/20 63/24 63/24 64/4
**education [1]** 9/18
**effect [2]** 50/3 74/9
**effectively [1]** 8/4
**effects [1]** 51/23
**efficiency [3]** 64/17 64/18 66/5
**efficient [2]** 16/18 23/21
**effort [6]** 19/17 23/4 24/7 49/1 62/8 84/24
**efforts [5]** 33/19 48/20 53/11 57/10 57/11
**egregious [3]** 42/7 50/3 72/10
**egregiously [1]** 44/14
**Eighth [15]** 10/14 10/15 10/19 14/13 15/10 32/22 33/2 34/1 34/11 43/2 49/8 56/9 80/19 81/6 82/20
**either [7]** 10/18 11/6 43/14 73/4 77/23 79/11 84/10
**elaborated [1]** 51/24
**else [3]** 13/1 27/12

28/3
**email [2]** 67/5 69/10
**emails [1]** 69/11
**embarrassment [1]** 64/15
**emergency [19]** 4/8 13/8 13/9 30/17 31/2 37/20 39/13 57/7 66/25 68/9 69/23 73/8 78/2 79/22 80/1 82/22 82/25 83/2 83/10
**employees [1]** 79/25
**empowered [1]** 82/6
**end [1]** 54/16
**endangered [1]** 36/14
**endpoint [1]** 24/4
**energy [1]** 18/16
**engage [2]** 38/23 72/17
**engaged [2]** 19/16 39/18
**enlargement [2]** 6/1 43/20
**enough [5]** 21/22 21/25 22/9 29/1 47/24
**entered [3]** 8/17 19/13 19/14
**entering [1]** 19/3
**entire [1]** 22/11
**entitled [1]** 86/6
**equitable [5]** 43/1 71/3 71/16 81/24 82/2
**equities [1]** 19/15
**equivalent [1]** 43/21
**error [3]** 46/4 72/22 80/9
**establish [3]** 44/3 44/6 50/10
**established [4]** 30/2 34/25 41/19 71/2
**estopped [2]** 27/23 28/12
**evaluate [1]** 26/2
**even [27]** 11/3 11/5 12/22 14/11 14/12 14/19 14/21 15/21 20/5 21/14 21/19 21/21 24/20 25/16 26/25 36/22 37/25 51/17 56/2 59/9 64/13 67/25 69/1 71/15 79/3 81/22 82/22
**event [2]** 78/8 85/6
**events [2]** 68/2 74/1
**eventually [4]** 38/22 39/12 39/17 39/20
**ever [2]** 34/15 65/8
**every [5]** 34/15 40/7 41/3 46/12 46/25
**everybody [4]** 53/17 53/19 54/13 84/11
**everyone [5]** 12/19 12/19 46/14 61/8 67/7
**everything [4]** 24/23 28/3 29/23 59/11

**evidence [10]** 24/17 29/14 36/23 47/3 50/8 69/15 69/19 70/2 71/12 74/14
**evident [1]** 14/19
**evidentiary [5]** 23/12 23/16 24/13 38/7 71/9
**evolved [1]** 13/15
**exact [5]** 26/13 35/19 35/20 43/18 49/17
**exactly [4]** 28/22 31/10 40/14 73/20
**examination [1]** 40/23
**example [26]** 8/24 12/9 19/4 21/7 26/23 26/23 26/24 32/20 33/12 35/13 39/3 39/21 40/13 40/14 41/4 41/8 41/23 43/4 44/12 48/1 53/15 71/17 72/17 72/24 74/5 85/8
**examples [3]** 11/25 35/21 48/9
**except [2]** 5/15 65/15
**exception [4]** 7/4 20/13 22/11 35/7
**exceptional [2]** 8/25 21/6
**exclusion [1]** 74/6
**excuse [4]** 5/7 6/10 6/23 9/12
**excused [1]** 17/17
**exercising [1]** 69/17
**exhaust [11]** 7/14 7/18 17/19 17/21 45/12 45/18 45/24 46/2 47/6 48/14 78/9
**exhausted [2]** 7/23 79/11
**exhausting [1]** 46/24
**exhaustion [26]** 7/13 7/21 7/21 8/2 12/22 12/22 17/4 17/5 17/5 17/10 17/17 23/3 35/2 35/4 35/10 35/14 36/1 36/6 45/1 45/9 46/1 46/8 48/13 56/22 56/24 78/14
**exhibit [1]** 61/3
**exhibits [4]** 29/6 50/20 60/6 63/6
**existed [1]** 31/9
**existence [1]** 47/23
**exists [2]** 42/16 44/3
**expected [1]** 84/11
**expended [1]** 18/16
**experiencing [2]** 50/5 75/11
**expert [1]** 24/14
**explained [1]** 67/4
**explains [1]** 75/4
**explicit [5]** 13/11 22/6 23/3 63/18 64/6

**explicitly [1]** 22/11
**exposure [2]** 6/11 6/12
**extended [1]** 49/22
**extension [2]** 18/22 19/14
**extent [3]** 21/14 27/13 85/12
**extraordinary [2]** 80/5 84/24
**extreme [9]** 8/11 8/14 9/4 53/24 58/5 58/15 59/4 59/7 73/9

## F

**face [2]** 21/1 81/12
**facilities [1]** 58/9
**facility [2]** 13/2 16/3
**facing [1]** 77/3
**fact [95]**
**facts [34]** 20/3 21/19 21/21 23/25 25/17 32/10 40/1 40/6 42/22 44/4 46/5 46/21 48/11 49/17 53/6 61/8 62/6 62/10 62/18 63/4 63/8 64/16 66/2 75/23 75/24 76/7 79/20 79/21 80/7 80/8 83/2 84/3 84/7 84/10
**factual [7]** 20/8 25/21 41/6 41/7 46/19 46/23 51/15
**factually [2]** 46/13 47/7
**fail [1]** 17/20
**failed [1]** 8/18
**failing [1]** 43/12
**failure [4]** 36/14 48/14 50/10 51/22
**fair [2]** 4/13 21/22
**fairly [1]** 48/20
**faith [1]** 33/22
**fall [3]** 21/15 22/9 35/8
**falling [1]** 21/9
**falls [1]** 77/1
**false [1]** 63/20
**family [2]** 38/1 38/1
**far [6]** 31/5 57/17 59/13 65/6 65/10 66/4
**fatal [2]** 30/14 34/25
**fault [1]** 69/5
**favor [1]** 82/1
**favoring [1]** 19/2
**FCI [2]** 1/6 34/10
**fear [2]** 51/22 79/12
**federal [13]** 2/5 30/21 45/12 45/14 45/15 45/17 45/18 46/25 47/1 71/5 71/10 84/19 85/3
**feeble [1]** 33/19
**feel [5]** 4/19 54/9 54/11 65/24 71/12
**feels [2]** 17/13 60/25
**felt [2]** 54/15 74/24

## F

**few [7]** 11/9 19/1 24/12 40/18 51/1 79/10 79/19
**Fifth [3]** 34/3 43/2 50/17
**file [33]** 24/1 24/15 27/22 29/8 29/22 36/23 37/19 37/23 37/24 38/6 39/12 47/22 50/19 60/5 61/25 62/4 62/6 63/11 63/25 64/3 64/8 64/10 64/21 65/8 65/20 76/13 77/23 78/6 78/21 78/23 79/3 84/4 84/8
**filed [43]** 5/23 18/14 18/14 19/19 20/4 23/5 23/10 24/23 24/25 29/6 29/7 30/12 30/20 34/7 34/23 37/16 38/2 38/7 42/6 47/21 48/2 48/10 49/25 50/14 51/18 55/11 56/7 56/23 57/8 57/9 63/5 63/7 63/17 63/23 64/4 64/5 64/9 64/10 64/24 65/8 68/8 74/6 78/2
**files [1]** 34/16
**filing [15]** 17/11 38/3 38/4 49/11 52/4 54/24 60/16 62/2 66/16 67/16 68/12 70/19 72/11 79/9 84/2
**filings [5]** 17/9 63/19 64/7 64/25 84/1
**filter [1]** 7/1
**finally [2]** 19/22 82/21
**find [17]** 12/23 26/21 30/8 33/9 37/1 37/3 45/22 50/17 51/18 58/12 58/24 61/13 62/10 62/21 62/22 73/10 77/19
**finding [13]** 13/12 17/10 17/16 20/25 25/16 38/6 48/13 49/2 50/8 53/2 63/1 73/16 80/13
**findings [63]** 4/2 18/4 23/13 23/16 24/3 24/5 24/15 24/22 24/25 25/3 25/5 25/8 25/20 25/24 26/3 26/7 26/11 26/12 26/20 27/1 27/6 27/8 27/9 27/16 27/20 28/6 29/5 29/6 29/22 32/19 36/20 37/12 37/15 37/19 37/24 40/4 41/9 42/1 42/13 42/18 43/19 44/4 44/11 44/11 44/12 47/25 48/24 49/19 50/19 53/14 59/13 59/14 60/5 60/8 60/10 61/19 62/1 62/2 64/11

65/6 65/10 65/11 65/16
**finish [1]** 83/25
**first [23]** 17/25 19/9 23/21 25/10 25/13 28/25 40/20 42/21 44/17 45/9 57/1 59/15 69/18 70/14 78/10 79/2 80/12 81/1 81/7 81/11 81/20 82/17 84/14
**five [2]** 52/14 69/20
**fix [3]** 33/15 33/17 46/4
**floodgates [1]** 30/23
**focus [2]** 53/4 77/19
**focused [2]** 48/25 53/11
**focusing [1]** 56/1
**folks [1]** 34/2
**follow [7]** 31/22 33/23 36/9 36/18 37/2 80/13 80/14
**followed [1]** 80/17
**following [3]** 36/7 36/11 36/12
**food [1]** 68/21
**force [1]** 68/16
**foregoing [1]** 86/4
**forget [1]** 30/11
**form [3]** 43/25 76/7 76/23
**formal [1]** 38/23
**forms [1]** 77/11
**forth [1]** 4/13
**forum [2]** 23/8 23/9
**forward [6]** 13/22 19/1 22/24 28/15 34/16 62/18
**forwarded [1]** 70/2
**foster [1]** 7/1
**found [13]** 7/5 7/9 8/25 10/4 10/11 10/14 14/1 32/21 33/13 58/18 60/2 71/21 80/21
**free [2]** 4/19 27/13
**freedom [1]** 71/20
**frequently [1]** 38/21
**frivolous [1]** 51/17
**front [4]** 28/5 65/13 75/1 75/2
**frustrate [1]** 23/6
**frustrated [1]** 6/21
**FTCA [1]** 6/24
**full [2]** 4/13 5/19
**fully [1]** 60/14
**functioning [1]** 39/9
**fundamentally [1]** 76/10
**further [12]** 5/22 14/24 23/14 36/2 36/23 47/25 63/19 76/23 78/12 83/13 84/1 84/2
**futile [6]** 35/15 36/8 36/17 37/2 45/3 46/9
**futility [4]** 36/5 36/6

37/4 56/25
**future [1]** 34/20

## G

**game [1]** 17/13
**gather [3]** 69/15 71/12 75/23
**gave [1]** 83/19
**Geiger [3]** 72/11 81/15 82/10
**general [1]** 42/2
**generally [2]** 62/10 69/8
**generation [1]** 30/13
**get [25]** 15/16 19/10 19/22 23/4 23/20 25/9 36/10 37/17 39/10 39/14 39/15 40/3 42/10 45/18 45/22 46/12 48/21 53/23 60/23 65/9 69/9 73/10 78/2 79/3 84/22
**get-go [1]** 78/2
**getting [4]** 14/21 23/17 73/15 73/15
**give [15]** 4/11 12/17 33/22 34/18 38/11 39/19 45/13 60/18 68/3 70/4 70/7 71/5 71/22 72/3 73/23
**given [13]** 5/19 5/20 5/21 29/15 31/8 33/5 33/8 43/17 44/10 50/6 50/9 58/21 78/21
**gives [3]** 41/22 45/19 49/13
**giving [2]** 11/24 63/3
**go [24]** 4/12 4/18 13/1 13/3 18/5 32/18 40/6 44/24 45/22 46/15 46/22 49/5 56/14 59/24 60/15 60/15 62/23 63/6 68/4 69/1 71/11 78/2 84/14 85/15
**goal [3]** 4/11 24/22 67/9
**goes [3]** 15/1 52/22 59/5
**going [20]** 12/3 12/13 13/22 13/23 16/7 17/1 17/22 17/24 22/24 25/15 30/1 34/16 36/10 46/21 58/10 59/14 61/17 62/19 77/20 78/4
**gone [2]** 38/16 57/13
**good [12]** 3/17 3/18 3/19 3/21 3/23 4/25 18/8 18/9 29/12 33/22 51/12 54/1
**Gore [1]** 31/12
**got [6]** 15/19 16/8 39/5 39/20 41/16 69/5
**governed [2]** 6/21 35/9

**government [44]** 24/18 29/23 30/2 32/1 32/10 33/1 33/5 33/19 34/8 35/2 35/6 37/6 37/11 37/20 38/13 38/17 39/2 39/8 39/16 39/25 40/12 41/15 45/23 46/11 50/7 52/15 52/17 54/11 63/6 63/17 63/23 69/20 69/21 70/1 70/6 70/8 70/12 70/18 70/25 71/8 71/24 72/5 73/11 78/3
**government's [4]** 41/9 41/16 62/12 62/14
**governs [2]** 7/2 8/8
**grabbed [2]** 68/16 68/20
**grant [6]** 29/24 38/9 73/13 76/14 80/22 82/11
**granted [8]** 8/23 21/16 34/12 39/24 42/11 45/4 57/15 69/22
**granting [2]** 38/11 58/14
**grants [1]** 62/24
**green [10]** 5/12 8/24 16/23 21/12 39/6 56/18 57/6 57/13 83/6 85/13
**Green's [6]** 39/2 40/12 40/13 41/5 46/18 85/8
**grievance [11]** 8/5 22/14 47/3 47/6 47/10 47/17 47/22 48/10 78/6 78/17 79/1
**groans [1]** 68/18
**ground [2]** 49/20 68/18
**grounded [1]** 32/16
**group [2]** 48/12 50/12
**Guantanamo [1]** 71/16
**guards [7]** 68/11 68/15 68/20 73/4 76/1 76/4 83/17
**guess [11]** 14/11 37/6 38/17 52/22 55/8 60/9 61/19 63/1 75/10 76/16 76/19
**guise [2]** 78/12 85/4

## H

**habeas [106]**
**had [33]** 4/5 12/11 24/9 25/15 27/25 29/23 32/10 37/20 38/23 39/9 39/12 40/17 41/2 41/25 48/7 53/16 55/24 57/2 57/13 59/23 62/9 64/22 64/25 65/12 66/16 67/14 67/25 70/21 71/21 73/18 75/12 78/5 84/15
**Hager's [1]** 15/7
**haircut [1]** 43/12

**half [3]** 5/13 40/5 52/4
**hand [1]** 48/16
**handle [2]** 46/16 83/23
**handled [1]** 57/15
**handling [2]** 30/19 48/12
**happen [2]** 31/7 78/7
**happened [7]** 40/10 46/20 60/21 64/25 72/20 73/1 75/8
**happening [7]** 40/1 40/4 57/9 62/11 69/11 78/10 78/22
**happy [4]** 16/19 38/17 64/4 75/21
**harkens [1]** 15/7
**harm [11]** 33/25 35/14 36/4 42/24 44/17 49/22 50/5 54/19 61/2 62/1 73/4
**harmed [3]** 49/13 54/2 54/15
**harsh [1]** 12/21
**has [65]** 6/15 6/19 7/5 7/9 8/3 13/12 13/15 14/1 16/10 17/16 18/17 18/20 19/4 19/16 20/3 20/6 20/9 22/20 23/1 23/9 23/22 23/24 28/9 31/24 32/17 33/14 34/2 34/13 34/17 35/4 35/6 36/20 38/10 38/16 40/4 40/10 41/8 43/6 44/5 44/12 45/22 46/12 46/20 49/14 49/15 52/15 56/8 57/20 61/4 70/8 70/10 71/2 71/15 72/3 72/13 75/22 76/24 77/5 80/16 81/1 81/18 82/4 83/4 83/5 84/24
**hasn't [6]** 28/11 52/17 55/24 56/7 59/23 59/23
**have [152]**
**haven't [8]** 22/1 45/15 55/23 55/23 57/1 60/4 75/21 77/10
**having [5]** 17/8 29/22 36/3 54/12 67/1
**Hay [10]** 2/4 3/14 28/17 56/18 56/24 61/22 68/5 83/13 83/16 85/9
**he [27]** 10/24 13/9 13/10 13/11 13/12 14/14 35/17 39/5 39/8 39/9 39/10 39/10 39/13 39/14 39/16 39/20 48/2 48/4 48/5 53/11 55/10 55/11 59/25 72/8 75/4 75/9 75/12
**he'd [2]** 75/6 75/13
**he's [3]** 55/21 76/25 77/2
**heads [1]** 68/17

## H

**health [9]** 10/22 52/7 53/3 53/4 53/5 53/7 53/10 53/12 54/10
**hear [13]** 6/18 7/17 16/19 17/25 19/20 20/10 29/15 29/16 38/21 54/8 54/11 57/1 74/8
**heard [3]** 40/17 59/9 61/15
**hearing [12]** 17/9 23/13 23/16 24/9 24/13 28/4 29/11 38/8 58/1 60/11 68/18 71/9
**hearings [1]** 39/16
**hearsay [4]** 26/7 26/7 26/7 79/25
**heart [1]** 18/12
**heels [1]** 68/21
**held [1]** 71/18
**help [5]** 33/22 38/8 70/12 72/14 73/20
**helpful [4]** 37/23 39/1 39/1 85/17
**HENDRIX [2]** 1/6 5/1
**Herculean [1]** 62/7
**here [38]** 3/4 3/24 4/25 7/6 8/6 10/8 10/18 11/20 12/22 13/17 16/10 17/16 20/2 22/22 24/21 25/4 25/25 27/2 28/19 36/11 38/14 43/15 44/21 45/7 46/16 46/19 46/23 49/6 52/25 54/14 74/2 81/1 81/5 81/11 81/13 83/4 84/6 85/18
**here's [1]** 29/20
**high [1]** 39/9
**highlights [1]** 40/15
**highly [2]** 30/13 80/5
**him [3]** 39/15 57/15 75/4
**his [23]** 5/1 35/17 35/18 39/9 51/21 51/21 51/23 53/11 55/12 55/21 72/9 75/4 75/5 75/5 75/6 75/7 75/8 75/9 75/13 75/14 75/18 75/19 85/9
**historical [1]** 42/18
**history [1]** 49/10
**hit [1]** 28/21
**hold [6]** 24/24 32/15 33/24 43/18 71/9 84/9
**holding [2]** 76/20 76/25
**Honor [59]** 3/4 3/19 3/21 4/17 4/25 18/7 18/12 21/25 23/1 23/17 26/5 28/1 28/18 28/21 31/8 33/11 34/5 36/19

37/18 40/11 40/16 41/1 41/19 43/14 43/24 45/9 47/20 49/19 50/21 52/13 53/13 55/8 55/18 60/11 61/24 62/13 63/10 63/15 63/22 64/23 65/5 68/7 69/3 70/24 72/6 73/25 74/16 74/19 75/21 75/23 76/16 77/7 78/18 79/16 79/17 80/5 81/1 82/21 83/14
**Honor's [1]** 19/22
**HONORABLE [1]** 1/17
**hope [3]** 13/1 38/13 85/16
**hoping [2]** 60/24 65/25
**horrendous [1]** 33/9
**horrible [2]** 15/23 53/22
**hour [1]** 5/13
**hours [3]** 41/11 41/18 42/15
**housed [2]** 58/8 60/12
**housekeeping [1]** 54/20
**housing [2]** 5/14 79/7
**how [15]** 11/22 22/3 23/9 23/10 24/12 28/6 30/15 36/12 38/19 42/18 51/3 53/22 77/19 83/5 84/23
**human [1]** 53/20
**humane [1]** 54/8
**hunch [1]** 11/13
**hundred [1]** 26/23
**hurdles [1]** 59/17
**hurt [1]** 74/24
**hybrid [1]** 77/15
**hypothetical [3]** 13/21 15/17 15/21
**hypothetically [3]** 12/6 12/15 26/22
**hypotheticals [1]** 53/16

## I

**I'd [8]** 3/15 3/25 5/8 21/24 56/15 70/16 79/19 85/10
**I'll [11]** 4/3 4/6 4/15 4/21 4/23 5/1 16/11 18/10 28/19 79/17 84/10
**I'm [20]** 4/25 11/21 15/20 23/19 25/10 25/11 25/15 50/25 57/3 57/6 57/17 60/14 60/17 61/14 61/19 65/13 66/3 84/4 84/7 84/8
**I've [1]** 48/7
**idea [3]** 27/21 46/3 59/6

**identified [1]** 52/20
**identify [2]** 3/12 44/9
**ignored [3]** 10/23 15/5 15/6
**ignores [1]** 15/10
**illegal [1]** 74/12
**illegally [1]** 64/8
**illogical [1]** 15/10
**immunity [1]** 76/2
**impacts [1]** 52/7
**implemented [1]** 54/10
**importance [1]** 39/21
**important [6]** 40/12 40/14 58/23 63/16 63/22 64/23
**impossibility [1]** 17/10
**improve [1]** 9/20
**improved [4]** 6/7 10/9 40/22 40/24
**improvements [1]** 9/15
**inappropriate [2]** 58/16 61/1
**inappropriately [1]** 64/8
**incarcerated [1]** 70/11
**include [5]** 6/23 41/7 42/13 67/13 80/20
**included [3]** 67/24 70/20 74/3
**including [5]** 52/15 68/15 73/15 74/11 76/13
**incorrect [2]** 64/5 71/1
**indicate [2]** 20/20 47/13
**indicated [1]** 54/21
**indication [1]** 51/12
**indifference [12]** 10/20 14/14 15/11 15/15 15/25 33/4 40/15 49/9 50/11 50/15 62/17 62/19
**indifferent [5]** 15/4 49/3 49/15 53/3 53/10
**indirectly [1]** 52/6
**individual [11]** 9/24 16/17 36/25 41/3 41/20 42/2 42/24 44/9 48/18 62/6 62/7
**individualized [2]** 8/21 16/17
**individuals [14]** 42/14 42/25 47/5 47/13 48/10 50/4 52/3 52/10 53/8 53/10 54/23 67/1 67/15 78/6
**individuals' [1]** 53/12
**infection [1]** 52/6
**informal [3]** 38/24 39/7 79/4
**informally [1]** 79/2
**information [13]** 6/3 29/15 39/19 49/19

52/16 56/16 56/19 56/21 60/18 60/20 62/25 68/13 74/3
**inhumane [2]** 76/21 77/3
**initial [5]** 17/7 44/1 51/23 77/11 83/10
**initially [4]** 55/20 60/9 65/14 69/20
**injunction [1]** 32/24
**injunctive [3]** 80/23 81/10 82/7
**injured [2]** 74/20 74/22
**injury [1]** 35/25
**inmate [4]** 15/22 16/2 16/5 16/17
**inmates [12]** 5/15 6/9 7/3 9/2 10/4 10/22 11/5 14/21 16/1 40/2 40/2 58/13
**inmates' [1]** 10/12
**inordinate [1]** 39/3
**instances [1]** 44/20
**instead [4]** 22/5 25/19 38/7 70/9
**instigated [1]** 73/6
**instituted [1]** 36/16
**instituting [1]** 22/4
**institution [2]** 9/3 36/7
**instruction [1]** 64/7
**instructions [1]** 63/19
**instructs [1]** 44/20
**intended [2]** 6/25 67/23
**intent [1]** 6/20
**interesting [1]** 52/21
**interests [1]** 45/12
**interfering [1]** 45/14
**interim [1]** 43/20
**internal [1]** 8/5
**interpretation [1]** 7/16
**interpreted [1]** 65/16
**interrogation [1]** 71/20
**interrogatories [2]** 29/19 71/8
**intersection [1]** 14/4
**intertwined [1]** 18/2
**intervening [1]** 80/6
**introduce [1]** 3/15
**intrusive [4]** 8/7 8/12 8/17 9/5
**invert [1]** 24/6
**investigate [1]** 69/15
**investigating [2]** 62/6 70/10
**investigation [3]** 39/18 74/11 74/12
**investigator [2]** 83/15 83/19
**invited [1]** 64/9
**inviting [1]** 63/25
**invoke [1]** 77/12
**involve [1]** 82/8

**involvement [1]** 76/8
**irreparable [3]** 35/14 35/25 36/4
**is [270]**
**isn't [5]** 12/24 57/11 59/24 77/8 82/6
**issue [14]** 8/16 25/2 31/22 43/9 54/22 55/1 55/2 55/9 65/4 67/6 69/18 72/3 81/9 84/18
**issued [2]** 63/24 72/15
**issues [15]** 3/6 3/9 3/24 4/4 4/6 4/12 4/14 5/7 6/13 19/5 19/7 24/11 37/9 53/5 56/18
**it [130]**
**it's [54]** 7/22 7/24 8/11 8/15 12/23 14/18 15/5 16/15 16/23 18/18 20/14 21/21 21/25 22/6 23/18 24/10 25/14 30/24 33/12 33/15 35/8 36/22 37/9 38/9 40/3 41/22 44/9 45/24 46/15 46/25 47/8 47/11 47/13 47/19 50/6 53/15 53/23 56/18 63/13 63/16 63/22 64/5 64/23 70/15 70/16 72/1 72/15 75/2 76/17 78/12 80/2 80/5 80/12 82/17
**its [7]** 4/1 20/9 27/14 36/12 47/23 72/19 79/24
**itself [8]** 11/20 19/18 23/22 34/6 71/8 80/1 80/18 81/13

## J

**JOHN [3]** 1/3 2/9 3/19
**judge [10]** 1/18 8/16 13/9 14/14 31/14 31/21 33/4 44/25 75/2 75/2
**judgment [6]** 23/24 24/1 24/6 27/8 77/10 77/16
**judicial [2]** 44/21 46/4
**judicially [1]** 35/11
**Julie [2]** 2/4 3/15
**July [4]** 18/14 37/19 37/19 68/9
**July 27th [1]** 37/19
**July 29th [1]** 37/19
**July 31st [1]** 68/9
**jump [1]** 74/13
**juncture [1]** 76/13
**June [4]** 24/9 25/18 37/18 60/11
**June 23rd [1]** 24/9
**jurisdiction [76]** 3/8 5/3 6/16 7/16 11/16 12/15 13/12 16/11 18/2 18/5 18/17 19/20 20/4

**J**

**jurisdiction... [63]** 20/7 20/10 23/22 24/2 25/18 25/25 26/1 26/3 26/10 26/18 26/23 27/2 27/15 29/2 29/10 30/1 30/2 31/20 31/25 32/17 32/17 32/19 32/21 33/13 34/6 34/14 35/1 37/9 37/11 38/10 38/10 42/9 43/6 44/3 51/9 51/12 51/18 55/1 58/18 58/18 58/24 59/15 59/17 59/25 60/2 61/13 61/14 62/22 65/25 67/25 70/13 71/2 71/21 77/9 77/13 77/25 81/9 81/19 81/20 81/25 82/14 82/15 85/9
**jurisdictional [21]** 3/6 3/25 4/15 18/19 18/24 19/9 19/24 24/11 26/20 27/10 27/17 28/2 28/10 28/14 28/14 34/5 35/11 41/5 51/6 51/8 54/22
**just [57]** 5/18 6/6 9/21 12/17 17/14 18/22 24/19 25/9 25/13 26/11 31/17 32/10 34/16 36/9 39/25 44/23 51/10 52/8 53/16 55/25 56/16 56/19 57/4 57/8 57/13 57/21 58/17 59/25 60/7 61/23 63/1 63/22 64/9 64/16 64/23 65/6 65/8 65/19 66/2 66/8 66/17 66/19 74/16 76/1 78/24 79/12 79/18 79/20 80/1 80/10 80/18 81/14 83/14 83/19 83/24 84/5 84/18
**justice [1]** 71/3
**justify [1]** 42/18

**K**

**keep [3]** 36/14 54/5 54/18
**kept [1]** 53/18
**key [1]** 80/25
**keyword [1]** 82/3
**killing [1]** 51/20
**kind [4]** 20/12 21/13 38/5 62/7
**kindly [1]** 37/22
**knew [5]** 10/22 15/4 30/14 64/19 64/21
**know [31]** 11/5 11/22 12/9 12/10 15/21 20/15 22/4 30/15 34/21 35/25 37/20 37/22 39/8 45/23 47/11 50/23 52/4 52/18 54/10 54/16 65/19 66/4 74/12 75/16 78/16

78/18 79/22 82/23 83/23 85/5 85/6
**knowledge [1]** 67/14
**known [2]** 34/24 40/2

**L**

**labeling [1]** 79/22
**lack [1]** 52/7
**lacking [1]** 67/16
**lacks [1]** 70/13
**laid [4]** 18/23 23/1 27/15 27/25
**Lander [1]** 55/14
**lapse [1]** 78/6
**lapsed [1]** 79/9
**large [1]** 47/4
**last [5]** 16/2 27/11 40/5 44/15 78/23
**late [2]** 17/13 47/4
**later [10]** 5/11 22/20 29/4 38/2 39/15 59/15 65/9 69/22 80/20 85/16
**law [25]** 19/5 19/7 19/11 20/9 21/7 23/24 24/4 24/5 32/16 43/24 44/20 45/5 46/13 46/24 70/22 70/24 71/1 71/3 71/15 80/6 80/8 80/9 80/15 80/16 84/10
**lawsuits [1]** 7/19
**lawyer [1]** 75/13
**lead [2]** 27/2 83/20
**leads [1]** 52/16
**learn [1]** 42/22
**learned [1]** 74/4
**learning [1]** 38/25
**least [7]** 8/7 8/12 9/5 31/5 41/11 47/13 79/10
**leave [1]** 4/20
**leaving [1]** 68/25
**led [1]** 52/1
**left [4]** 9/22 15/22 44/13 54/14
**legal [9]** 5/7 23/23 27/14 45/6 68/22 75/5 75/9 75/14 75/19
**length [2]** 38/17 66/2
**less [2]** 8/17 16/4
**let [10]** 11/22 37/8 37/19 37/22 39/8 48/24 52/22 55/17 76/1 79/15
**Let's [2]** 42/12 66/23
**lethality [2]** 12/11 26/24
**letter [1]** 70/1
**letting [1]** 21/15
**level [8]** 5/12 16/21 16/22 21/12 50/16 54/9 71/14 83/6
**lies [2]** 31/24 51/13
**lieu [1]** 25/20
**life [1]** 85/10
**lifted [1]** 6/2

**light [8]** 29/21 39/22 40/21 41/4 55/1 55/6 61/3 76/24
**lightly [1]** 7/22
**like [28]** 3/15 3/25 5/8 10/8 12/20 16/4 23/20 26/22 32/5 32/13 37/5 38/15 38/19 41/13 44/23 48/9 53/21 56/15 59/20 60/22 60/23 61/15 61/25 63/10 71/6 79/19 80/18 81/10
**likelihood [1]** 32/24
**likely [1]** 61/18
**limit [2]** 6/12 22/14
**limited [7]** 7/10 27/17 30/25 31/2 80/5 81/4 82/18
**limiting [2]** 22/12 85/5
**Lisa [3]** 2/4 3/14 83/16
**listing [1]** 13/25
**litigate [5]** 19/5 23/2 24/19 26/17 55/5
**litigating [1]** 18/16
**litigation [18]** 6/22 7/2 19/17 23/13 23/23 24/3 24/7 35/4 35/6 35/9 52/23 67/11 67/20 67/22 69/24 74/8 83/1 85/4
**little [4]** 17/13 21/25 32/25 60/20
**lives [6]** 12/13 36/3 36/13 42/7 53/8 53/11
**living [1]** 48/3
**lockdown [4]** 42/17 49/23 52/14 60/12
**lockdowns [2]** 6/2 36/16
**locked [4]** 42/14 50/4 51/23 54/12
**locking [2]** 54/6 54/16
**logic [1]** 15/16
**long [4]** 4/20 15/23 38/16 60/22
**longer [5]** 42/16 42/17 58/8 58/13 84/15
**look [22]** 10/13 13/5 14/24 15/12 15/14 21/2 27/24 28/25 29/5 29/9 34/18 36/4 37/8 44/3 44/8 49/5 70/23 71/6 72/14 73/1 75/8 84/7
**looked [5]** 30/9 31/21 32/21 41/5 75/5
**looking [9]** 16/5 16/15 16/17 32/23 39/4 41/3 45/1 46/6 72/23
**lose [1]** 84/5
**lost [3]** 54/15 73/2 73/3
**lot [4]** 26/6 44/23 48/25 56/15

**M**

**made [20]** 9/9 9/15 10/9 12/2 17/7 17/7 22/18 53/6 58/3 58/22 58/25 59/3 60/4 60/15 74/7 74/9 79/20 79/25 83/4 84/24
**magistrate [2]** 1/18 26/18
**main [2]** 2/5 77/19
**majority [2]** 41/10 41/17
**make [44]** 4/13 5/18 10/10 13/11 14/9 17/15 18/3 18/4 21/20 24/20 25/16 25/24 26/3 27/8 27/22 29/9 32/11 33/20 37/8 38/8 42/1 42/5 44/4 44/11 47/9 48/13 49/4 50/21 52/9 53/2 56/16 57/4 57/16 57/18 58/5 63/22 64/20 74/13 77/15 80/1 83/24 84/1 84/5 84/10
**makes [5]** 40/4 50/8 57/11 59/14 64/7
**making [5]** 26/4 27/14 45/23 66/13 83/3
**manage [2]** 71/3 75/13
**manager [2]** 79/2 79/4
**mandating [1]** 6/1
**mandatory [1]** 23/3
**manifest [1]** 80/9
**many [28]** 8/3 9/17 30/7 30/7 31/5 31/11 31/14 31/21 32/9 35/21 36/19 36/25 45/4 46/17 49/16 50/1 60/11 60/25 62/14 64/21 69/9 69/11 74/24 78/20 79/6 85/3 85/3 85/6
**Marquez [1]** 48/5
**mask [1]** 4/20
**masks [1]** 36/15
**master [7]** 4/8 66/25 71/11 72/17 72/24 73/14 81/12
**materials [3]** 75/5 75/9 75/19
**matter [18]** 3/5 18/17 18/20 19/19 20/9 20/14 21/1 21/1 23/24 28/4 45/5 46/6 46/13 54/20 64/17 64/18 80/13 81/3
**matters [4]** 66/8 71/6 81/8 83/7
**may [13]** 4/3 16/3 31/1 34/20 40/8 49/6 52/6 54/3 55/20 56/11 64/2 73/19 78/6
**maybe [3]** 13/2 21/24 41/22
**me [37]** 5/7 6/10 6/23

9/12 11/22 12/17 28/5 37/8 37/21 37/24 38/3 43/13 45/1 48/7 48/7 48/24 51/20 51/21 52/1 52/22 55/17 56/17 56/19 56/21 63/17 63/25 64/10 64/23 65/13 67/8 67/20 68/13 75/1 78/7 79/15 83/19 84/3
**mean [4]** 16/9 20/16 28/1 65/16
**meaning [2]** 59/6 61/9
**meaningful [1]** 23/18
**means [1]** 34/15
**meant [2]** 22/12 57/17
**measure [3]** 8/15 9/4 58/15
**measures [12]** 6/5 6/12 10/24 11/2 11/3 11/4 11/6 14/22 14/23 15/1 15/23 60/13
**media [1]** 61/4
**medical [5]** 16/15 39/12 50/3 52/7 52/14
**medically [10]** 10/4 10/11 10/13 16/9 16/12 32/3 32/4 32/14 40/8 58/19
**medications [1]** 73/3
**meet [5]** 10/15 10/18 14/12 17/20 34/11
**members [1]** 48/7
**memory [1]** 43/12
**mental [5]** 49/22 52/7 53/4 53/12 53/24
**mention [2]** 59/8 83/16
**mentioned [8]** 9/8 11/12 16/6 18/11 22/13 23/18 59/10 60/11
**mentioning [1]** 83/17
**mere [3]** 12/15 22/19 27/3
**merit [3]** 22/20 25/25 44/10
**merits [23]** 10/17 10/18 11/18 12/3 13/6 13/13 13/16 13/23 14/9 14/12 14/15 15/2 19/23 22/21 28/25 29/10 29/25 42/25 49/2 50/18 50/20 52/22 62/15
**met [3]** 8/1 12/22 35/5
**metes [1]** 26/19
**method [1]** 57/13
**midst [1]** 30/12
**might [13]** 11/1 12/6 12/12 20/23 33/22 43/16 44/10 44/14 46/5 56/18 61/10 65/24 81/21
**Milne [3]** 2/9 3/22 18/11

## M

**mind [5]** 4/17 4/19 14/3 28/18 37/25
**minimum [1]** 46/21
**minute [1]** 12/17
**mischaracterizations [1]** 61/1
**misremembering [1]** 43/16
**mitigate [2]** 6/12 10/25
**modifications [2]** 58/2 58/23
**modified [1]** 16/21
**moment [1]** 74/16
**months [2]** 42/14 85/4
**moot [2]** 55/5 55/14
**more [26]** 8/20 8/22 10/8 12/10 13/19 15/3 16/14 16/18 22/23 23/17 27/13 32/5 32/13 34/6 37/25 38/23 41/18 42/18 44/23 49/18 59/14 59/17 60/16 66/10 76/10 77/13
**morning [10]** 3/17 3/18 3/19 3/21 3/23 4/25 18/8 18/9 84/16 85/18
**most [8]** 9/5 16/19 23/20 30/12 42/13 45/3 47/13 61/18
**motion [83]** 3/9 3/11 4/1 4/2 4/7 4/8 4/9 4/16 5/5 5/5 13/8 13/9 17/22 18/1 18/1 18/6 18/10 18/12 18/21 18/21 18/24 19/25 21/16 23/11 24/1 24/7 24/23 24/24 28/23 28/24 37/10 37/17 38/2 39/13 40/16 55/2 57/7 57/9 63/12 63/15 63/23 64/1 64/3 64/3 64/5 64/14 64/14 65/3 66/23 66/24 66/25 67/13 67/13 67/23 68/2 68/9 68/24 69/23 70/9 72/7 73/8 73/13 73/13 73/14 74/3 75/24 76/6 77/23 78/2 78/5 79/18 79/22 80/1 80/4 82/11 82/22 82/25 83/2 83/9 83/10 83/11 83/24 84/1
**motions [5]** 55/4 55/5 68/14 84/17 85/15
**move [2]** 66/23 79/17
**moved [2]** 13/8 25/1
**moves [2]** 18/25 28/15
**Mr [2]** 2/9 48/1
**Mr. [26]** 5/4 8/24 13/7 15/7 17/23 17/24 18/5 35/17 39/2 39/6 40/12 40/13 41/5 46/18 48/5 51/19 52/1 55/10 55/20

57/6 57/13 59/13 79/15 83/12 85/8 85/13
**Mr. Coit [7]** 5/4 17/23 17/24 18/5 59/13 79/15 83/12
**Mr. Coit's [1]** 13/7
**Mr. Green [5]** 8/24 39/6 57/6 57/13 85/13
**Mr. Green's [6]** 39/2 40/12 40/13 41/5 46/18 85/8
**Mr. Hager's [1]** 15/7
**Mr. Marquez [1]** 48/5
**Mr. Stirling [4]** 35/17 51/19 55/10 55/20
**Mr. Stirling's [1]** 52/1
**Ms [3]** 2/4 2/4 2/9
**Ms. [8]** 18/11 28/17 56/18 56/24 61/22 68/5 83/13 85/9
**Ms. Hay [7]** 28/17 56/18 56/24 61/22 68/5 83/13 85/9
**Ms. Milne [1]** 18/11
**much [8]** 4/11 10/23 12/9 12/10 27/24 38/2 48/21 84/15
**must [9]** 7/14 20/16 21/10 22/7 33/17 41/13 45/12 67/17 74/13
**my [29]** 4/11 5/3 17/8 18/11 22/12 27/20 28/19 37/8 37/20 38/1 38/1 38/2 43/12 47/12 48/4 50/19 57/3 62/9 63/17 64/10 64/13 67/12 70/20 79/10 83/14 83/17 83/19 84/5 84/7
**myself [1]** 15/21

## N

**name [3]** 63/17 78/24 83/17
**narrowly [3]** 8/7 8/11 9/5
**nature [1]** 51/10
**navigate [2]** 47/14 47/14
**necessarily [5]** 24/18 78/4 78/9 78/11 85/12
**necessary [5]** 4/13 28/3 54/18 64/12 71/13
**need [18]** 4/12 13/16 14/9 14/23 15/14 18/3 18/3 19/23 20/17 25/2 26/2 27/12 42/23 44/8 49/4 50/15 59/17 73/22
**needed [8]** 20/3 41/25 46/5 48/18 65/24 67/6 67/11 73/9
**needing [1]** 84/6
**needs [6]** 13/5 20/8

20/25 25/11 27/7 32/18
**never [6]** 33/2 33/3 48/4 52/16 70/8 73/12
**new [6]** 68/1 76/7 78/13 80/7 80/8 80/8
**next [3]** 19/12 26/25 49/5
**night [1]** 54/12
**nightmares [1]** 54/13
**Ninth [6]** 7/5 7/9 8/2 14/1 72/4 80/16
**no [61]** 1/4 3/5 7/16 9/13 9/21 10/5 11/16 11/23 12/3 12/7 12/12 13/18 14/6 14/11 14/12 14/23 15/17 17/9 17/15 17/16 17/18 18/17 19/20 20/7 20/17 26/6 27/14 28/3 28/20 30/5 30/15 30/15 31/9 31/19 32/15 34/10 36/25 42/16 42/17 44/21 51/14 55/23 56/20 57/25 58/8 58/13 58/20 58/22 61/12 61/13 64/25 66/9 66/19 70/3 70/10 72/13 76/2 76/6 78/25 79/4 85/9
**No. [3]** 3/9 3/10 3/11
**No. 107 [1]** 3/9
**No. 123 [1]** 3/10
**No. 128 [1]** 3/11
**nobody [1]** 53/25
**non [1]** 10/11
**non-medically [1]** 10/11
**none [2]** 30/14 52/12
**normal [5]** 5/11 16/23 21/12 24/6 42/17
**normalcy [1]** 16/20
**not [169]**
**note [2]** 83/19 84/6
**noted [8]** 8/3 14/14 17/5 25/15 31/15 52/5 66/16 68/8
**notes [2]** 37/8 57/4
**nothing [1]** 15/5
**notice [1]** 49/21
**novel [3]** 26/8 30/13 30/19
**now [30]** 5/16 9/17 9/18 10/12 11/1 11/5 11/10 12/10 27/23 28/9 28/12 30/21 35/22 37/14 40/24 41/15 47/18 47/19 47/23 56/24 62/16 63/14 68/3 69/10 70/5 70/15 73/5 79/20 84/9 84/21
**nowhere [2]** 82/22 83/1
**number [5]** 22/14 30/20 42/14 46/7 74/20

**numbers [2]** 51/2 65/13
**numerous [2]** 35/19 48/9
**nurses [1]** 48/7

## O

**o0o [1]** 86/2
**oath [2]** 29/13 38/15
**Obama [1]** 33/12
**object [3]** 27/5 37/22 55/13
**objected [1]** 37/21
**objection [1]** 55/4
**objects [2]** 79/24 80/2
**obligation [1]** 70/4
**oblique [1]** 82/23
**observations [1]** 75/15
**observed [1]** 68/19
**obvious [1]** 17/1
**obviously [7]** 12/24 25/5 38/16 54/1 62/7 79/24 84/23
**occurred [13]** 40/15 41/8 43/3 44/4 44/5 44/18 46/24 50/17 59/21 64/22 73/12 73/15 83/19
**occurring [1]** 73/17
**occurs [1]** 73/17
**October [1]** 86/9
**off [2]** 4/20 4/23
**offered [3]** 5/13 5/15 16/25
**offering [1]** 59/2
**office [8]** 2/5 2/10 3/16 68/10 84/20 84/22 84/23 85/2
**officers [1]** 73/16
**Official [1]** 86/11
**officials [3]** 8/4 10/21 14/17
**Okay [14]** 17/3 27/19 28/16 40/19 48/23 54/20 55/16 56/11 56/14 60/3 61/21 66/15 78/1 79/14
**old [1]** 18/13
**once [6]** 4/5 29/8 32/17 32/19 43/6 71/1
**one [27]** 8/13 15/22 16/2 17/3 23/24 24/12 25/2 31/11 31/11 32/2 32/3 39/6 52/13 52/15 54/20 55/12 56/7 62/4 62/7 72/1 74/16 76/2 78/5 78/25 79/4 80/25 83/14
**one-paragraph [1]** 72/1
**ones [1]** 74/23
**ongoing [1]** 6/13
**only [21]** 5/16 6/14 8/16 15/12 15/13 24/2

33/10 40/3 42/8 44/12 53/18 58/19 65/22 66/1 74/5 74/23 76/20 77/8 79/24 81/18 83/1
**open [6]** 9/22 21/22 22/23 30/23 30/23 68/16
**opened [3]** 13/10 13/12 22/17
**opening [1]** 21/15
**operating [1]** 5/11
**operation [1]** 9/24
**operational [2]** 16/21 16/21
**operations [2]** 16/24 69/3
**opinion [4]** 23/6 67/8 67/23 84/18
**opportunity [17]** 4/14 5/19 5/22 33/6 33/8 55/24 56/5 57/2 60/17 60/22 60/23 61/25 62/18 63/7 65/23 71/6 84/19
**option [6]** 8/13 33/10 33/14 33/18 46/25 77/20
**oral [4]** 1/15 3/6 3/24 85/17
**ord.uscourts.gov [1]** 2/17
**order [26]** 8/16 8/17 21/10 25/10 25/18 26/17 30/25 32/23 45/20 55/24 56/6 63/24 64/2 64/12 65/10 65/12 66/5 69/19 70/5 71/7 72/15 72/20 73/25 82/3 82/5 84/18
**ordered [7]** 37/15 37/18 56/2 69/20 71/13 76/2 85/12
**ordering [1]** 33/14
**orders [3]** 5/25 8/14 85/15
**ordinary [2]** 45/9 46/1
**OREGON [3]** 1/2 1/7 46/17
**original [3]** 20/4 83/11 86/6
**Orwellian [2]** 70/16 79/23
**other [49]** 7/24 8/13 9/7 9/10 10/7 10/11 12/2 12/25 13/2 13/21 15/13 15/16 16/1 16/5 17/3 19/16 23/8 23/23 23/24 24/16 33/11 35/19 37/8 40/17 41/23 44/21 45/18 45/22 46/12 46/25 47/5 47/12 52/19 58/9 59/5 61/15 61/16 61/18 65/11

# O

**other...** **[10]** 65/15 66/10 68/18 68/19 71/20 74/25 81/16 81/21 82/6 82/7
**others** **[5]** 8/24 30/9 40/8 58/11 78/24
**otherwise** **[1]** 12/7
**ought** **[8]** 18/25 19/8 23/10 23/10 26/9 27/16 28/3 28/14
**our** **[59]** 3/15 4/20 18/23 20/15 22/25 24/8 26/6 27/15 28/2 28/9 29/5 29/16 29/22 30/3 30/4 30/24 31/6 31/11 33/1 33/19 33/21 33/21 34/1 34/25 35/16 35/25 36/2 36/2 36/13 36/20 39/7 40/11 48/3 49/8 55/25 63/3 63/5 66/11 68/10 68/14 69/6 70/18 72/7 73/13 73/20 74/4 74/6 74/21 74/22 75/24 76/3 77/1 77/8 77/14 77/23 80/10 81/16 83/15 84/14
**out** **[36]** 5/17 7/1 8/10 13/25 14/16 17/1 18/23 23/1 23/7 27/13 27/16 27/25 39/2 41/16 45/11 45/19 45/25 48/16 51/13 51/16 51/23 55/19 56/20 59/20 60/25 61/7 64/14 65/6 66/20 71/11 73/16 73/20 77/19 79/8 79/11 84/23
**outcome** **[1]** 85/11
**outside** **[4]** 20/22 67/19 74/9 76/23
**over** **[21]** 5/10 6/16 11/10 15/8 16/11 18/13 18/17 19/16 30/21 40/4 49/1 49/11 49/25 52/3 56/12 57/3 60/15 71/21 81/19 81/20 84/20
**overblown** **[1]** 57/19
**overdose** **[1]** 52/15
**overtaken** **[1]** 68/1
**overwhelming** **[1]** 31/7
**overworked** **[1]** 48/6
**own** **[4]** 20/9 46/22 61/19 69/4

# P

**Pacific** **[2]** 80/14 81/17
**page** **[4]** 17/15 27/11 77/14 83/10
**pandemic** **[21]** 9/13 11/17 12/7 12/10 13/21 14/6 15/5 15/18 21/13 21/14 30/10 30/12

30/17 31/1 31/8 34/23 51/21 57/19 58/21 76/25 77/18
**panel** **[1]** 8/16
**papers** **[4]** 28/19 54/24 68/22 80/10
**paperwork** **[2]** 78/19 78/20
**paragraph** **[1]** 72/1
**parses** **[1]** 32/1
**part** **[14]** 14/18 15/11 27/9 28/7 40/11 61/6 67/6 67/12 70/4 70/22 71/4 78/1 81/2 83/8
**parties** **[8]** 18/15 23/2 26/17 28/7 39/4 67/10 68/3 82/16
**partly** **[1]** 37/17
**party** **[1]** 23/24
**passed** **[1]** 43/17
**past** **[4]** 19/10 27/16 49/1 52/4
**path** **[2]** 25/19 27/25
**paths** **[1]** 24/12
**patience** **[1]** 84/16
**pattern** **[1]** 12/24
**pause** **[1]** 74/18
**pending** **[6]** 4/12 18/20 24/24 68/3 85/14 85/15
**people** **[50]** 12/18 29/14 30/16 30/21 31/4 31/4 33/24 36/14 39/1 39/24 41/11 41/23 41/24 44/5 48/20 49/12 49/16 49/21 51/22 53/21 54/1 54/5 54/9 54/12 54/15 54/18 57/12 61/10 68/25 69/11 69/16 69/17 70/11 71/17 72/14 73/1 73/2 73/3 73/4 74/20 74/24 75/10 75/10 75/22 76/5 77/1 77/19 78/22 79/6 83/3
**people's** **[2]** 12/13 36/13
**percent** **[3]** 12/11 16/11 26/24
**perception** **[1]** 61/7
**perhaps** **[4]** 30/19 33/19 40/7 76/7
**period** **[5]** 43/3 52/8 53/8 67/1 78/5
**permitted** **[1]** 84/4
**person** **[5]** 45/11 45/21 45/22 48/19 75/2
**personnel** **[2]** 67/19 67/19
**perspective** **[2]** 38/18 39/6
**petition** **[75]** 3/7 5/2 5/23 5/24 6/1 18/14 20/5 20/19 21/2 21/20

25/17 25/18 25/20 26/8 26/14 27/11 27/18 29/3 30/11 30/24 33/7 34/7 34/8 34/8 34/13 34/16 34/18 34/22 34/22 35/8 35/17 37/24 38/9 38/12 40/20 43/10 44/1 44/9 44/24 46/2 47/22 48/1 50/14 51/16 51/24 51/25 55/11 55/12 55/13 55/15 56/7 56/23 57/22 59/10 59/11 63/1 63/9 70/14 70/20 71/3 74/7 76/13 77/4 77/7 77/8 77/8 77/12 77/16 77/25 78/12 78/13 81/5 81/13 82/8 82/19
**petitioner** **[16]** 1/4 2/4 3/13 16/9 31/15 35/13 37/16 40/7 41/3 45/17 45/17 46/11 47/1 64/2 72/8 80/20
**petitioner's** **[1]** 82/9
**petitioners** **[105]**
**petitioners'** **[14]** 3/9 4/8 5/5 7/17 10/17 21/4 28/23 47/2 47/7 53/2 57/17 66/25 80/12 83/11
**petitions** **[28]** 19/8 19/21 20/11 30/16 30/21 32/11 35/10 35/19 36/25 39/22 45/10 46/14 47/21 47/24 48/10 48/15 49/11 49/20 59/10 62/6 62/8 62/23 62/24 63/3 68/13 69/7 70/19 72/11
**phone** **[1]** 5/18
**photographs** **[2]** 41/13 68/22
**physical** **[4]** 33/25 41/25 53/7 53/24
**physically** **[3]** 51/20 54/3 74/22
**piece** **[1]** 66/1
**pile** **[1]** 28/19
**place** **[6]** 9/17 18/23 34/21 49/13 57/3 79/8
**pleading** **[6]** 21/1 34/25 50/19 63/18 63/20 64/1
**pleadings** **[7]** 6/16 20/15 31/11 35/16 55/14 57/1 75/1
**please** **[2]** 3/12 11/22
**pled** **[2]** 21/19 22/1
**PLRA** **[15]** 6/25 7/2 7/12 7/14 7/18 8/6 8/13 9/23 17/4 20/13 22/6 22/8 22/11 22/12 23/6
**plus** **[1]** 29/6
**podium** **[2]** 4/18 79/17

**point** **[20]** 10/1 19/1 19/3 19/15 20/1 20/19 22/13 36/2 43/17 55/21 56/19 57/11 59/20 62/8 63/13 65/6 65/9 66/20 76/20 82/1
**pointed** **[2]** 7/9 64/14
**points** **[4]** 8/10 39/2 56/15 80/11
**policies** **[3]** 36/12 36/13 49/13
**policy** **[8]** 22/4 36/7 36/8 36/10 36/17 36/19 37/3 79/1
**poorly** **[1]** 70/25
**population** **[1]** 12/14
**portions** **[1]** 38/14
**Portland** **[4]** 1/7 2/6 2/11 2/16
**posed** **[1]** 25/14
**position** **[14]** 22/25 23/25 27/15 28/2 28/4 28/9 28/11 28/22 34/1 55/22 55/25 56/4 65/7 65/17
**positive** **[2]** 5/16 23/21
**possibility** **[3]** 8/15 8/19 23/12
**possible** **[8]** 8/12 9/15 44/9 45/18 53/9 69/24 70/10 76/17
**possibly** **[2]** 39/24 46/12
**post** **[5]** 34/2 49/7 50/11 54/23 55/11
**post-conviction** **[4]** 49/7 50/11 54/23 55/11
**postponed** **[1]** 41/2
**posture** **[2]** 13/6 42/5
**potential** **[2]** 16/10 49/5
**potentially** **[2]** 43/21 44/6
**pouring** **[1]** 68/10
**power** **[2]** 82/3 82/5
**powers** **[3]** 43/1 71/3 82/7
**precedent** **[1]** 80/13
**precluded** **[1]** 44/2
**predetermination** **[1]** 82/6
**prefer** **[1]** 66/11
**preferred** **[1]** 77/21
**prejudice** **[1]** 19/13
**preliminarily** **[1]** 82/5
**preliminary** **[4]** 27/23 80/23 81/10 82/7
**present** **[8]** 12/12 24/13 36/23 49/18 62/11 62/13 63/3 75/23
**presentation** **[1]** 80/12
**presented** **[4]** 11/22

29/1 37/12 61/10
**presenting** **[2]** 5/4 56/19
**preserve** **[2]** 69/19 70/2
**pretrial** **[15]** 34/4 50/13 50/23 50/23 51/1 51/5 54/22 54/25 55/5 55/7 55/8 55/10 55/19 55/20 75/3
**pretty** **[2]** 50/25 70/16
**prevail** **[4]** 14/15 15/24 33/4 33/6
**prevent** **[2]** 10/24 76/22
**preventing** **[1]** 38/3
**previous** **[2]** 62/12 73/5
**previously** **[1]** 8/17
**primarily** **[1]** 53/7
**primary** **[2]** 23/12 70/12
**prior** **[3]** 17/11 38/20 65/12
**prison** **[31]** 6/21 7/3 8/3 9/24 10/21 12/14 14/17 16/6 20/20 20/22 20/23 21/3 21/9 21/9 21/15 30/21 32/8 33/16 35/4 35/6 35/9 36/22 38/25 40/1 40/5 44/16 54/10 69/10 73/2 73/6 76/4
**prisoner** **[2]** 22/5 22/15
**prisoners** **[6]** 7/14 20/21 20/22 21/10 23/4 81/19
**prisons** **[10]** 23/4 31/4 36/12 39/15 46/3 46/4 46/6 70/3 70/3 77/22
**pro** **[3]** 35/16 59/9 72/1
**probably** **[2]** 44/16 69/9
**problem** **[5]** 28/20 35/20 67/10 67/11 77/22
**problems** **[3]** 77/2 85/4 85/6
**procedurally** **[2]** 65/9 70/15
**procedure** **[9]** 24/6 36/18 46/9 47/6 47/17 47/22 48/16 63/2 71/11
**procedures** **[6]** 8/5 47/15 77/9 77/17 78/17 79/1
**proceed** **[5]** 19/11 24/2 28/6 32/10 75/25
**proceeding** **[1]** 19/6
**proceedings** **[9]** 1/16 37/13 61/16 61/18 62/5 64/18 74/18 85/20 86/5
**process** **[15]** 22/14 34/3 34/11 35/20 36/9

## P

**process... [10]** 36/21 37/1 37/2 39/1 39/7 47/3 47/10 48/11 79/9 85/12
**produce [1]** 84/6
**professionalism [1]** 85/17
**professionals [1]** 79/22
**proffer [1]** 29/13
**proffers [1]** 29/17
**programming [3]** 5/12 16/24 60/13
**programs [1]** 5/14
**prohibited [1]** 64/11
**promote [1]** 6/25
**prompted [1]** 39/14
**prong [2]** 14/23 15/10
**proof [1]** 10/20
**proper [2]** 10/12 58/25
**property [3]** 67/2 68/20 73/3
**proposal [4]** 24/8 24/12 29/4 44/19
**proposed [44]** 4/2 18/4 23/13 23/16 24/15 24/22 24/25 25/3 25/8 25/19 25/24 26/2 26/7 26/11 26/12 27/1 27/6 27/8 27/9 27/20 29/5 29/6 29/22 32/19 36/20 37/12 37/15 37/19 37/24 38/5 41/8 44/11 47/25 48/24 49/19 50/19 53/14 60/5 60/8 60/10 61/9 61/25 62/2 64/11
**propound [2]** 29/19 71/8
**prospective [1]** 70/20
**prostate [1]** 39/9
**protect [3]** 30/15 51/22 83/17
**protocols [1]** 9/16
**provide [6]** 23/8 35/21 37/4 39/12 50/8 53/14
**provided [8]** 5/12 8/8 23/7 41/12 52/16 56/16 56/17 56/21
**providing [3]** 5/8 52/17 68/13
**PSA [1]** 39/9
**psychological [3]** 33/25 49/22 50/5
**psychologically [3]** 51/20 54/2 54/15
**Psychology [1]** 5/13
**public [5]** 2/5 61/10 64/16 84/20 85/3
**public's [1]** 25/5
**purpose [3]** 23/6 25/21 61/14

**pursue [2]** 28/8 78/11
**pursued [3]** 77/11 78/8 78/17
**pursuing [1]** 81/7
**put [13]** 9/17 24/8 24/23 25/7 36/2 36/13 49/13 49/21 53/21 62/18 63/8 65/19 79/6
**puts [1]** 40/5
**putting [1]** 42/7

## Q

**qualify [1]** 40/8
**question [38]** 12/5 13/5 13/19 14/3 14/25 15/1 15/13 15/13 15/15 17/3 18/24 19/9 19/23 19/24 25/10 25/12 25/13 25/14 26/20 27/11 27/17 28/2 29/1 29/24 33/7 34/5 35/2 37/10 41/2 41/5 42/9 42/11 52/21 53/22 56/21 61/23 62/20 62/24
**questionable [1]** 51/17
**questions [15]** 11/9 18/19 19/10 19/11 20/8 23/23 25/2 25/9 28/21 29/20 29/24 34/6 40/17 40/18 44/6
**quickly [2]** 67/4 79/19
**quite [1]** 18/1
**quote [1]** 69/3

## R

**R-a-s-ul [1]** 71/17
**Radiation [2]** 80/14 81/17
**radios [1]** 68/21
**raise [6]** 35/22 37/7 52/22 70/13 81/24 82/13
**raised [10]** 3/6 19/25 35/17 35/19 36/24 51/10 57/21 79/21 80/12 85/8
**raises [2]** 40/12 52/21
**raising [2]** 49/17 69/8
**rapidly [1]** 34/24
**rare [1]** 21/6
**Rasul [2]** 71/17 81/25
**rate [1]** 43/23
**rather [7]** 25/18 29/22 32/24 44/15 65/20 73/14 85/16
**reach [5]** 13/16 14/9 25/2 32/19 82/7
**reached [1]** 25/5
**reaching [2]** 28/24 73/20
**read [2]** 22/8 67/13
**ready [2]** 64/21 65/20

**reality [1]** 76/4
**realize [2]** 61/10 84/7
**realizes [1]** 61/8
**really [9]** 18/21 20/14 22/1 37/5 38/19 54/7 62/15 64/6 82/1
**reason [11]** 10/19 12/2 13/4 17/17 36/5 41/21 56/20 61/6 61/20 69/14 70/12
**reasonable [5]** 6/4 11/3 11/6 14/23 15/1
**reasoned [3]** 70/25 81/15 82/10
**reasoning [1]** 67/24
**reasons [14]** 9/1 9/2 17/1 18/23 35/13 45/25 46/7 51/13 62/3 63/10 65/22 69/23 81/16 82/11
**reasserting [1]** 28/12
**recall [3]** 43/14 52/1 57/7
**receive [1]** 9/25
**received [4]** 48/4 56/20 70/6 78/20
**receiving [1]** 38/21
**recognize [1]** 44/17
**recognized [2]** 30/4 64/20
**reconsider [5]** 32/18 72/19 73/7 73/13 73/25
**reconsideration [14]** 3/10 4/7 4/10 5/6 9/2 66/23 66/24 68/2 72/21 79/19 80/4 82/12 83/9 83/24
**record [25]** 17/8 24/19 25/8 27/9 35/22 40/6 46/19 46/23 47/10 47/16 47/24 48/20 52/9 61/19 63/16 64/16 64/24 66/8 67/5 74/8 78/14 80/2 83/7 83/9 86/5
**recover [1]** 54/3
**recreation [4]** 5/14 5/19 16/25 17/2
**redress [2]** 7/1 76/5
**reduction [6]** 6/15 43/1 43/5 43/10 43/16 43/22
**reference [1]** 26/2
**references [1]** 82/23
**referencing [1]** 67/19
**reflect [1]** 52/9
**Reform [4]** 6/22 35/4 35/6 35/9
**regarding [4]** 5/2 5/4 6/3 23/13
**regardless [1]** 84/23
**reiterate [1]** 80/11
**related [10]** 4/1 6/7 7/3 26/16 52/6 52/14 56/12

72/9 80/23 81/12
**relates [1]** 13/5
**release [65]** 6/15 6/24 8/10 8/14 8/19 8/24 9/1 9/4 9/7 13/20 16/3 16/7 16/14 16/18 21/10 26/15 30/6 31/10 32/7 32/12 32/14 33/10 33/14 33/17 34/17 36/2 39/4 39/5 39/20 39/23 40/1 40/3 40/7 40/21 40/25 42/3 42/5 42/8 42/19 43/11 43/18 43/19 43/20 43/20 44/10 44/22 44/24 45/2 45/5 45/6 46/14 46/22 57/9 57/14 57/16 58/6 58/7 58/14 75/3 81/14 81/19 82/3 82/4 82/5 82/9
**released [9]** 20/17 39/13 41/22 44/6 45/21 45/22 46/13 76/18 85/13
**releasing [1]** 9/9
**relevant [1]** 47/23
**relief [38]** 6/22 8/7 8/15 8/17 8/21 13/8 13/10 13/14 13/16 16/16 17/6 21/22 24/21 25/4 41/23 42/3 44/21 45/13 45/17 48/21 49/6 57/12 57/24 58/6 59/4 59/7 71/21 71/23 72/3 76/14 76/18 76/18 77/11 80/23 81/10 81/11 81/13 82/7
**relies [1]** 71/24
**rely [4]** 18/3 29/17 34/17 77/24
**relying [3]** 70/25 72/22 82/11
**remaining [1]** 16/5
**remedies [27]** 7/15 7/24 7/24 7/25 8/6 8/8 9/10 13/3 17/11 32/7 33/16 43/4 43/5 43/7 44/7 44/16 45/2 45/9 45/13 45/25 46/2 48/14 48/15 59/5 78/9 78/14 79/11
**remedy [26]** 6/14 6/14 8/10 8/11 8/12 8/18 35/18 35/23 36/9 36/18 36/21 37/2 42/8 42/11 43/25 44/1 44/2 44/23 45/6 46/9 50/10 59/4 59/4 73/9 73/10 80/5
**reminder [1]** 51/19
**render [1]** 20/24
**reneged [1]** 19/4
**renew [1]** 76/6
**renewed [5]** 3/7 3/8 5/3 75/24 77/23

**repeat [2]** 25/12 25/13
**repeatedly [1]** 39/25
**rephrase [1]** 25/15
**reported [5]** 68/18 68/24 68/25 68/25 69/4
**reporter [4]** 2/15 4/21 84/14 86/11
**reporting [1]** 69/12
**reports [4]** 49/25 50/1 68/9 69/15
**represent [1]** 30/20
**representations [2]** 83/4 83/8
**represented [1]** 62/9
**represents [1]** 55/12
**request [8]** 3/8 5/3 9/2 40/21 42/3 43/25 54/24 76/7
**requested [2]** 43/4 72/25
**requesting [1]** 43/25
**requests [1]** 35/18
**require [9]** 7/21 8/15 10/20 12/21 45/21 49/2 72/22 78/13 84/9
**required [8]** 7/14 7/18 30/6 31/3 46/25 54/4 77/12 78/9
**requirement [11]** 8/2 17/6 23/3 35/5 35/11 35/14 44/5 45/16 45/24 46/1 46/8
**requirements [5]** 8/6 10/15 34/12 35/10 36/6
**requires [3]** 8/6 71/4 79/2
**rescue [1]** 21/10
**reserved [1]** 44/20
**residents [5]** 68/12 68/16 68/18 68/19 69/4
**resolution [4]** 23/18 24/3 24/24 69/25
**resolve [3]** 23/4 23/23 62/21
**resolved [2]** 23/20 28/15
**resolving [1]** 78/4
**resources [2]** 18/16 46/4
**respect [17]** 17/4 17/10 17/16 18/5 23/11 44/19 47/2 47/17 53/7 55/7 55/25 57/6 68/2 76/11 79/20 80/4 81/10
**respond [22]** 4/9 11/13 24/18 29/23 37/7 38/13 47/15 55/25 56/6 56/6 57/2 60/7 60/23 61/23 64/2 65/3 65/23 65/25 66/1 68/1 69/20 69/21
**responded [1]** 47/7
**respondent [66]** 1/7 2/9 3/20 3/22 5/1 6/15

**R**

**respondent... [60]** 8/9 8/20 10/16 11/7 13/18 16/13 17/7 19/4 19/6 19/15 19/16 19/18 19/19 23/19 23/25 24/18 24/25 25/1 25/7 28/12 29/20 31/15 33/15 33/20 33/23 38/7 40/22 44/7 44/22 47/15 54/21 55/24 56/3 56/23 57/11 57/18 57/20 58/15 59/1 59/20 59/22 59/23 59/24 60/7 60/9 60/17 60/22 60/25 61/2 61/7 62/2 65/3 65/16 66/4 66/17 66/19 66/20 66/21 79/23 80/2

**respondent's [11]** 3/7 3/11 3/25 5/4 27/21 28/22 55/22 59/18 64/2 64/3 82/1

**respondents [5]** 4/9 4/15 29/16 47/7 55/17

**response [23]** 3/7 5/2 5/5 15/8 17/8 18/14 19/25 20/4 21/8 25/8 29/21 36/10 48/4 49/23 54/7 54/8 56/10 56/22 57/4 63/5 64/3 65/15 81/16

**responses [1]** 45/8
**responsibility [1]** 72/23
**responsive [1]** 64/1
**rest [2]** 17/2 18/18
**restored [1]** 6/2
**restraining [2]** 32/23 69/19
**restrictions [1]** 75/11
**result [7]** 14/21 25/3 36/16 44/5 75/11 77/3 85/11
**resulting [1]** 6/11
**retaliated [5]** 69/7 69/12 69/16 69/17 72/8
**retaliating [2]** 68/12 72/10
**retaliation [15]** 68/1 70/10 70/14 70/21 73/17 76/12 76/14 76/15 78/11 78/21 80/20 81/7 81/11 81/20 83/21
**retaliatory [1]** 68/23
**retraining [1]** 72/15
**retrospect [1]** 85/5
**returning [1]** 73/4
**revengeful [1]** 68/23
**review [3]** 21/7 27/20 67/12
**reviewed [3]** 17/8 31/14 31/21

**right [10]** 15/2 16/8 22/16 28/5 28/9 33/16 35/22 47/18 47/19 70/5
**rights [7]** 34/3 56/8 69/18 70/15 80/19 80/22 81/21
**ripped [1]** 68/22
**risk [10]** 6/10 6/11 10/23 11/4 14/16 14/17 15/4 36/3 36/14 42/8
**risks [4]** 6/13 10/22 10/24 10/25
**RMR [2]** 2/15 86/10
**rolling [2]** 38/21 52/18
**Room [1]** 2/16
**route [1]** 57/14
**rule [11]** 24/4 45/15 51/12 71/7 71/7 71/9 71/10 71/25 72/4 80/14 80/17
**ruled [1]** 24/1
**rules [5]** 29/19 34/17 71/5 71/10 72/18
**ruling [9]** 3/8 5/3 17/18 18/2 22/22 27/23 29/9 59/25 72/19
**run [2]** 19/3 30/14
**running [4]** 5/14 29/12 47/17 47/19

**S**

**S-e-k-e-r-k-e [1]** 31/12
**S.W [3]** 2/5 2/10 2/16
**safe [3]** 6/2 9/16 36/15
**safety [4]** 9/1 9/16 10/22 54/10
**said [21]** 9/11 16/24 20/5 33/13 35/17 36/1 36/25 43/19 51/19 59/13 62/4 63/20 64/8 64/16 64/25 65/22 68/19 75/17 78/24 80/10 80/16
**Salazar [1]** 3/5
**same [23]** 4/4 9/14 11/23 17/15 24/10 25/14 25/21 29/16 31/14 35/20 35/20 45/15 50/15 51/9 54/9 55/3 58/1 59/2 59/2 72/10 76/20 77/5 81/17
**sanctionable [1]** 66/17
**sanctions [3]** 63/21 66/18 66/21
**satisfies [1]** 14/22
**save [2]** 12/13 53/8
**saved [1]** 85/9
**saving [1]** 53/11
**saw [1]** 46/18
**say [41]** 6/17 10/20 12/21 15/21 20/15 21/2 21/23 23/15 26/5 26/25 29/20 30/5 31/22 32/16

33/11 33/17 34/16 34/20 40/4 40/13 41/6 41/15 42/12 43/24 49/14 50/6 52/17 56/16 56/21 57/12 62/10 62/15 63/20 64/6 64/15 64/24 65/17 70/16 70/17 72/9 73/13
**saying [18]** 4/21 11/23 11/24 31/17 31/18 32/23 37/3 40/9 48/10 51/14 52/10 57/20 57/21 59/2 60/21 65/7 66/3 66/4
**says [11]** 22/6 33/19 45/12 48/2 48/4 48/6 54/5 64/2 70/12 72/2 83/15
**SB [2]** 1/4 3/5
**scenario [5]** 12/7 12/12 26/22 44/23 67/21
**scheduling [2]** 55/24 56/6
**scope [8]** 7/10 26/13 26/13 76/8 81/3 82/2 82/2 82/21
**screams [1]** 68/19
**se [2]** 35/16 59/9
**sealed [2]** 25/6 61/5
**sealing [1]** 61/6
**searched [1]** 67/2
**searching [1]** 67/18
**second [5]** 15/10 25/4 32/5 32/6 79/3
**section [3]** 20/10 36/21 71/25
**see [5]** 22/2 23/23 60/16 63/8 67/18
**seeing [1]** 13/24
**seek [11]** 6/13 6/23 8/10 8/14 8/20 9/3 9/7 16/2 40/6 40/25 57/12
**seeking [12]** 26/15 32/14 45/17 57/24 66/18 66/21 70/11 72/14 75/3 76/5 76/23 80/20
**seem [4]** 20/20 28/23 53/6 76/17
**seemed [3]** 67/20 73/9 77/17
**seems [2]** 45/1 47/16
**seen [3]** 10/23 59/23 60/18
**Sekerke [1]** 31/12
**semblance [1]** 16/20
**sending [1]** 75/6
**sense [2]** 11/15 59/14
**sent [4]** 70/1 75/13 78/19 78/20
**sentence [13]** 6/15 9/3 42/25 43/5 43/10 43/15 43/15 43/22 43/22

44/13 45/18 47/1 65/19
**sentenced [2]** 55/21 56/1
**sentences [1]** 43/12
**sentencing [5]** 16/7 40/3 44/25 46/15 57/15
**separate [5]** 35/3 44/2 53/17 53/17 67/21
**separating [1]** 11/18
**September [2]** 1/6 3/2
**serious [1]** 68/14
**serve [1]** 56/3
**served [4]** 43/23 44/15 55/23 56/5
**serves [1]** 25/21
**service [2]** 55/7 85/1
**set [9]** 20/18 30/22 44/23 51/13 51/16 51/23 58/13 65/14 77/5
**sets [1]** 14/16
**Setting [1]** 85/8
**seven [6]** 31/4 52/2 52/3 52/10 52/17 52/20
**several [1]** 3/24
**severity [1]** 66/20
**Sheridan [43]** 1/6 5/9 5/9 5/11 6/4 6/7 15/6 16/19 21/12 29/11 31/5 33/21 34/11 34/21 38/15 39/11 39/23 41/8 41/11 42/1 42/14 46/20 47/5 47/6 47/14 47/18 52/3 52/25 53/8 58/8 58/10 58/11 60/12 62/16 67/1 67/18 68/11 73/15 73/18 74/1 75/3 75/15 75/20
**should [44]** 6/20 7/17 8/7 8/8 16/16 18/3 21/16 21/18 21/20 25/16 28/25 29/2 29/4 29/21 30/16 30/22 33/5 33/8 33/9 34/12 37/14 42/10 43/1 43/18 44/15 46/23 47/12 47/22 48/13 48/14 48/15 53/2 57/12 57/21 62/3 62/12 62/17 64/20 66/13 70/17 70/20 78/19 78/23 83/8
**shouldn't [8]** 20/2 27/24 30/11 54/4 55/9 57/12 62/25 64/16
**show [15]** 7/25 7/25 9/20 10/21 33/2 33/3 33/8 41/13 42/10 49/8 49/12 50/15 62/17 62/18 68/16
**showed [1]** 42/22
**shower [1]** 5/18
**showing [3]** 17/20 49/9 58/3
**shows [3]** 29/2 33/21

56/17
**shumway [4]** 2/15 2/17 86/9 86/10
**sic [1]** 24/25
**sick [1]** 31/5
**side [4]** 17/17 24/16 70/7 81/17
**sides [3]** 4/5 4/11 85/8
**signature [2]** 86/7 86/7
**significant [4]** 18/16 33/25 34/25 54/19
**signing [1]** 86/4
**similar [2]** 51/7 54/22
**Similarly [2]** 48/5 58/7
**Simon [4]** 13/9 14/14 33/4 75/2
**simply [6]** 19/8 20/12 29/14 30/3 64/5 72/13
**since [6]** 8/8 18/15 28/9 28/11 65/11 74/4
**sinkhole [4]** 21/8 21/9 21/15 26/23
**sit [1]** 74/2
**sitting [3]** 80/21 81/18 82/4
**situation [3]** 15/22 20/2 62/23
**situations [4]** 12/18 74/11 80/6 80/8
**Sixth [6]** 10/1 15/15 15/16 15/19 16/8 32/2
**size [2]** 41/12 41/14
**slight [1]** 19/13
**slow [1]** 69/24
**slowness [1]** 67/10
**small [2]** 41/24 53/25
**small cells [1]** 41/24
**smashed [1]** 68/17
**so [135]**
**solve [1]** 85/4
**solved [4]** 41/6 67/7 67/12 85/6
**solving [1]** 67/10
**some [36]** 8/23 10/9 11/5 12/19 14/21 16/20 16/24 17/17 19/12 20/19 20/23 22/4 23/8 37/21 41/6 41/22 41/23 43/4 43/22 53/5 57/4 58/9 60/18 61/11 63/12 66/6 71/23 72/20 74/11 74/21 78/3 78/16 80/7 80/11 83/15 83/25
**somebody [2]** 44/12 69/15
**somehow [2]** 33/21 80/9
**something [13]** 12/20 14/20 19/24 27/22 30/23 38/19 46/15 49/18 64/9 64/10 64/24 78/7 84/2
**sometimes [3]** 41/15

# S

**sometimes... [2]** 41/16 41/16
**somewhat [4]** 12/3 17/1 40/24 85/5
**somewhere [1]** 13/1
**soon [1]** 84/18
**sooner [1]** 85/16
**sorry [3]** 24/18 25/11 65/13
**sort [6]** 52/20 69/2 73/2 73/5 74/20 84/2
**sought [7]** 5/25 8/18 8/23 43/18 43/19 81/11 81/13
**sound [2]** 31/19 64/7
**sounds [5]** 12/21 15/23 31/10 38/17 44/23
**Southern [1]** 31/13
**space [3]** 41/14 53/18 53/25
**speak [1]** 75/22
**special [9]** 4/8 66/25 69/3 71/11 72/17 72/24 73/14 79/7 81/12
**specific [8]** 9/25 29/23 37/4 44/19 67/14 68/15 74/22 75/16
**specifically [8]** 29/20 36/1 53/4 63/25 74/5 75/5 75/8 75/18
**spend [4]** 9/25 39/4 66/10 66/11
**spending [2]** 66/7 66/9
**sphere [1]** 25/5
**spirit [1]** 64/13
**spreading [1]** 34/24
**STACIE [1]** 1/17
**staff [4]** 6/4 48/6 48/7 73/18
**stand [2]** 53/18 78/10
**standard [1]** 51/5
**start [8]** 3/25 4/15 5/8 55/19 56/3 56/12 56/16 56/17
**started [7]** 13/6 31/2 32/13 38/18 81/4 81/5 82/18
**starved [1]** 54/14
**state [9]** 34/9 34/22 45/11 45/11 45/13 45/14 45/25 52/23 52/25
**stated [1]** 41/19
**statement [6]** 12/1 26/12 29/13 29/14 52/2 83/2
**statements [13]** 12/2 38/14 51/21 59/8 59/23 61/11 67/18 69/9 73/16 73/23 74/7 74/9 76/1
**states [7]** 1/1 1/18 2/10 2/15 34/19 36/6 71/19

**status [4]** 49/25 50/1 56/18 83/25
**statute [3]** 22/12 45/19 71/4
**statutes [2]** 6/9 77/13
**statutorily [1]** 6/19
**statutory [4]** 7/16 35/4 46/25 71/2
**stay [40]** 3/11 4/1 4/16 5/5 13/2 16/6 17/23 18/1 18/1 18/6 18/10 18/12 18/18 18/21 18/22 18/22 19/2 19/3 19/14 19/25 21/16 23/11 24/7 24/23 24/24 28/19 29/7 37/10 38/2 55/2 61/24 63/24 64/14 64/15 64/17 65/11 65/15 77/20 84/1 85/14
**stayed [2]** 18/20 65/17
**staying [1]** 65/15
**step [4]** 22/3 26/25 44/17 49/5
**steps [3]** 44/3 54/17 54/18
**still [14]** 5/17 12/21 12/22 14/21 16/14 19/6 20/6 40/25 50/23 51/1 55/22 68/3 73/1 73/3
**stipulated [2]** 42/12 42/23
**STIRLING [11]** 1/3 3/5 35/17 51/19 54/25 55/6 55/10 55/15 55/20 56/1 83/1
**Stirling's [1]** 52/1
**stopped [1]** 38/22
**stops [1]** 27/11
**story [2]** 24/16 70/7
**Street [1]** 2/5
**strike [8]** 4/2 25/1 37/17 40/16 55/2 63/12 63/15 65/4
**stuck [1]** 12/5
**students [1]** 5/13
**subgroup [1]** 10/11
**subject [1]** 40/23
**subjective [1]** 50/16
**submit [2]** 24/17 47/25
**submitting [1]** 25/19
**subset [7]** 10/4 10/7 10/7 10/8 10/13 58/19 58/25
**substantial [2]** 19/17 43/3
**substantially [3]** 42/7 51/7 54/22
**subsumed [3]** 37/10 55/9 55/15
**succeed [1]** 29/10
**success [1]** 32/24
**such [7]** 9/15 14/4 16/10 17/21 34/9 53/24

58/5
**suffer [2]** 19/13 35/13
**suffered [1]** 44/13
**suffering [5]** 39/8 40/9 49/15 49/22 73/1
**sufficient [4]** 4/5 49/20 49/21 82/24
**suggest [4]** 19/2 53/6 59/5 59/16
**suggested [2]** 63/21 66/6
**suggesting [1]** 33/19
**suggestion [3]** 7/10 57/18 58/22
**suggestions [3]** 9/20 33/22 59/3
**suggests [1]** 78/14
**suicide [1]** 52/13
**suit [1]** 7/15
**Suite [2]** 2/5 2/10
**suits [1]** 8/3
**summary [3]** 3/10 24/1 24/6
**support [3]** 8/2 63/8 74/14
**supported [1]** 12/1
**Supreme [1]** 7/10
**sure [18]** 4/13 17/15 18/7 23/19 25/9 37/8 50/25 52/9 57/4 57/6 57/17 60/17 61/14 64/20 74/17 80/1 83/24 84/5
**surgery [2]** 37/20 41/25
**surpass [1]** 59/18
**surpassed [1]** 59/19
**surprise [1]** 38/2
**suspended [1]** 60/13
**swallow [1]** 22/11
**sworn [2]** 59/23 61/11
**system [1]** 45/12

# T

**tailored [3]** 8/7 8/11 9/5
**take [12]** 4/20 4/23 14/19 23/7 37/23 43/1 43/7 54/17 74/16 75/19 84/17 84/19
**taken [11]** 6/12 11/2 11/3 11/4 11/7 14/22 14/23 15/1 28/4 67/8 79/8
**taking [3]** 15/23 37/21 75/17
**talk [3]** 74/19 79/2 79/4
**talked [2]** 82/14 83/6
**talking [4]** 13/22 38/3 53/15 83/18
**target [2]** 74/5 76/5
**targeted [3]** 67/15 74/23 74/24

**team [6]** 69/2 73/2 74/9 74/20 75/22 84/2
**teams [2]** 69/4 75/16
**tee [1]** 24/11
**tell [6]** 42/4 46/19 48/7 69/11 69/16 74/25
**telling [2]** 33/14 50/4
**temporary [2]** 32/23 72/15
**terms [1]** 83/6
**terrible [3]** 15/12 15/22 20/16
**test [11]** 11/2 11/3 11/6 11/6 12/20 14/12 14/16 14/18 15/3 15/11 15/20
**testimony [2]** 24/14 24/14
**testing [2]** 9/16 11/25
**than [11]** 5/10 5/21 25/18 29/22 41/18 44/15 61/15 65/20 73/14 84/15 85/16
**thank [31]** 3/14 3/17 4/17 4/23 11/8 18/7 21/17 28/16 28/18 48/23 55/16 55/18 60/3 61/21 65/1 65/2 65/5 66/15 66/22 68/7 79/14 79/16 79/17 83/12 84/12 84/13 84/15 84/19 84/25 85/16 85/19
**that [712]**
**that's [63]** 11/2 11/5 12/5 15/13 17/12 17/18 18/22 19/14 19/24 22/16 26/16 29/14 29/24 31/12 31/12 32/12 32/20 32/25 33/18 34/12 35/3 36/11 37/5 38/5 38/23 40/11 40/15 41/1 41/18 43/17 43/21 49/18 50/11 54/1 54/7 54/7 57/16 58/23 61/16 62/5 62/7 64/3 64/9 64/25 66/3 66/13 67/16 68/6 70/4 70/24 71/4 71/25 74/23 75/1 75/16 76/3 76/23 77/20 80/25 80/25 82/19 83/20 84/2
**their [75]** 4/6 5/17 5/22 5/25 7/23 7/24 9/2 10/2 10/10 10/14 11/13 11/14 11/15 11/18 19/25 20/21 21/8 24/16 28/24 29/15 29/17 36/3 36/14 38/14 39/2 40/3 41/12 41/20 42/2 42/7 42/15 43/12 44/13 46/15 46/19 46/22 47/11 48/20 50/14 51/20 52/16 53/3 53/4

54/10 56/8 57/19 58/21 58/25 61/19 63/20 64/1 64/14 64/14 67/2 68/17 68/20 68/20 68/21 68/21 68/21 68/21 68/22 68/25 69/18 70/7 70/9 73/2 73/3 73/5 78/9 78/24 78/25 79/21 79/21 82/14
**them [48]** 6/9 7/19 9/1 10/6 25/6 30/18 32/12 33/17 36/14 36/25 37/22 41/22 43/4 46/16 47/4 47/8 48/4 48/11 50/10 53/21 54/6 55/25 57/1 58/5 58/14 59/24 61/14 61/16 62/2 65/8 65/8 68/17 70/2 70/19 73/23 73/24 75/12 75/13 76/3 76/21 76/22 76/22 76/22 78/18 78/19 78/20 83/17 84/25
**themselves [6]** 36/24 45/15 47/24 49/20 75/17 81/3
**then [40]** 4/3 14/3 18/15 19/10 19/11 21/14 23/22 24/5 26/24 27/22 29/5 32/11 32/21 33/13 36/7 36/8 37/25 38/23 40/6 41/20 42/3 42/23 44/6 44/8 46/13 51/24 56/5 56/11 62/23 63/24 65/14 68/1 69/22 70/21 71/22 72/2 74/4 78/11 79/3 82/21
**therapy [1]** 41/25
**there [142]**
**there's [33]** 9/7 10/3 14/11 14/23 15/22 16/1 16/24 17/9 17/15 17/18 21/8 27/14 28/5 29/9 31/16 31/16 32/15 32/21 33/2 36/19 42/16 45/16 52/17 55/23 59/17 60/20 61/12 61/13 61/17 62/22 66/9 80/6 83/1
**therefore [4]** 14/7 30/6 47/12 67/22
**these [49]** 9/10 19/21 20/10 20/11 23/2 23/5 23/9 27/3 30/16 30/21 31/14 31/17 32/11 33/18 38/18 39/22 40/6 41/20 42/6 46/17 47/21 48/12 48/17 49/17 50/7 53/10 58/2 59/2 61/8 62/21 62/23 64/17 67/14 68/12 68/23 69/7 69/11 70/8 70/19 72/11 74/4 74/20 74/21 76/15

**T**

**these... [5]** 77/6 78/6 81/1 83/7 84/6
**they [160]**
**they'll [1]** 11/13
**they're [26]** 5/18 11/24 11/24 13/24 23/5 25/22 26/11 26/12 33/9 35/11 35/12 35/15 46/16 46/19 46/20 46/21 57/24 59/22 61/10 61/13 62/15 64/4 67/17 71/18 80/7 80/8
**they've [8]** 7/7 33/23 52/18 52/20 54/2 59/9 73/5 76/2
**thing [3]** 54/1 74/25 78/23
**things [14]** 13/25 16/4 19/1 22/13 24/21 29/12 29/16 33/20 59/8 60/14 66/5 77/5 80/25 83/6
**think [108]**
**thinking [4]** 12/25 13/19 54/13 60/10
**Third [2]** 2/10 2/16
**this [136]**
**those [88]**
**though [2]** 8/14 16/13
**thought [12]** 12/18 37/6 37/23 43/15 50/25 57/18 57/19 67/16 77/21 78/22 78/23 84/5
**three [4]** 8/16 53/17 62/3 67/8
**threshold [3]** 18/19 27/17 28/2
**threw [1]** 68/17
**through [21]** 8/5 16/18 22/7 36/15 36/15 39/7 39/17 39/18 44/6 44/13 46/3 46/12 57/13 66/12 69/9 69/10 73/5 75/5 75/5 84/7 85/6
**thugs [2]** 76/22 79/23
**tie [2]** 77/23 82/24
**ties [1]** 74/4
**tight [1]** 76/25
**time [52]** 4/5 4/11 5/18 9/14 9/24 11/24 13/7 13/7 18/16 18/18 19/17 20/21 24/11 34/1 34/7 34/15 34/23 37/21 37/25 38/16 38/17 39/3 40/13 42/6 43/3 43/17 47/16 47/21 48/22 50/10 50/14 51/17 52/8 53/8 53/22 55/10 57/1 58/1 58/22 59/2 66/7 66/9 66/10 66/12 67/1 68/24 77/18 78/3 78/5 79/9 80/21 85/10
**timeline [1]** 37/18

**times [2]** 60/21 85/11
**timing [1]** 73/8
**today [14]** 4/25 5/12 28/13 38/24 40/25 42/19 42/19 57/1 66/14 74/2 81/1 82/14 83/5 84/18
**together [2]** 23/4 63/8
**told [6]** 23/9 37/24 69/4 73/22 76/3 78/20
**too [5]** 8/14 12/21 16/16 27/24 60/10
**took [8]** 6/4 10/24 14/18 25/16 37/25 75/12 75/14 85/10
**tools [2]** 72/24 72/25
**touch [2]** 57/5 76/3
**toward [1]** 67/3
**track [2]** 23/17 24/8
**tradeoff [1]** 54/3
**train [1]** 84/5
**transcript [5]** 1/16 27/21 28/5 86/5 86/6
**transcripts [1]** 17/9
**transfer [2]** 9/3 16/3
**transferred [2]** 13/1 58/9
**transportation [1]** 9/16
**treat [2]** 53/20 53/21
**treated [1]** 39/16
**treatment [4]** 9/25 39/10 39/14 51/20
**tricky [1]** 14/3
**tried [1]** 60/15
**TRO [1]** 76/8
**true [12]** 8/6 12/23 21/20 21/21 24/21 25/17 27/1 39/17 61/8 72/13 73/22 74/24
**truly [1]** 12/12
**try [7]** 20/15 32/8 33/6 33/8 33/20 39/14 84/3
**trying [11]** 15/20 33/22 48/21 62/6 62/9 62/21 66/11 75/23 77/19 77/21 83/21
**turn [7]** 4/3 40/2 42/23 48/24 54/21 55/17 79/15
**Turning [1]** 56/22
**two [26]** 5/11 11/10 15/8 17/14 18/13 19/16 22/20 25/2 25/23 32/1 40/5 45/8 49/1 49/12 49/16 52/4 53/19 54/6 57/10 57/10 67/8 69/21 69/22 70/17 72/5 84/20
**type [5]** 12/4 23/2 30/24 41/21 74/11
**types [5]** 20/11 22/2 60/14 82/7 83/5

**U**

**U.S [2]** 57/10 85/2
**ul [1]** 71/17
**umbrella [1]** 67/25
**unable [1]** 46/19
**unambiguously [1]** 63/25
**unavailability [3]** 35/17 35/22 79/12
**unavailable [6]** 8/1 9/10 17/21 35/15 46/9 78/15
**uncertainties [1]** 5/25
**unconstitutional [15]** 11/20 12/16 14/8 15/9 20/16 21/5 22/19 27/3 33/10 44/14 45/20 53/23 58/12 58/13 77/4
**unconstitutionally [1]** 22/5
**under [50]** 5/11 6/9 6/20 7/14 7/15 7/16 8/13 10/2 10/12 19/20 20/7 20/10 20/13 20/18 21/8 22/2 22/2 22/9 27/3 27/15 29/13 29/19 38/15 43/19 51/11 55/6 56/9 57/22 58/13 58/19 59/5 67/25 68/21 70/3 70/22 71/7 71/7 71/9 71/10 71/15 72/18 77/9 77/9 77/10 77/13 77/17 78/12 80/19 84/17 85/4
**underlying [4]** 81/13 81/23 82/8 82/19
**undermines [1]** 33/21
**understand [14]** 4/21 4/22 12/3 17/4 21/18 28/5 51/3 53/20 56/18 56/24 65/17 69/23 74/12 83/25
**understanding [5]** 11/22 17/8 25/10 55/13 75/18
**understands [1]** 59/1
**understood [3]** 26/4 41/2 69/6
**undisputed [3]** 23/25 41/7 59/21
**undo [1]** 19/12
**unfair [1]** 63/2
**unfortunately [2]** 12/19 31/4
**unit [3]** 79/2 79/4 79/7
**UNITED [5]** 1/1 1/18 2/10 2/15 71/19
**units [2]** 5/14 53/17
**universe [1]** 70/16
**unknown [1]** 38/19
**unless [5]** 33/17 40/17 41/4 43/12 46/18
**unnamed [1]** 60/16
**unnecessary [1]** 65/24

**unseal [2]** 60/4 61/3
**unsealed [1]** 61/13
**until [1]** 6/1
**unusual [3]** 13/6 43/13 62/22
**up [16]** 21/15 24/11 25/22 29/11 30/19 33/15 44/23 47/17 47/19 50/25 54/12 56/3 63/16 68/22 79/7 84/3
**update [1]** 5/8
**updated [1]** 52/18
**upon [2]** 24/5 26/16
**urges [1]** 39/25
**urinating [1]** 39/10
**urologist [1]** 39/15
**us [23]** 23/9 30/14 32/15 33/15 37/18 38/6 39/25 42/9 43/18 50/4 52/16 62/2 62/20 63/3 68/25 69/8 69/11 70/4 73/23 75/6 76/3 78/20 83/20
**use [9]** 27/14 39/25 46/10 47/22 49/23 61/15 69/11 72/2 76/24
**used [1]** 15/20
**usually [2]** 45/10 80/5

**V**

**vacation [2]** 38/1 38/1
**vaccine [1]** 30/15
**vaccines [1]** 9/18
**valid [1]** 9/21
**Vandiver [2]** 2/4 3/15
**variety [1]** 74/10
**various [1]** 35/13
**vehicle [4]** 9/22 13/20 16/15 57/22
**vehicles [2]** 6/19 6/21
**version [3]** 5/23 52/23 75/7
**versus [1]** 3/5
**very [15]** 5/9 5/20 10/23 12/11 22/6 22/11 22/17 22/17 34/9 38/3 60/19 73/19 79/10 84/11 85/17
**video [2]** 70/2 73/15
**view [1]** 36/13
**viewed [2]** 30/16 66/20
**violate [2]** 34/10 64/13
**violated [3]** 34/2 34/4 64/6
**violation [9]** 14/13 33/3 43/3 43/8 49/9 50/17 63/18 71/18 82/20
**violations [1]** 68/14
**violence [1]** 73/19
**violent [1]** 68/10
**virus [7]** 6/5 12/11 26/24 34/24 52/10 53/1 77/3

**voiced [1]** 5/24
**vulnerabilities [1]** 58/21
**vulnerable [10]** 10/4 10/12 10/13 16/10 16/12 32/3 32/4 32/14 40/8 58/19

**W**

**wait [1]** 35/25
**waiting [3]** 31/6 67/7 78/6
**waivable [1]** 35/12
**waive [1]** 35/12
**waived [4]** 7/21 35/12 46/8 47/12
**waiver [1]** 17/10
**waiving [1]** 36/5
**walls [1]** 68/17
**want [28]** 4/1 19/22 29/17 30/3 34/16 37/7 42/21 54/17 56/5 56/19 57/4 60/7 60/17 61/19 63/12 63/15 65/3 65/23 66/2 66/5 68/3 73/24 76/4 78/7 78/10 80/1 80/10 83/24
**wanted [9]** 17/14 38/7 52/8 64/17 64/20 65/18 66/19 84/5 84/19
**wants [2]** 25/7 84/3
**warden [24]** 1/6 5/1 10/23 14/18 14/19 49/3 49/10 49/13 49/14 49/17 49/21 49/23 50/2 53/3 53/6 53/9 53/16 54/5 54/17 76/20 76/21 76/24 77/2 77/5
**warden's [1]** 50/10
**warrant [1]** 56/9
**warranted [2]** 31/10 72/21
**was [150]**
**wasn't [5]** 11/4 32/24 57/20 63/6 64/11
**waste [1]** 40/13
**wasted [1]** 46/5
**way [19]** 13/15 16/18 23/1 23/21 30/19 30/22 45/18 45/22 46/12 53/19 53/20 55/3 58/25 61/9 62/21 75/25 77/4 77/21 78/10
**ways [4]** 21/3 43/22 54/3 83/23
**we [207]**
**we'd [8]** 38/3 42/21 56/5 63/10 72/19 73/7 73/12 73/25
**we'll [4]** 4/12 33/1 33/3 85/15
**we're [30]** 3/24 19/8 21/11 21/13 22/21

## W

**we're... [25]** 23/15 31/2 32/4 32/9 32/11 32/13 32/13 34/22 36/11 45/1 50/18 51/14 51/14 55/25 58/1 60/24 62/20 65/7 65/8 65/20 66/11 66/13 67/21 80/2 81/4

**we've [13]** 10/23 11/9 29/5 33/11 37/14 50/2 61/15 62/5 63/8 65/20 65/22 73/21 83/21

**website [1]** 56/17

**week [1]** 37/23

**weeks [2]** 67/8 69/21

**weigh [1]** 19/2

**well [20]** 3/16 12/20 15/3 15/19 16/13 32/16 36/10 41/1 42/21 45/23 53/5 54/5 55/1 60/9 61/6 73/19 76/16 81/15 82/10 85/1

**well-reasoned [2]** 81/15 82/10

**went [6]** 10/16 13/8 24/25 25/19 26/25 37/25

**were [132]**

**weren't [5]** 56/25 59/10 62/5 73/10 76/18

**what [79]** 4/21 6/8 9/20 11/2 13/24 13/24 14/15 21/4 22/5 26/9 26/9 26/16 26/21 27/10 27/16 27/19 28/4 28/7 30/14 31/2 32/20 33/1 33/16 33/20 33/22 34/21 38/15 38/25 40/1 40/4 40/9 41/7 41/13 42/1 43/22 44/4 46/20 48/19 48/25 49/5 54/8 54/11 54/13 56/21 57/20 59/6 59/12 60/10 60/16 60/18 60/18 60/21 60/21 61/9 61/14 62/9 62/10 63/5 64/4 64/25 67/16 67/21 73/1 73/14 75/8 76/3 76/8 76/10 76/14 77/19 77/22 78/19 81/4 81/4 81/5 82/18 82/21 82/24 83/25

**what's [9]** 16/20 26/8 26/14 27/15 44/4 46/23 69/11 72/20 84/11

**whatever [3]** 16/4 56/6 85/10

**wheelchairs [1]** 41/24

**when [21]** 5/10 5/21 9/24 9/25 24/23 30/5 31/23 34/23 37/2 38/19 39/5 39/17 40/1 53/15 59/10 64/24 70/17

73/23 77/18 83/17 84/21

**whenever [1]** 63/13

**where [33]** 12/7 12/10 12/12 12/18 13/3 13/7 15/22 20/2 21/8 22/18 23/8 24/10 31/13 32/12 33/13 34/20 38/24 39/11 39/19 44/20 45/10 49/11 53/11 60/11 67/1 71/17 72/8 75/9 77/15 79/8 80/6 81/11 83/18

**whereas [1]** 28/25

**whether [43]** 11/3 13/1 13/5 14/16 14/17 14/25 15/14 17/16 18/3 19/23 20/3 20/9 22/4 25/3 25/11 31/16 31/18 33/6 33/7 38/9 41/21 41/22 42/4 42/10 42/24 43/1 44/7 44/7 44/8 47/10 47/17 47/19 47/20 52/19 60/4 62/19 62/24 67/24 69/16 72/15 73/16 74/23 78/11

**which [47]** 6/9 6/20 7/11 9/17 14/1 14/13 14/16 15/11 18/17 18/24 19/19 20/18 24/4 25/20 25/21 26/6 26/8 27/17 28/23 29/5 30/25 31/2 35/5 43/13 43/20 47/25 48/2 49/15 52/22 52/23 59/7 59/25 60/8 66/20 67/13 67/24 71/25 73/8 74/10 76/1 81/13 81/17 82/1 82/24 82/25 83/10 85/5

**while [2]** 23/19 41/5

**who [32]** 5/15 16/9 20/22 29/14 32/14 34/2 39/24 40/8 40/9 40/9 41/24 41/24 44/10 44/13 45/17 47/5 48/21 50/4 50/13 52/3 58/8 58/9 60/21 70/11 72/14 73/18 74/6 74/20 75/22 76/5 78/22 85/2

**why [13]** 7/25 17/20 17/25 18/5 40/11 40/14 45/5 46/7 62/3 62/5 66/3 67/17 74/13

**widely [1]** 48/16

**will [15]** 5/4 20/15 33/7 33/11 37/17 40/6 40/7 41/15 61/7 65/25 66/1 73/4 79/10 84/17 85/14

**Wilson [9]** 10/1 10/3 15/16 30/8 31/22 32/2 32/20 32/22 58/17

**within [9]** 26/7 32/8 33/16 42/9 55/12 69/20

77/1 80/17 81/8

**without [6]** 9/9 63/1 63/3 67/10 84/16 86/6

**witness [1]** 24/14

**witnessed [1]** 73/18

**woke [1]** 54/12

**Woods [1]** 48/1

**words [3]** 15/16 24/16 59/2

**work [3]** 64/19 83/21 84/22

**worked [3]** 38/20 85/2 85/12

**working [5]** 23/4 37/16 62/5 65/18 65/20

**worth [1]** 82/11

**would [140]**

**wouldn't [7]** 12/22 23/15 29/17 47/23 55/13 66/2 73/24

**writ [1]** 3/7

**write [1]** 67/23

**writing [1]** 84/6

**written [2]** 67/8 78/23

**wrong [4]** 15/17 15/20 60/20 76/1

## Y

**yanked [1]** 68/15

**yard [1]** 9/25

**year [10]** 24/10 25/19 28/13 38/24 41/10 41/14 41/17 44/12 44/13 44/15

**years [17]** 5/11 11/10 15/8 17/14 18/13 19/17 22/20 25/23 40/5 49/1 49/12 49/16 52/4 53/19 54/6 70/17 84/21

**yes [8]** 16/23 29/9 42/6 51/8 53/13 56/13 58/23 68/7

**yesterday [1]** 5/16

**yet [2]** 29/6 60/4

**you [113]**

**You'd [1]** 54/21

**you're [4]** 4/21 21/20 22/16 36/9

**you've [1]** 74/4

**your [82]** 3/4 3/19 3/21 4/17 4/20 4/25 13/7 13/19 15/7 18/7 18/12 19/22 21/18 21/25 22/22 22/25 23/12 23/14 23/16 25/14 26/4 28/1 28/18 28/21 28/21 31/8 32/19 33/11 34/5 36/7 36/19 37/17 40/11 40/16 41/1 41/19 43/14 43/24 45/9 45/13 45/25 46/2 47/20 49/19 50/21 52/2 52/13 53/13 55/8 55/18 60/10 61/24

62/13 63/10 63/15 63/22 64/23 65/5 66/16 68/7 69/3 69/4 70/24 72/6 73/25 74/16 74/19 75/21 75/23 76/16 77/7 78/18 79/2 79/16 79/17 80/5 80/25 82/21 83/14 84/15 84/25 85/17

**yourselves [1]** 3/12

## Z

**zero [1]** 53/1